No. 18-3206

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**Edith McCurry**
**Plaintiff-Appellant,**

**v.**

**Kenco et.al**
**Defendant-Appellee.**

PLAINTIFF-APPELLANT OPENING BRIEF
IN SUPPORT OF APPEAL FROM THE DISMISSAL
OF THE CIVIL ACTION 16-CV-2273 BY THE DISTRICT COURT

**Case No. 16-CV-2273**

**The Honorable Judge Eric Long**

**and**

**Judge Bruce Sterling**

**Presiding**

**Edith  McCurry**

/s/

**Jordan TraVaille Hoffman, P.C.**

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Edith McCurry

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __18-3206__

Short Caption: __Edith McCurry V. Kenco et. al__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[  ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

__Edith McCurry__

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

__Jordan TraVaille Hoffman, P.C.; Haley Austin Law, PC__

(3) If the party or amicus is a corporation:

i)   Identify all its parent corporations, if any; and

__N/A__

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

__N/A__

Attorney's Signature: __s/ Jordan T. Hoffman__    Date: __01/15/19__

Attorney's Printed Name: __Jordan T. Hoffman__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes __X__    No _____

Address: __2711 E. New York Street, Suite 205 Aurora, IL 60502__

Phone Number: __888-958-4529__    Fax Number: __888-958-4529__

E-Mail Address: __jthoffmanlaw@gmail.com__

i

rev. 01/15 GA

APPELLANT BRIEF

TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................. i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE .............................................................. 2

SUMMARY OF ARGUMENT ............................................................. 4

      a.  Standard of Review .............................................................. 4

ARGUMENT ...................................................................................... 5

CONCLUSION ................................................................................... 86

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32 (a) (7)................. 87

PROOF OF SERVICE ......................................................................... 88

CIRCUIT RULE 30(d) STATEMENT ................................................... 89

ATTACHED REQUIRED SHORT APPENDIX .................................... 90

# Table of Authorities

Cases

1.   *ABDEL-GHAFFAR v. ILLINOIS TOOL WORKS, INC.*, No. 12 C 5812 (N.D. Ill. Sept. 30, 2015) ....page 46

2.   *ABF Freight System, Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994) ....page 63

3.   *Adickes v. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)...page 65

4.   *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994) ...page 48

5.   *Anicich v. Home Depot USA, Inc.*, 852 F.3d 643 (7th Cir. 2017)....page 12, 20

6.   *Bagdade*, 334 F.3d 568 (7th Cir. 2003)....page 62

7.   *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)...page 8

8.   ***BITLER INV. VENTURE v. MARATHON ASHLAND PETROLEUM***, 779 F. Supp. 2d 858 (N.D. Ind. 2011).....page 68, 76

9.   *Brown V. Kenco*-3:10-CV-668....page 21, 22, 55, 68

10.  *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th Cir. 2007)...page 46

11.  *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 505 n.5 (7th Cir. 2004)....page 68, 75

12.  *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)....page 12, 20

13.  *Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)....page 43*

14.  *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006)....page 59

III

15.  *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 158-59 (7th Cir.1996) ....page 8

16.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ....page 6, 48, 76

17.  *Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, (7th Cir.1998) ....page 14

18.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 48-49 (1991) ....page 62

19.  *Chaveriat v. Williams Pipe Line Co.,*11 F.3d 1420, 1428 (7th Cir. 1993) ....page 59

20.  *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012) ....page 10, 14, 74

21.  *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995) ....page 46

22.  *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) ....page 18

23.  *Costello v. Grundon,* 651 F.3d 614, 635 (7th Cir. 2011) ....page 5, 7

24.  *Crabtree v. Nat'l Steel Corp.,* 261 F.3d 715, 721 (7th Cir. 2001) ....page 81

25.  *Crady v. Liberty National Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993) ....page 7

26.  *Cross v. Roadway Express*, 861 F. Supp. 698 (N.D. Ill. 1994) ....page 74

27.  *Curtis v. City of Chicago*, No. 16 C 8042 (N.D. Ill. Mar. 14, 2018) ....page 32

28.  *Dey v. Colt Const. & Development Co.*, 28 F.3d 1446 (7th Cir. 1994) ....page 34

29.  *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393, 1396 (3rd Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984) ....page 48

30.  *EEOC v. Mercy Hospital and Medical Center,* 709 F.2d 1195, 1197 (7th Cir.1983) ....page 18

31.  *Epstein v. Secretary, United States Department of the Treasury,* 739 F.2d 274, 277 (7th Cir.1984) ....page 18, 19

32.  *Escamilla v. Jungwirth,* 426 F.3d 868, 870 (7th Cir. 2005) ....page 53

33.  *Fallon v. State of Ill.*, 882 F.2d 1206 (7th Cir. 1989) ....page 19, 35, 74

34.  *Fischer v. Avanade, Inc.,* 519 F.3d 393, 407 (7th Cir.2008) ....page 47

35.  *Forsythe v. TICOR TITLE INSURANCE COMPANY*, No. 2: 08 cv 337 (N.D. Ind. June 28, 2010) ....page 73

36.  *Friedel v. City of Madison*, 832 F.2d 965 (7th Cir. 1987) ....page 26, 27, 69, 74 75

37.  *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001) ....page 10, 46, 47

38.  *Graham v. Long Island R.R.,* 230 F.3d 34, 43 (2d Cir.2000) ....page 10

39.  *Greviskes v. Universities Research Ass'n*, 417 F.3d 752, 758-59 (7th Cir.2005) ....page 62, 63

40.  *Grogan v. Garner,* 498 U.S. 279, 284-85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ....page 57

41.  *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979) ....page 65

42.  *Happel v. Walmart Stores, Inc.*, 602 F.3d 820 (7th Cir. 2010) ....page 79

43.  *Hasham v. California St. Bd. of Equalz'n,* 200 F.3d 1035, 1047 (7th Cir.2000) ....page 74

44.  *Havoco of America, Ltd. v. Hollobow,* 702 F.2d 643, 646 n. 2 (7th Cir.1983) ....page 26

45.  *Hayes v. City of Chicago*, 670 F.3d 810 (7th Cir. 2012) ....page 49

46.  *Hobgood v. Illinois Gaming Board,* 731 F.3d 635, 646 (7th Cir.2013) ....page 46

47. *Howard v. Lear Corp. EEDS and Interiors*, 234 F.3d 1002 (7th Cir. 2000) ....page 18

48. *Huri v. OFFICE OF CHIEF JUDGE OF CIRCUIT COURT*, 804 F.3d 826 (7th Cir. 2015) ....page 33

49. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887 (7th Cir. 2018) ....page 85

50. *Johnson v. Holder*, 700 F.3d 979 (7th Cir. 2012) ....page 14

51. *Jones v. National Council of YMCA of US*, 48 F. Supp. 3d 1054 (N.D. Ill. 2014) ........page 9, 11, 17, 30, 38, 59

52. *Kent v. City of Chicago*, 814 F. Supp. 2d 808 (N.D. Ill. 2011) ....page 35

53. *Knight-Celotex, LLC,* 695 F.3d 714, 721 (7th Cir. 2012) ....page 58

54. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) ....page 5

55. *Long v. TEACHERS' RETIREMENT SYSTEM OF ILLINOIS*, 585 F.3d 344 (7th Cir. 2009) ....page 10, 41, 43

56. *Loudermilk v. Best Pallet Co.,* 636 F.3d 312, 315 (7th Cir.2011) ....page 45

57. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir. 2004)....page 73

58. *McClain v. RETAIL FOOD EMPLOY. JOINT PENSION PLAN*, 413 F.3d 582 (7th Cir. 2005) ....page 83

59. *McQuiggin v. Perkins,* 133 S. Ct. 1924 (2013) ....page 53

60. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685 (7th Cir. 2006) ....page 35

61. *Meyer v. Rigdon,* 36 F.3d 1375, 1378 n.1 (7th Cir. 1994) ....page 57

62. *Milligan v. Bd. of Trs.*, 686 F.3d 378, 388 (7th Cir. 2012) ....page 17

63.  *New Hampshire v. Maine,* 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968
     (2001) ....page 58

64.  *Northwestern Nat. Ins. Co. v. Baltes*, 15 F.3d 660 (7th Cir. 1994) ....page 26

65.  *O'BRIEN v. UNITY HEALTH PLANS INSURANCE CORPORATION*, No. 15-cv-
     429-jdp (W.D. Wis. Nov. 7, 2016) ....page 17

66.  *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251 (7th Cir. 1985) ....page 20

67.  *Patrick v. City of Chicago*, 103 F. Supp. 3d 907 (N.D. Ill. 2015) (July, 17
     2018)....page 53

68.  *Patterson v. McLean Credit Union,* 491 U.S. 164, 187-88, 109 S.Ct. 2363, 105
     L.Ed.2d 132 (1989) ....page 31

69.  *Payne,* 431 F.3d 1055, 1060 (7th Cir.2005)....page 35

70.  *Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.,* 510
     F.3d 681, 692 (7th Cir.2007) ....page 44

71.  *Plair v. E. J. Brach & Sons, Inc.,* 105 F.3d 343, 349 (7th Cir.1997) ....page 30

72.  *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir.2006) ....page 6

73.  *Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806, 820 (7th Cir. 2015)
     ....page 6

74.  *Pryor v. City of Chicago*, 726 F. Supp. 2d 939 (N.D. Ill. 2010) ....page 74

75.  *Quela v. Payco-Gen. Am. Creditas, Inc.*, 2000 W.L. 656681 (2000) ....page 64

76.  *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140, 143, 120 S.Ct. 2097,
     147 L.Ed.2d 105 (2000) ....page 47

77.  *Rodriguez v. M & M/Mars*, 1997 WL 349989, *2 (N.D. Ill. June 23, 1997....page 63

78. *Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005)....page 33, 45

79. *Russian Media Grp., LLC v. Cable Am., Inc.,* 598 F.3d 302, 310 (7th Cir. 2010) ....page 51

80. *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir.2009) ....page 62

81. *Sample v. Aldi, Inc.,* 61 F.3d 544, 548 (7th Cir.1995) ....page 14

82. Santos v. United States, 461 F.3d 886, 891 (7th Cir. 2006) ....page 83

83. *Savoy v. BMW OF NORTH AMERICA, LLC*, No. 17 C 7225 (N.D. Ill. June 4, 2018) ....page 32, 33, 36, 37

84. *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397 (7th Cir. 2015) ....page 62, 63

85. *Securities & Exchange Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896 (5th Cir.) *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981) ....page 27

86. *Simpson v. Beaver Dam Community Hospitals, Inc.*, 780 F.3d 784 (7th Cir. 2015)

87. ....page 34

88. *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 378 (7th Cir.1995) ....page 46

89. *Skibbe v. US BANK TRUST, NA FOR LSF9 MASTER*, 309 F. Supp. 3d 569 (N.D. Ill. 2018) ....page 51, 56

90. *Snelling v. Clarian Health Partners, Inc.*, 184 F. Supp. 2d 838 (S.D. Ind. 2002) ....page 73

91. *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004 (N.D. Ill. 2009) ....page 35

92.  *Soto v. Adams Elevator Equipment Co.,* 941 F.2d 543, 548 (7th Cir. 1991)....page 34

93.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ....page 29

94.  *Stalter v. Wal-Mart Stores, Inc.,* 195 F.3d 285, 291 (7th Cir.1999) ....page 73

95.  *Steinbarth v. Whole Foods Mkt.,* 72 F. Supp. 3d 916, 924 (N.D. Ill. 2014) ....page 36

96.  *Stopka v. Alliance of American Insurers,* 141 F.3d 681 (7th Cir. 1998) ....page 35

97.  *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 736 (7th Cir.2006) ....page 6

98.  *Tart v. Illinois Power Co.,* 366 F.3d 461, 473 (7th Cir.2004) ....page 7

99.  *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ....page  29, 30

100. *Trask-Morton v. Motel 6 Operating, L.P.,* 534 F.3d 672, 681 (7th Cir. 2008) ....page 82

101. *United States v. Alvarez*, 132 S.Ct. 2537, 2540 (2012) ....page 63

102. *US v. Cueto*, 151 F.3d 620 (7th Cir. 1998) ....page 70, 77

103. *United States v. DiStefano*, 464 F.2d 845, 854 (2nd Cir.1972) ....page 64

104. *US v. Hallahan*, 756 F.3d 962 (7th Cir. 2014) ....page 61

105. *US v. Jackson*, 865 F.3d 946 (7th Cir. 2017) ....page 83

106. *United States v. King-Vassel,* 728 F.3d 707, 716 (7th Cir. 2013) ....page 6

107. *United States v. Stokes*, 211 F.3d 1039, 1046 (7th Cir.2000) ....page 63

108. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ....page 17

109. *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 673-74 (7th Cir.2009) ....page 45

110. *Vance v. Ball State Univ.,* U.S.,133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013)

....page 20

111. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655 (7th Cir. 1991)

....page 74

112. *Wells v. Coker,* 707 F.3d 756, 760 (7th Cir. 2013) ....page 58

113. *Whigum v. Keller Crescent Co.,* 260 Fed.Appx. 910, 914 (7th Cir.2008) ....page 17

STATUTES AND REGULATIONS

**18 USC 1503** ....page 15, 76

**18 USC 1505** ....page 15, 76

**18 USC 1512(b) & (c)** ....page 15, 76

**18 USC 1520**....page 82

21 U.S.C. §399-....page 9

21 U.S.C Chapter I Subchapter A Part I Subpart M....page 9, 82

28 U.S.C. § 1291 ....page 1

28 U.S.C. § 1331 ....page 1

29 U.S.C. § 623(d) ....page 2

42 U.S.C. 12112 ....page 2

42 U.S.C. 12203....page 2

42 U.S.C. 2000e-3(a) ....page 2

42 U.S.C. 1981....page 2

42 U.S.C. 1983....page 3

42 U.S.C. 1985....page 2

42 U.S.C. 1986....page 3

**Federal Rules of Civil Procedure**

*Fed.R.Civ.P. 26*....page 72, 78, 79

*Fed.R.Civ.P. 33*....page 72, 79

*Fed.R.Civ.P. 34*....page 72, 79

*Fed.R.Civ.P.37*....page 72, 78, 79, 80

*Fed.R.Civ.P. 56*....page 3, 26, 27, 48, 67, 68, 69

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Jurisdiction is proper in this case under 28 U.S.C. § 1331, as this appeal arises from a judgment dismissing a civil action in the United States District Court for the Central District of Illinois.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291

## STATEMENT OF THE ISSUE

Whether the District judge abused his discretion in granting Defendants' Motion for Summary Judgment and dismissing McCurry's complaint without the findings of the Magistrate Judge.

Whether a review of the interlocutory orders are appropriate as to:

Whether discovery and discovery issues were adequately managed and; 2) Whether there was the intentional exclusion of evidence and; 3) Whether materially and false statements and documents were presented to the court and; 4) Whether Defendants Mars, Inc. and Kenco Logistics are equally liable for the unlawful acts and; 5) Whether there was a deliberate attack on the judicial

system and the administration of justice and; 6) Whether

Defendant's acted with malice and in bad faith.

Whether the waiver of services initiated by Defendants counsel

and presented to the court was proper.

Whether the doctrines of Res Judicata, Collateral and Judicial

estoppel apply to Defendants.

## STATEMENT OF THE CASE

### A. Nature of the case, Course of Proceedings, and Disposition Below

In August and September of 2016, McCurry, filed complaints

under, 42 U.S.C. §'s:12112, 12203, 2000e-3(a), 1981, and 1985,

and 29 U.S.C. § 623(d) and Title VII and against the Mars, Inc.,

Kenco Logistics, Kelvin Walsh, Mike Manzello, Tammi Fowler, and

David Jabaley, Mario Lopez and Lori Varvel (herein after "Kenco et

al) for illegal discrimination based upon her sex, female, race,

African American, age, over 40, equal pay, conspiracy, intentional

infliction of emotional distress, hostile work environment

.....disability, and retaliation. (Docket# 1)

McCurry timely moved the court to amend[1] complaint #16-CV-2277 docket # 8.  On January 3, 2017 the cases 16-CV-2273 and 2777 were consolidated by text order.

McCurry timely cooperated and filed all appropriate documents and appeals timely.

## B. Statement of Facts

In August and September of 2016, McCurry filed complaint(s) (16-CV- 2273 & 16-CV-2277) of employment discrimination with the District Court (Docket #1)

On June 20 and June 21 of 2018, respondents filed motions for summary Judgment to dismiss plaintiff's complaint pursuant to FRCP 56 (Docket #109, 110, 112 & 113).

On August 28, 2018, Plaintiff filed a motion for reconsideration.

---

[1] Plaintiff's amended complaint included claims of 42 USC § 1983 and 1986, as well as, additional defendants.

## C. Judge's Decision

Defendants' motion was granted. On August 14, 2018, the Honorable Judge Steriling dated an order that was entered on the same day. (Docket #125-126 & Required Appendix herein "RA"-pg.2).  The motion for reconsideration was denied. (Docket #129 & RA-pg.23)

## SUMMARY OF THE ARGUMENT

Appellant contends that she presented indirect and circumstantial evidence at the summary judgment stage creating genuine issues of material fact giving rise to defendants' proffered reasons as being pretextual.

## STANDARD OF REVIEW

The reviewing court reviews a dismissal order de novo viewing the facts in the light most favorable to the nonmoving party. (Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 661 (7th Cir. 2016).

*Factual Background*

In June of 2018 Defendants filed motions for summary judgment (Docket's 109, 110, 112 & 113) with the issues at bar being lack of knowledge, retaliation, failure to promote, that Varvel was more qualified than Plaintiff, conspiracy, and unequal pay.

Plaintiff filed a response to the issues at bar in Docket #117; specifically, addressing those issues in their own subsections: Lack of knowledge-page 27 ¶ 2- page 28; Retaliation-pages 8 ¶2, 10 ¶ 6, 15 ¶ kk, and 57; Failure to promote-page 26 -27; Varvel more qualified pages 17-26, plaintiff's declaration Docket #119-9 ¶245-262; Conspiracy in relevant parts pages 9 ¶ 5, 10 ¶ 6, 11 ¶1, 14 ¶ jj, 22-23, 27 ¶  6, 5 ¶ 4, & 61 ¶ 4;   Unequal pay Docket #119 ¶ 57, 59, 224, 226-227, & 229-230.

**Argument**

Defendants bore the initial burden of identifying the basis for seeking summary judgment. *Costello v. Grundon,* 651 F.3d 614, 635 (7th Cir. 2011); *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) ("Only after the movant has articulated with references to

the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial.")-(citing _Celotex Corp. v. Catrett,_ 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

In defendants' motion for summary judgment a number of conclusory statements and assertions made were unsupported by the facts or law.

Accordingly, the party opposing summary judgment is not required to respond to grounds that were not raised by the movant. _Sublett v. John Wiley & Sons, Inc.,_ 463 F.3d 731, 736 (7th Cir.2006) ("[I]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision."); _Preddie v. Bartholomew Consol. Sch. Corp.,_ 799 F.3d 806, 820 (7th Cir. 2015); _United States v. King-Vassel,_ 728 F.3d 707, 716 (7th Cir. 2013); _Pourghoraishi v. Flying J, Inc.,_ 449 F.3d 751, 765 (7th Cir.2006) ("The party opposing summary judgment has no

obligation to address grounds not raised in a motion for summary judgment.").[2]

It is well established that a reduction in job responsibilities qualifies as a materially adverse action-(*Tart v. Illinois Power Co., 366 F.3d 461, 473 (7th Cir.2004)*; (*Crady v. Liberty National Bank & Trust Co., 993 F.2d 132, 136 (7th Cir.1993)*-(employee suffered adverse job action where she had fewer responsibilities, was made to perform more menial tasks, and had lesser opportunity for salary increases in her new position).  (Docket #117 pages-13 §L, 15 §qq, and 25-26)

Similarly, McCurry experiences a change in fringe benefits; harsher scrutiny; failure to be promoted; lack of opportunities; lack of professional standing; economic sanctions; hostile work environment that led to an employee being shot on the premise, various verbal and physical assaults of African-Americans by Caucasian employees of use of gun violence, vehicular assault,

---

[2] *Costello* at 363 states: "it was unaware of any authority that required the party to marshal all the evidence that they had on an issue that was not asserted by the party seeking summary judgment."

amongst other forms of violence, the ever looming threat that a
racially motivated altercation or riot may ensue and physical
damage to McCurry's auto amongst actions/activities/conduct.  A
"campaign of petty harassment" may be sufficiently adverse when
considered collectively.-(_Bart v. Telford_, 677 F.2d 622, 625 (7th
Cir.1982)_.

McCurry has evidence to support a nexus to the adverse
actions," for example, more favorable treatment of similarly situated
employees without the protected characteristic.-_Carson v.
Bethlehem Steel Corp.,_ 82 F.3d 157, 158-59 (7th Cir.1996)_.  This
would include Julie Wade, Deane Doyle, Linda St. Germaine, and
Tari Hart (non-African American clerks)-(Docket #117 page 22 n.15
& #117-20) who had not engaged in protected activity were not
forbidden to clock out from their desk, as was McCurry.  These
persons including Valerie Lillie were not scrutinized, ostracized,
micromanaged, harassed, or mischaracterized in their job titles,
duties and tasks.  The Seventh Circuit has recognized
systematically better treatment of non-protected classes as

circumstantial evidence *Jones v. National Council of YMCA of US*, 48
F. Supp. 3d 1054 (N.D. Ill. 2014) at 1091

Wade, Doyle, St. Germaine and Hart are comparables to
McCurry.  They were all clerks at the same facility (Docket #117
pages 22 n.15 & #117-20); allegedly performing clerk duties;
subjected to the same rules[3], and governed by the same
management. Valerie Lillie, a female-Caucasian, who was the
Quality Coordinator[4], was alleged to have reported to Lori Varvel as
well.  Lillie was not subject to the treatment imposed upon
McCurry.

The employees of the Mars Manteno facility were subject to the
exact same policies of the company and a plain reading of the
policies support and highlight that the policies were universal for
the facility and for the company at large.  *Separate Appendix herein-*
*"SA" p. 283 ¶1.*

---

[3] Rules governing the Mars Manteno facility are codified at 21 U.S.C. §399- Chapter I Subchapter A Part I
Subpart M specifically governs facilities that house and distribute food like the Mars Manteno facility.
*Docket 117 page 14 n.6 and page 57 ¶ 7* See also Docket #54(1-20).
[4] Defendants' organization chart does not support this reporting scheme (Docket#119-11 & #117-2 pg.5).
Varvel had no experience managing a Quality Coordinator relative to a food grade facility; additionally, no
quality person had nor reported to HR previously. Szplett Declaration Docket #119-pg.14-#175).
Plaintiff further contends that when defendants and others took plaintiff's HR duties away, Varvel did not
have the educational, experiential or professional background to manage McCurry's accounting, financial
and statistical analysis functions McCurry was performing.  Furthermore, it is not reasonable to assert that
defendants and others hired Varvel to take away plaintiff's clerical duties at a substantially higher rate of
pay than that of McCurry and Szplett's. Docket #117 pg.25 ¶4

The seventh circuit explained in <u>Coleman v. Donahoe</u>, 667 F.3d 835 (7th Cir. 2012) at 858 that:

> A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination." *Id.,* quoting <u>Graham v. Long Island R.R.,</u> 230 F.3d 34, 43 (2d Cir.2000). The reasoning and result in *Gordon* confirm what we have stated in many other cases: that comparator evidence can do "double-duty" at both the prima facie and pretext stages.

Therefore, the failure to follow company policy, procedure, protocol, and form is a deviation (abnormality) from the company's own policies- <u>Long v. TEACHERS' RETIREMENT SYSTEM OF ILLINOIS</u>, 585 F.3d 344 (7th Cir. 2009) at 352; deviations are to be documented (Docket #117-page 14 & #117-7 §4.6).  Deviations also necessitate and dictate a "root cause" investigation according to company policy. (*SA-pg.002*)

Ultimately, the purpose of this standardized system is to bring about uniformity and continuity; eliminating inconsistencies, deviations and discriminate acts; therefore, there is no objective reason for it to apply with greater or lesser force to employees of

certain positions, as it is indiscriminate, self checking and purging. _Jones_ at 1133-1134.

**Uneven Discipline**

Pete Monstwillo an employee of the Mars Manteno warehouse. Monstwillo was subject to the same policies as McCurry, but he was not punished or held accountable with regard to public policy or the policies of defendant Kenco or Mars relative to basic employment policies, harassment, violence and safety; nor was Monstwillo punitively or economically sanctioned for making numerous racially motivated threats, his repeated threats and an attempt to kill an African –American employee (Vernon Henry) with a forklift amongst other unlawful actions (Docket 117 page 44 ¶8).

Monstwillo was not punished for these racially motivated acts (Docket #119-8-pg.2 §B5-Docket #81-16 pg. 13). However, several days later while Henry was off on medical leave from being attacked by Monstwillo, Henry was fired, while on FMLA. (Docket 117 page 45 ¶1) Tammi Fowler alleged along with others that Henry violated

its cell phone policy and that Monstwillo was just horse-playing[5].

(*SA-pg.-013 ¶2*)   There was no cell phone policy. (Docket #117-16

page 74 & Docket #81-16 §6)


Monstwillo's consequences for violating company and public

policy, while a temporary employee, was being hired as a fulltime

permanent employee of the Mars Manteno facility. *(Docket 117 page*

*29 ¶ 2)*


It was Defendants' duty to refrain from hiring Monstwillo.

Defendants were negligent in the hiring and retention[6] of Monstwillo

as an employee, as his actions were foreseeable based upon

immediate past behaviour. *Anicich v. Home Depot USA, Inc.*, 852

F.3d 643 (7th Cir. 2017 at 649-650); *Burlington Industries, Inc. v.*

*Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)


Throughout Monstwillo's employment at the Mars Manteno

facility he often boasted to African American employees that he

---

[5] Monstwillo called repeatedly threatening to kill Henry, after attempting to kill him with the forklift. *SA-pg.-016*   This was especially unnerving considering there had been a shooting recently at the facility. (Docket #117-12 & #119-9 §59).
[6] Plaintiff asserts this also holds true for Kelvin Walsh, Tammi Fowler, Mike Manzello, David Jabaley and others who were not disciplined for unlawful acts reported.

could get them fired; that he had supremacy over African-Americans (stating that Henry should look in the mirror, as he was "nigger") and that management was his friend amongst other rants. (Docket 117-page 28 ¶5)

Monstwillo's friends in management were a part of the same management scheme that subjected McCurry to being ostracized from meetings, increased workloads; additional duties outside of HR and accounting; whimsical, ever changing and shorter deadlines; defamation of character; mischaracterization of job title from HR Administrator to clerk; fabricated write-ups; change in duties and responsibilities that resulted ultimately in no duties and responsibilities in HR (Docket #117-13); change in fringe benefits; harsher scrutiny; failure to be promoted; lack of opportunities and professional standing; economic sanctions; and hostile work environment among other things.

Moreover, the prohibition on violence is unequivocal and the Seventh Circuit has explained "when uneven discipline is the basis for a claim of discrimination, the most-relevant similarities are

those between the employees' alleged misconduct, performance standards, and disciplining supervisor, rather than job description and duties." _Johnson v. Holder_, 700 F.3d 979 (7th Cir. 2012) at 983 "In a disparate discipline case, the similarly-situated inquiry often hinges on whether coworkers `engaged in comparable rule or policy violations' and received more lenient discipline..... Comparators must have `engaged in similar—not identical—conduct to qualify as similarly situated.'" _Coleman_ at 850

Plaintiff contends that Monstwillo's conduct was life threatening and far more egregious throughout his employment, yet he received more lenient discipline than plaintiff and other co-workers accused of way less egregious violations.

Additionally, there are a few other examples among other instances; _Cengr v. Fusibond Piping Sys., Inc.,_ 135 F.3d 445, (7th Cir.1998); _Sample v. Aldi, Inc.,_ 61 F.3d 544, 548 (7th Cir.1995) (age and race discrimination); Hiring Lori Varvel, a female Caucasian, who at the relevant time was 34 years old, who had less experience

in HR; who was not certified; who did not meet the defendants'

requirements for the position.

Defendants provided inconsistent reasons for hiring Varvel, as

follows: 1) Varvel was hired because of all the charges of

discrimination filed. 2) Someone was needed with more experience.

(Docket #117-pages 48 ¶2 & 24 ¶4 respectively). 3) McCurry would

have more time to focus on payroll.

Plaintiff asserts that Varvel[7] was hired in furtherance of

defendants' scheme to intentionally cover up racial discrimination,

disparate and disparaging treatment and impact against employees

and to avoid culpability and liability[8] (Docket #117-page 51 ¶4).

Defendant upheld this assertion when it stated that Szplett's was

responsible for all the charges of discrimination (Docket #119-8-

pg.1 ¶4§2).

Plaintiff can infer and asserts that defendants' statement

directly resulted from Szplett's opposition to the disparate and

---

[7] After hiring Varvel employees who were members of the protected class at the Mars Manteno facility rights continued to be violated.
[8] Plaintiff asserts that these acts were in violation of 18 USC 1503, 1505 and 1512(b).

disparaging treatment and its impact upon African Americans and those that opposed such treatment and his inherent failure to aid and abet Defendants in this unlawful behavior.

Specifically, Plaintiff asserts that numerous defendants and other malfeasors wanted Szplett to actively assist in this rogue and unlawful behavior and at the very least prohibit McCurry from altogether receiving employee complaints and creating paper trails of these complaints.  Szplett's failure to conform to this overt racism prompted the change in the Manteno HR department.

There are other examples, such as; paying less tenured and even non-qualified non-African American spotters more pay, premium/preferred shifts, greater access to overtime and better opportunities (John Montgomery and Mark Baker-(Docket #117-page 58 ¶3 & *SA-pg.-018*)

Paying other non-African Americans the same or more money for performing less skilled duties and tasks than McCurry (Julie Wade, Deane Doyle, Linda St. Germaine, Tari Hart and Marci

DeRosier); Nathan Doss-Docket# 117-page 42 ¶3. *Milligan v. Bd. of Trs.*, 686 F.3d 378, 388 (7th Cir. 2012); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Len Szplett's was paid more money for performing the same work that McCurry performed. (Docket #117 page 5 ¶ 5 & 6) Szplett's compensation was substantially greater, including his increases and bonuses (Docket 113-3 pg.50-65).[9]

Plaintiff contends that the increases and bonuses available to her were substantially inferior to those available to Szplett. The Seventh Circuit has explained that "receipt of an inadequate pay raise can . . . amount to an adverse employment action." Jones at 1100 citing *Whigum v. Keller Crescent Co.,* 260 Fed.Appx. 910, 914 (7th Cir.2008)

Plaintiff contends just as O'Brien in *O'Brien v. Unity Health Plans Insurance Corporation*, No. 15-cv-429-jdp (W.D. Wis. Nov. 7, 2016) that: "Over time, the salaries of two equally performing employees should tend to converge despite differences in their

---

[9] Plaintiff contends the records produced by Defendant regarding Szplett are fraudulent, as the spelling of his abbreviated name is in the feminine. i.e. Lynn vs. Len.

starting salaries. McCurry and Szplett's had been employed together since 2000 performing their respective duties and she contends that her performance was at least equal to that of Szplett.

Szplett's and McCurry have the same qualifications, educational backgrounds and experiences.  Szplett's and McCurry both contend that they performed the same common core of tasks, equal work which requires equal skill, effort, and responsibility; and that they had similar working conditions, as it was a two (2) person department[10].  _Howard v. Lear Corp. EEDS and Interiors_, 234 F.3d 1002 (7th Cir. 2000);_Corning Glass Works v. Brennan,_ 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); _Epstein v. Secretary, United States Department of the Treasury,_ 739 F.2d 274, 277 (7th Cir.1984)_.

Both Szplett and McCurry based this assertion on actual job performance and content —not job titles, classifications or descriptions of the work performed ... as being substantially equal.'" _EEOC v. Mercy Hospital and Medical Center,_ 709 F.2d 1195, 1197

---

[10] Plaintiff contends that Lillie reporting to Varvel was a pretext to substantiate the farce that Varvel managed employees. Varvel did not have expertise or skill to manage plaintiff or Lillie.

(7th Cir.1983).  The work need not be identical; it is sufficient if the duties are "substantially equal." *Epstein,* 739 F.2d at 277.

It should be noted that Defendants' argument with respect to the unequal pay between Szplett's and McCurry is that he was her manager.  However, Defendant does not identify what job duties and tasks that sets them apart or offer any reference to any facts or the record to substantiate this contention.

"Differences in responsibility must be substantial; to argue that '*any* difference in supervisory responsibility renders jobs unequal' is 'manifestly incorrect as a matter of law'……(minor differences in responsibility do not make the Equal Pay Act standard inapplicable)." *Fallon v. State of Ill.*, 882 F.2d 1206 (7th Cir. 1989) at 1209

"The court also noted that there was nothing to managing a two-person office. (in finding that male employee had no real supervisory authority, court observed that the office was only a two-person office)." *Id.1210*  Szplett attest in his affidavit that he did not

monitor, check or verify McCurry's work and that they performed the work equally (Docket #119 pg.18#227).

"The Equal Pay Act creates a type of strict liability in that no intent to discriminate need be shown." *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251 (7th Cir. 1985) at 1260 n. 5

Additionally, this was a hostile work environment charged with racial animus fostered and led by top level and executive management[11].  This management scheme intentionally superimposed different terms and conditions upon African Americans, such as: incremental pay upon promotion (Nathan Doss-Tammi Fowler and Kelvin Walsh-Docket page 42 ¶3)    This was not the case for other similarly situated less qualified and tenured non-African-Americans who were paid the prevailing rate upon hire (Stephanie Dumas and John Steele).

---

[11]  Plaintiff asserts defendants were negligent and are strictly liable because of management's unlawful actions and their failure to respond. *See Vance v. Ball State Univ.,* U.S.,133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013); *Burlington-Ellerth at* 764-65; Anicich at 650,653

Other examples: David Jabaley, Director of Operations, stated "why don't they just write his black ass a check" referring to Nathan Doss.  When Paula Hise, V.P. of Operations addressed the three (3) shifts of the facility telling the employees that Kelvin Walsh was a good friend and he would be missed.-- All the while knowing, that complaints had been made to corporate and that Walsh had been named in numerous and formal informal charges of racial discrimination.  *SA-pg.-024*

Hise, a VP of the company, condoned and promoted the hostile work environment charged with racial animus as an acceptable culture of the company.*id.*  Hise, Jabaley, Fowler, Walsh and others have established through their actions a direct causal link of its corporate culture and the intentional deprivation of statutorily protected rights.

Moreover, defendant Kenco has an admitted history of disciplining African-Americans more harshly than non-African Americans.  Plaintiff asks the court to take judicial notice of this admission in <u>*Craig Brown V. Kenco*</u>-3:10-CV-668.

Additionally in *Brown*, the administrative assistant investigated claims of discrimination. (Docket #117 page 50 ¶6) Contrarily, according to defendant in this instance, McCurry was not allegedly even able to receive claims of discrimination, a significantly lesser task than investigating complaints; despite McCurry being the HR Administrator and acting within her official capacity to do so.

Ironically, in the matter of *Brown V. Kenco*, Karen Smith and Jay Elliott were the counsel for defendant Kenco. Smith is the attorney who interviewed plaintiff in November of 2013 and excluded McCurry from the respondent's witness list. (Docket #117 page 8 ¶3-Docket #119-18).

Elliott became the V.P. of legal for Kenco in November of 2014. Elliott was the counsel of record for defendant and participated in plaintiff's fact finding conference. Elliott provided information to the investigator relative to the claims of discrimination and other instances that occurred prior to Elliott's employment, as well as,

information about events that occurred after he was employed, but not actually a party to, as Elliott was located in Chattanooga.

Defendants and Elliott were instructed that respondent's attorney could not participate in the fact finding conference. (Docket #82-4 pg. 4) However, despite this mandate, Elliott participated in the fact finding conference.  This was evidenced by the investigator's report. Docket #117 page 14 §hh-Docket #120-3).

Plaintiff asserts that Elliott obstructed the administration of justice by providing false and misleading information to the investigator regarding the charges before the IDHR/EEOC (docket #117-page 56 ¶4).  Elliott emailed other investigators relative to other co-workers charges before the agencies indicating that he no longer had access to those particular employees and that he would participate in the investigation.  Elliott went so far as to say that he and Varvel started around the same time after the Vernon Henry incidents and that he could probably tell them as much as Varvel could. (Docket #117-page 55 ¶2-Dockets: #118-11, #82-7 pg.3, #82-8, & #81-§'s 16(pg.25 ¶1) & 17.

Additionally, Elliott provided the only affidavit in support of
Defendants Kenco, Walsh, Jabaley, Manzello, Varvel, Fowler and
Lopez's motion for summary judgment.  Elliott has admitted to his
employment starting after incidents at the Mars Manteno facility
and not having access to employees (Docket #118-11).


Also Elliott would not have actual knowledge of the incidents
that occurred in Manteno, IL while he was in Chattanooga, TN.
Elliott's declaration is inadmissible, as he lacks personal knowledge
and has based the affidavit on hearsay providing patently false and
misleading statements made in an effort to prejudice plaintiff and
"game" the system.


Likewise Mars, Inc. provided an affidavit from Todd Moore.
Moore was Robert Coffey's, the onsite Regional Manager's, superior.
The affidavit was in support of Mars, Inc.'s proposition that they
were unaware of discrimination at the Mars facility.

This statement is patently false[12] in that the onsite manager and Todd Moore agreed to pay for the hiring of Lori Varvel as the HR manager (Docket #119-20).  Lori Varvel according to Elliott's verified statement was hired by defendants because of all of the charges of discrimination against them. Docket #117 page 48 ¶2- Docket #119-8 pg.1¶4§2).


Additionally, there were daily meetings in which Coffey and others participated in with the staff at the Mars Manteno facility that addressed every situation at the facility (Docket #118-4).  Also, Coffey, Moore and others were aware of the numerous personnel changes in management ranging from the Quality Engineer/Coordinator, to the General Manager to the Co-Pack Coordinator to the Operations Manager. Consequently, this contention of lack of knowledge could not be farther from the truth. SA-pg.033

---

[12] Deficiencies in Moore's affidavit Docket #120-4.

Moore's affidavit fails because he does not have sufficient personal knowledge to say exactly what did nor did not exist at the Mars Manteno facility, as he was located in Chattanooga.  However, tellingly, with his approval the hiring of Lori Varvel was funded (Docket #119-20).

Neither Moore nor Elliott's hearsay falls within an exception to allow it to be admissible.  Defendants failed to discharge there obligation to comply with Rule 56. (Docket #120-§1 & 4)

Failure to comply with the mandatory requirements of Rule 56 (e) "makes the proposed evidence inadmissible during the consideration of the summary judgment motion."- _Friedel v. City of Madison_, 832 F.2d 965 (7th Cir. 1987) at 970.

Documents submitted to support or in opposition to a summary judgment motion must be attached to an affidavit that both identifies and authenticates each document. _Northwestern Nat. Ins. Co. v. Baltes_, 15 F.3d 660 (7th Cir. 1994); _Havoco of America, Ltd. v. Hollobow,_ 702 F.2d 643, 646 n. 2 (7th Cir.1983).  To the extent that affidavits

are insufficient under Rule 56(e), they must not be considered on summary judgment. _Friedel_ at 971.

Additionally, "a party opposing summary judgment need not respond or file counter-affidavits or other evidentiary materials under Rule 56 if the affidavits and other evidence of the moving party are intrinsically insufficient to establish its entitlement to summary judgment." _Securities & Exchange Comm'n v. Spence & Green Chem. Co.,_ 612 F.2d 896 (5th Cir.) _cert. denied,_ 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)

Individual Defendants' Varvel, Fowler, Jabaley, Manzello, Walsh and Lopez did not produce affidavits in opposition to the allegations waged against them.  The affidavit submitted by Elliott and Moore do not comply with Rule 56. Additionally, these affidavits do not address the numerous detailed and specific allegations set out in Plaintiff's complaint.

It should be noted that Defendants do not deny reducing McCurry's job duties (Docket #113 pg.4¶2), or that McCurry was

subject to ever changing and shortened deadlines, or that McCurry
was assigned additional tasks and duties outside her prescribed HR
and accounting duties, or that McCurry was ostracized from
meetings, or that McCurry job title was mischaracterized, or that
McCurry had a signed job description or that there was a change in
her fringe benefits, or that she was subjected to harsher scrutiny,
or that she was economically sanctioned, or that an employee had
been shot at the facility, or that repeated racially motivated verbal
and physical assaults occurred at the Mars Manteno facility, or that
it was a hostile work environment or that McCurry was
discriminated against.

Plaintiff named multiple defendants and outlined very specific
instances that occurred over a span of time.  These individual
persons at times acted independently and at times collectively.
Only defendants Mars and Kenco provided affidavits; the remaining
defendants did not provide affidavits to raise any affirmative
defenses.

The summary judgment filed on behalf of defendants Walsh,

Manzello, Varvel, Fowler, Lopez, Jabaley and Kenco collectively

addressed only the following specific issues:

1) Varvel being more qualified than McCurry-Failure to promote;
2) Pay differential between Varvel, Szplett and McCurry;
3) Mike Manzello withholding video;
4) Conspiracy was not plead correctly.

After, plaintiff made her prima facie case, a rebuttable

presumption arose and the burden of production shifted to

defendants to articulate a legitimate, non-discriminatory reason for

its actions. _Texas Dep't of Comm. Affairs v. Burdine_, 450 U.S. 248,

254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

To meet this burden, defendants must produce admissible

evidence "which, taken as true, would permit the conclusion that

there was a nondiscriminatory reason for the adverse action." _St.

Mary's Honor Ctr. v. Hicks_, 509 U.S. 502, 507, 509, 113 S.Ct. 2742,

125 L.Ed.2d 407 (1993) at 915. If defendants meet this burden, the

presumption of discrimination dissolves and the burden of

production shifts to McCurry to show that the proffered reason is a pretext for discrimination. _Burdine,_ 450 U.S. at 256.

The Seventh Circuit has recognized pretextual reasons as circumstantial evidence. _Jones at 1091_

Consequently, plaintiff's obligation is to refute defendants' cited reasons with specific facts, _Plair v. E. J. Brach & Sons, Inc.,_ 105 F.3d 343, 349 (7th Cir.1997), to which Plaintiff complied.

Plaintiff refuted defendant's assertions that Varvel was more qualified. (Docket #117 pages 16-17 & 24 ¶7)

Plaintiff also refuted Judge Sterling's cited reason for indicating that Varvel was more qualified because she had supervisory experience. McCurry supervised multiple processes through multiple people internally and externally throughout her employment at the Mars Manteno facility beginning in 1999 (Docket#127 pg.3¶1).

McCurry was also noted as a subject matter expert in HR (Docket #119-9 ¶135). The affidavits of plaintiff and Szplett corroborate the HR duties and tasks that plaintiff performed during her 15 years of consecutive employment in that position at the Mars Manteno facility.

At one point defendant stated that Varvel was hired so that McCurry could focus on payroll *(Docket #80-9 pg. 30 ¶11)*. Defendants also stated that they needed someone with more experience (Docket #80-6 pg.73 ¶8). Other reasons were also offered (Docket #80-9 pg.3 ¶4). Plaintiff contends that these reason(s) for hiring Varvel were pretextual; <u>*Patterson v. McLean Credit Union,*</u> <u>491 U.S. 164, 187-88, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)</u>  as these reasons are inconsistent with the reason Elliott provided in his verified statement to the IDHR/EEOC, where he stated that Varvel was hired because of all the discrimination charges filed (Docket #119-8 pg.1 ¶4§2). Plaintiff is inclined to believe this reason is more accurate than the other reasons provided by defendant.

Defendant also contends that plaintiff did not apply for the position; therefore, plaintiff's claim of failure to promote should fail. However, plaintiff asserted that she was not provided an opportunity to apply for the position, as it had not been posted nor had plaintiff or Szplett been apprised that defendants Kenco and Mars, Inc. created and posted a HR Manager's position. (Docket #117 page 26 ¶5) *Curtis v. City of Chicago, No. 16 C 8042 (N.D. Ill. Mar. 14, 2018).*

Consequently, Plaintiff could not apply for the position, as it was not posted according to Defendant's job posting policy[13]. Therefore, just as in *Savoy v. BMW OF NORTH AMERICA, LLC*, No. 17 C 7225 (N.D. Ill. June 4, 2018) plaintiff argues that she established the application element of her *prima facie* case by showing that, had [he or] she known of an . . . opening, [he or] she would have applied."

---

[13] Plaintiff asserts that Defendant's hiring process is not routinely followed, as in the matter with Henry and Melissa Hansen, as well as, with Tony Willis (Dockets: #120, #117 pg. 26 ¶ 3-6, & #117-2 pg.4 §'s 7 & 9, SA-pg.70 ).

Plaintiff also contends that if she had of been aware of the position that she would have applied for the position, as she had always hoped to be Szplett's[14] successor.

Defendants' not posting the position was an intentional deterrent to plaintiff applying for the position. _Savoy at 918_ states:

> Observing that "there is significant authority to suggest that [it] is not always the case" that a plaintiff must establish that she applied to a job vacancy in the context of a failure-to-hire or promote claim, such as where an employee was "deterred" from applying for a position or led to believe it would be "fruitless" to apply.

Plaintiff contends this was a deprivation and adverse employment action that gives rise to liability-_Huri v. OFFICE OF CHIEF JUDGE OF CIRCUIT COURT_, 804 F.3d 826 (7th Cir. 2015) _and that defendants failure to follow its own policies also gives rise to pretext. Rudin v. Lincoln Land Community College, 420 F.3d 712 (7th Cir. 2005) at 727._

---

[14] Szplett was brought in under the guise of a department expansion. Contrarily, Szplett became the manager of the HR/Accounting department.

## Defendants' contention is contradicted

The Seventh Circuit in _Simpson v. Beaver Dam Community Hospitals, Inc.,_

_780 F.3d 784 (7th Cir. 2015)_ that:

> Under certain circumstances, an employer's subjective reason
> for an employment decision may be reasonably viewed as a
> pretext for discrimination, (employer's subjective judgment
> about employee's interpersonal skills was contradicted by
> objective evidence).

Plaintiff further alleges that defendant's previous contention

that the Manteno facility never had a HR Manager's job was

disingenuous and patently false. (SA-p.143¶4)   It is inconceivable

and incomprehensible that a facility this size, with the vast number

of employees and the duration of time the facility has been

operation, with operating budgets in excess of $25 Million dollars

primarily dedicated to human capital, did not have someone

perform  duties and tasks of a HR Manager.

Plaintiff contends that the "actual job performance and

content, not job titles, are key." _Dey v. Colt Const. & Development_

_Co., 28 F.3d 1446 (7th Cir. 1994)_ citing _Soto v. Adams Elevator_

*Equipment Co.,* 941 F.2d 543, 548 (7th Cir. 1991) quoting *Fallon at*
1208 ).

Furthermore, it should be noted that defendant does not

produce plaintiff's signed job description, but produced various job

posting from various other facilities for positions not equivalent to

plaintiff's. (Docket #118-7 pg.15 §'s 4 & 5-SA pg.73).

Nor has defendant produced the duties and tasks of Szplett

either to support that there was a substantial difference in tasks

and functions or to disprove that the tasks and functions were not

being previously performed by either Szplett's or McCurry. *Merillat v.*

*Metal Spinners, Inc.*, 470 F.3d 685 (7th Cir. 2006); *Kent v. City of Chicago,* 814 F.

Supp. 2d 808 (N.D. Ill. 2011) citing *Stopka v. Alliance of American Insurers*, 141

F.3d 681 (7th Cir. 1998).

The court held in *Sommerfield v. City of Chicago*, 613 F. Supp. 2d 1004

(N.D. Ill. 2009) *that when* a: "Statement is unsupported, and

unsupported statements, whether in oral argument, *In re: Payne,*

431 F.3d 1055, 1060 (7th Cir.2005),* or in briefs do not count."

Contrarily, in another matter of defendants (15-CV-10961 and 2015CF0034/21BA42027) defendants produce a signed job description as evidence (SA-pg.52).  Defendants point to the existence of job descriptions in defendant Kenco's performance review with Mars (SA–pg.84) and in documentation submitted to OSHA, where job descriptions are a requirement under FSMA of the Food Drug and Cosmetic Act. (Docket #83 pg.11)

Furthermore, plaintiff asserts that defendants have promoted other persons whom were not in the protected class without the persons making an application (Docket #117 pg.26, #117-2 pg.4 §'s 7 & 9). Examples, Tony Willis and Melissa Hansen were sought out by management for a position for which he did not apply.  (Docket #120-SA- pg.70)  "In such circumstances, a plaintiff need not prove, much less allege, that she applied for an open job position." _Savoy  at 918 citing Steinbarth v. Whole Foods Mkt., 72 F. Supp. 3d 916, 924 (N.D. Ill. 2014)_

*The court of Savoy also goes on to state:*

> [w]hen an employer uses a promotion system in which
> employees do not apply for promotions but rather are
> sought out by managers, the application requirement . . .
> is loosened somewhat" in a claim based on an employer's
> failure to hire or promote.

## DUBIOUS TIMING

The timing in the hiring of Varvel was incredulous, considering Mars, Inc. is a multi-billion dollar company that is subject to various domestic and international laws, with customers spanning the globe.  It is incomprehensible to suggest that McCurry nor Szplett would have been allowed to continue to manage the human capital at the number one (1) distribution center in the Mars, Inc. network and be inept in education, qualifications and performance.

Most notably, McCurry and Szplett's were responsible in every aspect for the human capital at the Mars Manteno facility.  Prior to Kenco's management their individual and collective efforts in managing the human capital led to the repeated success of the Mars Manteno facility remaining the number one (1) distribution

center of the five (5) distribution centers in the Mars network. (SA-pg.119)

Plaintiff also asserts the timing of Elliott's hiring was also incredulous. (Docket 3 117 page 51 ¶4)

The Seventh Circuit has recognized suspicious timing as circumstantial evidence. Jones at 1091

Kenco's management style and culture emboldened a once manageable[15], latent and suppressed culture of racial animus and prejudice leadership and various employees at the Mars Manteno facility.  This unchecked behaviour spread like wildfire and was the posterchild for an oppressive, racially animus, hostile, punitive and retaliatory work environment.

---

[15] The Mars Manteno work environment was manageable under the previous management company, as it was owner operated.  The habit and the continued practice with defendant Kenco was to pass through any legal costs incurred at the Mars Manteno facility to Mars, Inc. just as it did for all other expenses for the Mars Manteno facility for payment (Docket #117-17 & #120-8).  In October of 2014, defendants Kenco and Mars added an additional $100,000.00 to the budget to defend the "frivolous" claims against them (Szplett Declaration Docket #119 ¶293).

Management engaged in various forms of psychological warfare of public humiliation of making examples of people who sought equality and justice by contriving scenarios in which African Americans were publicly reprimanded and falsely accused of "smelling like weed," such as the case of Nathan Doss who was forced to swipe in and mandated to take a drug test based on the fact that there was an alleged had a work time accident. *(Docket 117 page 58 ¶1 & Docket #118-7 )*

This was a contrived plan to attempt to terminate Nathan Doss[16] for complaining about the disparity in his pay (Docket #117 page 43 ¶3), the ongoing and repeated cancelling of his shift, the lack of training and numerous other adverse employment actions he suffered.  (SA-pg.345)

Management was entrenched in this culture and often superimposed it upon other mid-level management.  For example, Walsh, the former General Manager, urged Caucasian employees to

---

[16] Doss and Tracy Davis received a determination of substantial findings-Docket 117 pages 29 ¶ 3 & 60 ¶2

adversely and disparately treat African American employees.  A notable example was in April of 2014, when Walsh instructed Tom White, a Caucasian male supervisor to treat African Americans like "assholes."  White opposed such and immediately resigned his employment after fifteen (15) years. (*SA-pg.-127)*   Another example that took place several years earlier was when Walsh terminated Don Stauchess' employment for opposing disparate treatment of African American employees.

Upon Mike Manzello's termination[17] on September 2, 2014, he reported to plaintiff that Fowler, Jabaley, Dey and others had contrived and were looking to contrive ways to terminate Doss, as well as, their intent to terminate Plaintiff and Szplett's. *(Docket #117 pg. 43 ¶7 & #117-2 pg.3 §3).*

Manzello also indicated that when Tammi Fowler came to the Mars Manteno facility to conduct an alleged "civil rights class" for the supervisors; Fowler intentionally excluded the leads to avoid Doss attending and learning more about his civil rights. (*Docket*

---

[17] Manzello was terminated on the very first day of Mario Lopez becoming the new general manager at the Mars Manteno facility (Docket #118-7 pg. 13).

*#117 page 43 ¶3)* Plaintiff asserts that this class conducted by Fowler was to help embolden persons to be more equipped to discriminate in the protected class on a more sophisticated and covert level. Plaintiff asserts that discrimination against persons in the protected class was deliberate and intentional.

Another notable scenario was Scott Marksteiner, a non-African American who opposed discriminatory and unlawful treatment of and was treated adversely. (Docket #117 pages 45 (¶7) and 47 ¶ (1-4)) Defendant did not follow its chain of command or policy with regard to Marksteiner (Docket #81-17-SA-pg.149). *Long at 352.*

Additional scenarios were defendants settled claims of discrimination and retaliation with Jacque Morrison, African American-male. (Docket 117 pg.41 ¶4-9-SA-pg.132)

In September of 2014, McCurry was accused of stealing, when she paid Dana Woods, African-American, his vacation pay (Paid Time Off-herein "PTO") while he had been suspended for having a conversation with another employee about a workplace incident

that was reported on the news.  Stacey Bushy a Caucasian female, supervisor, told Mario Lopez that she felt threatened by the conversation.

Woods was suspended without pay pending further investigation[18].  Almost two (2) weeks went pass without a resolution, as plaintiff was forbidden to participate in any HR matters.  Woods requested his PTO.  Woods had earned this time.  Woods and the other employees were accustomed to being paid weekly.

Fowler and Lopez stated that plaintiff stole from the company when she paid Woods his due monies.  Additionally, Fowler stated that "hitting them in their pocket" is the tactic that is used and paying him defeated that purpose. (Docket #117-page 46 ¶ 4) Eventually, Woods was returned to work and paid for the time he was off.

---

[18] Dana Woods, Nathan Doss, Mardy Ringo, and Morris Tyson were African American employees subject to uneven discipline and suspension for contrived and less egregious offenses than Caucasian employees such as Pete Monstwillo, Karl Meyers and Mark Baker among other employees.
Kelvin Walsh was involuntarily terminated; unlike any other involuntarily terminated employee in the history of Mars Manteno he was given a severance package equivalent of his salary of $10,000/per month.  It was conditioned on him helping Defendant with various HR matters and litigation.

Plaintiff asserts that defendant intentionally made an example out of Woods as it had done so with other African Americans by first suspending him for some contrived reason, alleging that an investigation[19] would ensue and it would not.  Defendant had a fiduciary duty to the employees which it breached by not following its policies *(Long at 352)* with regards to incident reporting and investigations (Docket #83-17 pg. 2-3).

Additionally, defendants vexatiously protracted the time to resolve the issues to intentionally inflict economic and mental duress and stress.  This deliberate and willful act created situations of irreparable financial harm and despair from not knowing their fate; leaving the employees in turmoil and limbo. *Burlington Northern and Santa Fe Railway Co. v. White, 126 S.Ct. 2405 (2006)-*Docket #117 page 47 ¶4)

Plaintiff asserts that this was a heinous and deliberate way of terroristic psychological warfare to "beat the African American employees into subjection and submission."  Caucasian employees

_____

[19] Plaintiff and Szplett's were no longer able to conduct investigations; there was no other HR personnel onsite to conduct investigations. Additionally, no supporting evidence of investigations materialized or was placed in an employee's personnel file.

such as Pete Monstwillo, Karl Meyers and others were not subjected to such terms and conditions of employment

McCurry's write up of December 9, 2014 was contrived, as it was based on a policy that did not exist and a policy that was not in effect at the time it was applied. *(Docket #117 pages 11 n. & 22-23)*

When Varvel initially signed the mispunch slip, McCurry was not notified she violated a company policy until almost a week later, when she was written-up. <u>*Peirick v. Indiana University-Purdue University Indianapolis Athletics Dept.,*</u> <u>510 F.3d 681, 692 (7th Cir.2007)</u> (employer's failure to notify employee of problem is evidence of pretext).

Defendant had a progressive disciplinary policy it did not follow. (Docket # 117 pages 21 §16 and 57 ¶5).   Previously Defendant Varvel indicated to McCurry she was not punishing her by taking away her duties and that if she wanted to fire her she could just skip steps (Docket #117-13 pg. 2 ¶4).

*It* cannot be disputed that Varvel's decision to write-up McCurry was inconsistent with defendants' own practices and policies, including defendant's progressive disciplinary policy. *Rudin at 727* "[A]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext.").  Particularly since plaintiff had been working for defendants for so many years without incident, defendants' abrupt and cryptic adverse employment decision supports the drawing of an inference that defendants were motivated by some impermissible reason. *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 673-74 (7th Cir.2009) (summary judgment is inappropriate when an adverse employment decision occurs without warning after nearly fifteen years of uninterrupted service"). Suspicious timing is additional evidence of defendants' intent." *Loudermilk v. Best Pallet Co.,* 636 F.3d 312, 315 (7th Cir.2011) at 315

McCurry established pretext by showing that: (1) discriminatory intent more likely than not motivated the employer; or (2) "the employer's proffered explanation is unworthy of credence" because the defendant's explanation had no basis in fact, was not

the real reason for the adverse action, or was insufficient to justify
any adverse action. (Docket #117 pages 10-11, 17-29 & 57) *ABDEL-
GHAFFAR v. ILLINOIS TOOL WORKS, INC.*, No. 12 C 5812 (N.D. Ill. Sept. 30,
2015)*; Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995).

McCurry raised a genuine issue of fact when she identified the
inconsistencies in her employer's explanation for the adverse action
it took in disciplining McCurry for a mispunch slip. (Docket #117
pages 11, 17-23 & 28) *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th
Cir. 2007); *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001) at 889.
McCurry "specifically refutes facts which allegedly support the
employer's claim" *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d
375, 378 (7th Cir.1995) and the hiring of Varvel.

"Where an employer's reason for an adverse employment
action is without factual basis ..., that is evidence that an employer
might be lying about its true motivation," *Hobgood v. Illinois Gaming
Board*, 731 F.3d 635, 646 (7th Cir.2013). And, "[W]hen the sincerity
of an employer's asserted reasons for an adverse employment

decision is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation...." *Gordon* at 889.

All of the other reasons, offered by defendant, such as plaintiff was observed, cannot serve as the basis for summary judgment because there is no evidence that defendants identified those reasons before plaintiff accused them of discriminating against her. (Docket #117 page 28) *Fischer v. Avanade, Inc.,* 519 F.3d 393, 407 (7th Cir.2008).

Moreover, the statement that plaintiff was observed lacks foundation because it does not disclose the speaker's identity, making it impossible to determine whether he or she had personal knowledge about this issue. Plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that plaintiff should not be routinely required to submit evidence over and above proof of pretext-*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

McCurry discharged her responsibility under Rule 56(e) by going beyond the pleadings, ....... and designating "specific facts showing that there is a genuine issue for trial." _Fed.R.Civ.P._ 56(e); _Celotex,_ 477 U.S. at 324, 106 S.Ct. at 2553.

Under the "pretext-only" rule, if the plaintiff can successfully show that the reasons proffered by the employer for her adverse employment decision are factually false, then she is automatically entitled to a judgment in her favor.  According to these courts, a finding by the district court that the employer's proffered justification is false "is itself _equivalent_ to a finding that the employer intentionally discriminated." _Anderson v. Baxter Healthcare Corp.,_ 13 F.3d 1120 (7th Cir. 1994) citing _Duffy v. Wheeling Pittsburgh Steel Corp.,_ 738 F.2d 1393, 1396 (3rd Cir.), _cert. denied,_ 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984)

Moreover, plaintiff survived the 12(b)6 motion and competently plead her conspiracy claims.  Additionally, defendant did not specifically identify the deficits and did not point to anything in the record to support this proposition.

Consequently, Defendant did not properly discharge its burden of establishing that there is no genuine issue of material fact.

## GAMESMANSHIP

Defendants have been "gaming" the system.

## THE ESTOPPELS

McCurry contends that the defendants should be estopped pursuant to the doctrines of Res Judicata, Collateral and Judicial Estoppel

This case is a clear example of the doctrine of res judicata. Res Judicata applies when there is: (1) a final judgment on the merits, (2) identity of the cause of action in both an earlier and later suit, and (3) identity of parties or in privity in the matters-_Hayes v. City of Chicago_, 670 F.3d 810 (7th Cir. 2012) at 813.

Vernon Henry filed several charges of discrimination with the IDHR and EEOC, culminated and concluded his matters in the district court in 2018.  Henry engaged in protected activity when he reported claims of discrimination, harassment, hostile work environment amongst other things to management and McCurry; the HR administrator for the Mars Manteno facility.

In the case of Henry V. Kenco/Mars in 2015CF0034 and 21BA42027 and in 15-CV-10961, herein "Henry," Defendants contended throughout the matter that they had a policy relative to hiring and promotion. (Docket #117 page 53 ¶1 & n.24 & Docket #82-13, 15-CV-10961 Dkt. #28 pg.2-SA-pg.40 & 56)

Defendants stated in this matter that they did not have policy relative to promotion (Docket #118-7 ¶3). Contrarily, in defendants' motion for summary judgment defendants assert that McCurry did not apply for the position of HR Manager, suggesting that there was a process, to which Defendants did not produce any evidence of the process, supporting the nexus that there was a policy.

In the case of Henry, Defendants asserted that McCurry had given Henry the wrong process to follow in applying for the Coordinator's position and that by him not applying for the position, Henry's claim of failure to promote in retaliation for complaining about racially motivated threats from Pete Monstwillo would fail.  Defendants also went on to say in that instance Henry misunderstood Monstwillo's intent (SA-pg.44-n.) and in the other instance when Monstwillo tried to kill Henry with the fork lift that Monstwillo was just "horse playing" (SA-pg.13).  McCurry received reports of these incidents and in turn reported them to management. (SA-pg.16)

Defendants have intentionally taken inconsistent positions relative in avoiding liability and culpability relative to claims of discrimination; defendants actions were deliberate and an obstruction to justice and its administration.   Consequently, the doctrine of Res Judicata is applicable. _SKIBBE v. US BANK TRUST, NA_, No. 16 C 192 (N.D. Ill. June 9, 2017) at §B citing _Russian Media Grp., LLC v. Cable Am., Inc._, 598 F.3d 302, 310 (7th Cir. 2010).

Plaintiff asks the court to take judicial notice under FRE 201 of the
Defendants position in "Henry" that defendants have written
policies related to promotion (15-CV-10961 Dkt.#28  pg. 2 & Docket
#82-13) and their contrary position in this matter. (Docket #118-7
¶3)


In the case of Szplett Kenco/Mars in 2015CA3083 and
21BA51536 and IDOL Wage Claim No.-15-001523, herein "Szplett
Matters" in Defendants verified and position statements to the
IDHR/EEOC, and IDOL Defendants contended that Szplett was not
the HR Manager.


Defendants also contended throughout these matters that
Leonard Szplett was either the Office or Accounting Manager for the
Mars Manteno facility (SA-pg.021 & 143).  Additionally, Defendants
intimated this same contention on the administrative level in this
matter.

## Furtherance of the Scheme

As aptly noted by another court in this circuit, "[l]itigants must live with the stories that they tell under oath," and while "[t]he legal system offers many ways to deal with problems; perjury [or lying] is not among them." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907 (N.D. Ill. 2015) (July, 17 2018 citing *Escamilla v. Jungwirth,* 426 F.3d 868, 870 (7th Cir. 2005), *abrogated on other grounds by McQuiggin v. Perkins,* 133 S. Ct. 1924 (2013).

## The BACKDROP TO THE Contrivance of the Scheme to Advance the Pretext

After a former employee filed formal charges, McCurry spoke with outside legal counsel for defendants, Karen Smith of Miller & Martin of Chattanooga, TN Docket #117 page 6 ¶ 1-7 & Docket #119-16.

It was at this time that defendants began mischaracterizing McCurry as a "clerk" in an effort to avoid culpability and liability for having known and failing to address the complaints made by the employee of discrimination, retaliation and numerous health and

safety violations[20] ranging from: the spread of human feces, vermin infestation of various kinds including bats, birds and mice, exhaust fan failure to mediate ammonia spills amongst other potential public health safety issues and crises. Moreover, defendants intentionally excluded McCurry as a witness to this matter. Docket #117 page 8 ¶3-Docket #119-18.

However, defendants were aware that McCurry was the HR Administrator and that she had performed those responsibilities for more than fourteen (14) years.  Defendants were so much so aware of this that it was on their internal website Docket #117 page 13 § v and Docket #118-10.

Consequently, in order to prevail against litigant and others, to which defendants did, defendants propagated this patently false statement of McCurry being a "clerk" and her inability to receive or

---

[20] These health and safety violations affected every employee, their families and the surrounding community potentially transmitting germs, viruses, and diseases to others from being exposed to human fecal matter or being exposed to  9,500 pounds of ammonia.  Additionally, Mars, Inc. consumers across the globe could have been affected by food products contaminated by vermin or their feces.

address employee complaints[21] to support their contention that Defendants were not aware of such conduct.

In contrast to the McCurry matter before the court, defendants now in summary judgement refer to Szplett's as the HR Manager; intimating that he was paid more because he was her manager.

More specifically, defendants have previously asserted that they have never had an HR Manager's position before and the position that Varvel assumed was newly created with different duties. SA-pg.143 ¶4 §2.

This is a patently false and misleading statement made by defendants to "game" the judicial system into adversely ruling against plaintiff and others, in violation of plaintiff's and others protected rights and; to obstruct justice and its administration and the right to an expedient trial, and to ultimately undermine the integrity of the judicial system.

---

[21] In Brown v. Kenco 3:10-CV-668, the Administrative Assistant, a substantially lower position than plaintiff was empowered to conduct investigations relative to claims of discrimination. Tammi Fowler was the Senior Manager of Employee Relations, just as she was when McCurry was the HR Administrator.

Therefore, it would be unreasonable to assert for fifteen (15) years since the inception of the facility in 1999, when McCurry began working at the facility with over 500 employees at one time that McCurry had not encountered episodes of various types of disparity, conflict, injustices and inequality; no new duties, tasks and responsibilities were derived, added or adduced that had not previously existed and have not previously been performed by McCurry and Szplett's.

"In general, the doctrine of claim preclusion or *res judicata* bars a party from asserting a claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Skibbe* at §B

Consequently, the doctrine of Res Judicata is applicable here, as one of the causes of actions for McCurry before this court arose out of the Madison matters-(Docket #81-11); with decisions being

rendered based upon the theory that McCurry was the "clerk" and Szplett being the HR Manager.

Plaintiff also asserts that collateral estoppel is applicable, as collateral estoppel "refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided." _Meyer v. Rigdon,_ 36 F.3d 1375, 1378 n.1 (7th Cir. 1994). Collateral estoppel is broader than _res judicata_ because it bars relitigation of facts conclusively determined in a previous proceeding even if that court did not have jurisdiction over the later claim. _Grogan v. Garner,_ 498 U.S. 279, 284-85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) .

Plaintiff believes that this doctrine holds true in both the Henry and Szplett matters. As the common nucleus of operative facts asserted in Henry was that there were claims of discrimination, retaliation and a policy for promotion and in Szplett there were claims of discrimination, retaliation, and plaintiff was a clerk who reported to Szplett's, who was either the Office or Accounting Manager _SA-pg.-021 &143_.

Additionally, Defendants should be judicially estopped as it has now changed its theory in this matter before the court relative to its promotion policies-(Henry) and that of Szplett's being the HR Manager in an attempt to support a claim that HR Manager's position filled by Varvel was newly created and that he was just a manager.

Judicial estoppel "prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." _Wells v. Coker,_ 707 F.3d 756, 760 (7th Cir. 2013); _see also In re Knight-Celotex, LLC,_ 695 F.3d 714, 721 (7th Cir. 2012).

The purpose of the doctrine is "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." _New Hampshire v. Maine,_ 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotations marks and citations omitted).

Likewise, applying this doctrine to this matter will prohibit defendants from deliberately skating by on not producing policies relative to hiring and promotion, as well as, asserting in this matter that Szplett's was and was not the HR Manager or that the HR Manager's position was newly created as incorrect, patently false and inconsistent with their previous statements in the cases of Henry and McCurry. Jones at 1095

"By making [litigants] choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying." *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006) (quoting *Chaveriat v. Williams Pipe Line Co.,*11 F.3d 1420, 1428 (7th Cir. 1993)

Plaintiff vehemently asserts Varvel's hiring was a pretext, as it is apparent that defendants were intentionally and willfully dishonest about the reasons it offered for hiring Varvel in this matter versus the reasons given in other matters[22].

---

[22] In Szplett's matter- 2015CA3083/21BA51536, Defendant Kenco stated they hired Varvel because of all the charges of discrimination filed against them and that Szplett was not the HR Manager (Docket #119-8 ¶4 §2).

Additionally, defendants conveniently used Szplett's title as HR Manager when it would benefit them in the matters of McCurry and others; while initially evading at the administrative level of this matter the fact that Szplett's was the HR Manager to cover up the true temporal proximity between McCurry's protected activity and the adverse employment decisions.

Plaintiff contends that the reasons offered by defendants for hiring Varvel was pretextual[23] to defendants contrived scheme to avoid lability and culpability for the hostile work environment charged with racial animus that defendants fostered, as well as, disparaging and disparate treatment and impact of plaintiff and other protected class persons through unlawful acts of discrimination and retaliation.

In short, Plaintiff contends that one of the reasons defendants hired Varvel was the reason given by Jay Elliott in Defendant

---

[23] Plaintiff also asserts this action was a deliberate obstruction to justice and its administration.

Kenco's position statement to the IDHR/EEOC that Varvel was

hired because of all the charges of discrimination filed against

them. Docket #119-8 ¶4 §2

Essentially, defendants intentionally lied to the various courts

and agencies to "game" the system and thwart Plaintiff's and others

legitimate claims against them. *Id.*

As a direct result of this, plaintiff asks the court to take

judicial notice under FRE 201 of the Defendants position in 1) the

"Szplett Matters" identifying Szplett's other than the HR Manager

and; 2) defendant's reason for Varvel's hiring in Szplett's-

2015CA3083/21BA51536.

Defendants should be estopped to prevent them "from playing

`fast and loose' with the courts by prevailing twice on opposing

theories."-*US v. Hallahan*, 756 F.3d 962 (7th Cir. 2014).

Moreover, plaintiff contends that the defendants filed the summary judgment motion riddled with intentional patently false statements[24] under these false pretenses to prejudice, harass, hinder, delay and thwart McCurry's right to due process, obstruct justice and its administration, impede her due restitution for the wrongful acts committed against her and other litigants whereby McCurry was in privity to their complaints and litigation.

**Plaintiff contends that Defendant's actions are/were a willful and deliberate abuse to the judicial** process as their actions of filing summary judgement motions were unsupported by fact or law and was conducted in bad faith." _Secrease v. Western & Southern Life Ins. Co._, 800 F.3d 397 (7th Cir. 2015); _Salmeron v. Enterprise Recovery Systems, Inc._, 579 F.3d 787, 793 (7th Cir.2009); _Chambers v. NASCO, Inc._, 501 U.S. 32, 48-49 (1991); _Greviskes v. Universities Research Ass'n_, 417 F.3d 752, 758-59 (7th Cir.2005).

---

[24] This Court has been noted as disfavoring false statements. _In re Bagdade_, 334 F.3d 568 (7th Cir. 2003) at 583.

*Defendants' actions of propagating different theories have created a genuine material issue.*

Furthermore, Plaintiff asserts and contends that the courts generally have an interest in both punishing a party's dishonesty and deterring similar misconduct. *Secrease,* 800 F.3d at 402; *Greviskes,* 417 F.3d at 759. Lying cannot be condoned in any formal proceeding. *See ABF Freight System, Inc. v. N.L.R.B.,* 510 U.S. 317, 323 (1994)("False testimony in a formal proceeding is intolerable.")

Thus, "[p]arties who wish to use the judicial system to settle disputes have certain obligations and responsibilities" and "[o]ne of those responsibilities is to tell the truth." *Rodriguez v. M & M/Mars,* 1997 WL 349989, *2 (N.D. Ill. June 23, 1997.

'[P]erjury strikes at the heart of the integrity of the judicial system....'" *United States v. Stokes,* 211 F.3d 1039, 1046 (7th Cir.2000).* It "undermines the function and province of the law and threatens the integrity of judgments" *United States v. Alvarez,* 132 S.Ct. 2537, 2540 (2012) and "poisons the life blood of the

administration of justice." <u>United States v. DiStefano</u>, 464 F.2d 845, 854 (2nd Cir.1972).

"Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts." <u>Quela v. Payco-Gen. Am. Creditas, Inc.</u>, 2000 W.L. 656681 (2000) at *7. To which, Defendants intentionally and willfully disregarded in this instance and others as well.

## Civil Conspiracy

Defendants engaged in a number of civil conspiracies to violate Plaintiff's protected rights.

The defendants in an effort to conceal the truth about the racially charged hostile work environment, the pervasive and rampant discrimination, the adverse employment decisions toward Plaintiff and others, and their blatant breach in their duty of care by failing to uphold their fiduciary obligation to follow company and public policy a number of Defendants, such as Mars, Kenco, Fowler, Jabaley, Varvel, and other Kenco and Mars executive

management,[25] aided, abetted, fostered and condoned such

disparate acts of Walsh, Manzello, Lopez and others by failing to

investigate claims of discrimination, collusion, disparity of pay,

uneven discipline, retaliation, amongst other issues raised.

> Thus, the question whether an agreement exists
> should not be taken from the jury in a civil
> conspiracy case so long as there is a possibility that
> the jury can "infer from the circumstances [that the
> alleged conspirators] had a `meeting of the minds'
> and thus reached an understanding" to achieve the
> conspiracy's objectives.

_Hampton v. Hanrahan,_ 600 F.2d 600 (7th Cir. 1979) at 621 citing  _v._

_Kress & Co.,_ 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26

L.Ed.2d 142 (1970).


For example, Defendant Mars makes a materially false

statement to the district court in its motion for summary judgment

and in its affidavit in support of its motion for summary judgment.

Defendant Mars states that it was unaware of discrimination at the

Mars Manteno facility.

---

[25] Plaintiff asserts this included Paula Hise, Trace Spears, David Caines, Jay Elliott, Karen Smith and others.

This is a patently false and intentionally misleading statement to the court, as Defendant Mars, Inc. produced an email from the affiant, Todd Moore, stating to Robert Coffey, the onsite, Regional Distribution Manager that he was not happy about having to absorb the cost of hiring Varvel as the HR Manager (Docket #119-20).

Furthermore, Mars, Inc. was the paymaster and responsible for the salaries of all the employees at the Mars Manteno facility, as well as, the other operating cost of the facility, including legal fees (Docket #120-8). Essentially, Mars sanctioned the employment (hiring and firing) of the employees at the Mars Manteno facility (Dockets: #117-2, #83-30 pg. 4¶1, SA-pg.33 & 84).

Additionally, Mars, Inc. produced emails[26] that supported the fact that it had discussed the performance of individual employees at the Mars Manteno facility. Employee performance was discussed so much so, it was a part of Kenco's performance management to Mars, Inc.-Docket #117-2 & SA-pg.84. Emails also supported that

---

[26] Mars, Inc. produced a number of emails, although not exhaustive nor a fair representation of the emails between the parties, as the entire email chains were not provided or only excerpts of emails were provided or selected emails from persons or a periods of time where produced. This production was inconsistent with the Civil Rules of Procedures 26, 34 and 37.

Moore, Coffey and others on behalf of Mars had regular morning meetings regarding the facility. These meetings were established between Mars and the Mars Manteno facility at the inception of the facility in 1999.

Defendant Mars, Inc. provided a false affidavit to the district court to mislead and lull the court into believing that Mars was bereft of the knowledge that discrimination was occurring at the Mars Manteno facility, when in fact it had an onsite presence and it had funded the hiring of Lori Varvel as the dedicated HR Manager. This affidavit did not conform to Civil Rule of Procedure 56. Plaintiff identified these deficiencies in her response to the motion for summary judgment (Docket #'s117 & 120-1).

**_Defendants did not comply with Rule 56._** Failure to comply with the mandatory requirements of Rule 56 (e) "makes the proposed evidence inadmissible during the consideration of the summary judgment motion."

"These internal inconsistencies call into question the veracity of [his} statements." *BITLER INV. VENTURE v. MARATHON ASHLAND PETROLEUM*, 779 F. Supp. 2d 858 (N.D. Ind. 2011) at 879.

Jay Elliott, Defendant Kenco's in house counsel[27] affidavit did not comply with Civil Rule of Procedure 56-(Docket #120-1).  Elliott did not have personal knowledge of the matters and he did not attest to statements that he made during plaintiff's fact finding conference (Docket #120-3).

"[I]nternally contradictory affidavits [testimony] are generally disfavored."  *Buie v. Quad/Graphics, Inc.,* 366 F.3d 496, 505 n.5 (7th Cir. 2004).

---

[27] During the relative time when Plaintiff began being mischaracterized as a "clerk" in 2013 Elliott was the outside legal counsel for Defendant through the Law Office of Miller & Martin of Chattanooga.  More specifically, Smith and Elliott worked together for Defendant Kenco prior to Elliott becoming an employee of Kenco in late November of 2014.  Smith and Elliott can be traced back as far as 2008 working for Defendant Kenco in Brown V. Kenco.  It was during this time that Smith and Elliott adduced and presented to that district court that Kenco had a habit of treating African-Americans more harshly than non-African Americans.
In more recent matters, including Plaintiff's, Elliott, attorney of record, participated in fact finding conferences providing information about which he had no firsthand knowledge, even after stating to IDHR/EEOC investigators that he lacked such knowledge (Docket #118-11 & Docket #120-3*).*

Furthermore, none of the defendants provided an affidavit to support that plaintiff actually violated the policies cited in the write-up.

> *In Friedel at 970* it stated:
>
>> The use of affidavits by counsel is in certain carefully confined situations undoubtedly appropriate, but it is a tactic fraught with peril, and counsel must remember that the requirements of Rule 56(e) are set out in mandatory terms and the failure to comply with those requirements makes the proposed evidence inadmissible during the consideration of the summary judgment motion.

## In CONTINUUM of the Scheme

Defendant Kenco also hired Jay Elliott[28] as its in house counsel to intentionally interfere and obstruct the administration of justice by actively participating in the administrative processes, a requisite of Title VII claims, by providing information, testimony and documentation[29] to the account of incidents that occurred prior to his employment.   Elliott also indicated that he lacked access to employees.  Elliott became defendants' proxy during the requisite investigation stage.  (Dockets: #118-11, #120-3)

---

[28] The hiring of Jay Elliott according to Defendant Kenco's policy required the recommendation of the VP or higher and the approval of the CFO and President of the company. Docket # 117 page 60 n. 25 & Docket #82-13.

[29] By way of U.S. mail.

Plaintiff contends that every action of Elliott and defendants was a concerted and deliberate effort by defendants and Kenco's and Mars' executive management and officers to escape liability, obstruct justice, interfere and thwart plaintiff's and other litigant's legitimate claims of unlawful acts from being brought to justice.

Elliott's and Kenco's business/employment relationship created a financial motive for Elliott to obstruct in continued violation of plaintiff and others protected rights and deprive them of their due process and restitution.

Employees are provided with bonuses and other fringe benefits (Docket #113-2 pg. 77 & 81).  Therefore, it is not unreasonable to assert that Elliott and those involved in his hiring scheme to cover up unlawful conduct would safeguard their personal interests at whatever the costs and consequences to the due administration of justice. *US v. Cueto*, 151 F.3d 620 (7th Cir. 1998) at 633

These actions assisted defendants in filing the motion for summary judgment to conceal the truth about the hostile work environment, the disparate and disparaging treatment and impact upon plaintiff and others, along with all the other intentional and deliberate acts of deceit, patently false material misrepresentation of facts to the court, government agencies and tribunals. These actions were a deprivation to McCurry's protected rights; her rights of equal protection, her due process to obtain and exercise her right to and expedient trial and her restitution.

Defendants were aware when it filed its motion that it lacked tangible evidence to discharge itself of its burden of filing a motion for summary judgment.  Furthermore, defendants tendered evidence in this matter and other matters before other tribunals that clearly showed that Szplett's was the HR Manager and that Varvel was hired because of the numerous charges of discrimination filed against them and that Mars approved and underwrote the cost of Varvel's hiring.

Paramount to the scheme, defendants in its furtherance of its

schemes of collusion to deprive McCurry the defendants failed to

comply with the Civil Rules of Procedures 26, 33, 34, & 37

Defendants had a duty to disclose and to date has failed to do

so, despite stating in their response to plaintiff's interrogatories that

they had the requested information (Docket #80 §'s 6, 7, & 9), as

well as, making it publicly known on their website Docket #118-1.

Likewise defendants were simultaneously telling the court that it

had discharged its obligations relative to discovery. Docket #80-13

pg. 4 ¶11.  Defendants intentionally withheld information and

abused discovery.  This was in violation of Rule 37. Docket #79

**THE OPPORTUNITY: A SEGUE TO THE PRETEXT**

The mispunched time card provided a facially neutral (Docket

#117-pages 56 (¶8)-57) opportunity for defendants to contrive a

situation, an outright pretext, to subject plaintiff to an adverse

employment decision and uneven disciplining. The relevant

decision-makers, including Varvel, were aware of the protected

activity McCurry had engaged in at the time they took the adverse

action to establish a causal connection. *Luckie v. Ameritech Corp.,* 389 F.3d 708, 715 (7th Cir. 2004).

Moreover, defendant could not reasonably and or honestly believe the reason it gave for disciplining McCurry *(Forsythe v. TICOR TITLE INSURANCE COMPANY,* No. 2: 08 cv 337 (N.D. Ind. June 28, 2010), as the reason has changed several times from the initial write-up to now being someone observed[30] her working in the summary judgment based upon policies that did not exist at the time of the alleged infraction (Dockets # 117 page 57 ¶1-2 & 119-21). Varvel affirmed several days later that there was not a policy relative to employees working during unauthorized times. (Docket # 117 page 57 ¶4 & SA.pg.141).

The courts have held that conflicting accounts about employment decisions "constitutes further evidence as to the honesty of defendants' belief in imposing an adverse employment decision. *Snelling v. Clarian Health Partners, Inc.,* 184 F. Supp. 2d 838 (S.D. Ind. 2002) citing *Stalter v. Wal-Mart Stores, Inc.,* 195 F.3d

---

[30] Defendants failed to identify who observed plaintiff.

285, 291 (7th Cir.1999) Giving rise to that "changed or inconsistent stories may constitute evidence of pretext" _Hasham v. California St. Bd. of Equalz'n_, 200 F.3d 1035, 1047 (7th Cir.2000);

The selective enforcement of facially neutral regulations is no less insidious than outright discrimination _Cross v. Roadway Express_, 861 F. Supp. 698 (N.D. Ill. 1994) at 704 citing (_Fallon at 1211_ ; _Friedel at_ n. 5 ).

The plaintiff's "showing that the company did not enforce such a policy" is evidence from which the "jury ... could rationally conclude that the legitimate non-retaliatory reason offered by [the employer] was a pretext for the adverse employment decision."- _Coleman_ at 857.

Moreover, _Pryor v. City of Chicago_, 726 F. Supp. 2d 939 (N.D. Ill. 2010) at 943 states that "an affidavit must be grounded in first-hand observation and experience, not based upon speculation, rumor, or intuition that is remote from such experience. Citing _Visser v. Packer Engineering Associates, Inc._, 924 F.2d 655 (7th Cir. 1991) at 659

To further support its contrived scheme to conceal, the
remaining defendants[31] steered clear of either affirming or denying
or even addressing the existence of discrimination in its motion for
summary judgment or providing an affidavit or any affirmative
defense supported by the record.   Contrarily, according to Elliott,
in house legal counsel for Kenco, in another matter Varvel was
hired because of the numerous charges of discrimination filed
against it. Docket #117 page 48 ¶2 & SA-pg.143 ¶4§2.


On a motion for summary judgment, a court must not
consider parts of an affidavit that fail to comply with the rule.
_Friedel_ at 971 "Internal inconsistencies call into question the
veracity of the statements. *See* _Buie at_ n.5


"It is not enough to move for summary judgment without
supporting the motion in any way or with a conclusory assertion

---

[31] Mike Manzello stated in his interrogatory response that he was not aware of discrimination at the Mars
Manteno facility (Docket #80-7 pg.42 ¶5 & 6) despite signing a verified statement in that matter of Tracy
Davis Docket #81-14 pg.11-15-Docket #117 pages 29 (¶ 4) & 47 (¶ 5). Tammi Fowler also participated in
this response. Lopez stated in his interrogatories that he and Fowler were responsible for hiring Varvel.
Docket #80-9 pg. 39 ¶4.

that the plaintiff has no evidence to prove his case." *See Celotex,*

477 U.S. at 328, 106 S.Ct. 2548 (White, J., concurring)


These and other inconsistencies and patent falsehoods create

genuine issues of material fact. "Internal inconsistencies call into

question the veracity of the statements. *BITLER INV. VENTURE at*

*879*


## Obstruction of Justice in violation of 18 USC 1503-1505 & 1512(b) & (c)

1. Defendants providing misleading and patently false evidence.

   Plaintiff's disability benefits-Docket #112 pg. (SA-pg.161), no

   promotion policy-Docket #118-7 ¶3, affidavits-Dockets #120-1

   & 4, not knowing of discrimination –Dockets # 80 & 119-20

2. Refusal to produce policies and information despite stating

   that they have them. Docket #80-6(pg.52-94), 7 & 9.

3. Jay Elliott counsel of record and participant in the Fact

   finding conference-providing misleading and patently false

information[32]. Dockets: #117 pages 55(¶3) & 56 (¶4), #118-11, #120-3).

4. Jay Elliott & Todd Moore providing affidavit in support of Summary Judgement bereft of personal knowledge. Dockets: #120-1 & 4

5. Todd Moore providing a patently false affidavit to the court alleging that he did not know what was going on, when in fact he authorized the hiring of Lori Varvel. Docket #117 page 60 ¶6-Docket #119-20

The Seventh Circuit has defied the term "corruptly" as "to act with the purpose of obstructing justice." _Cueto_ at 630. Plaintiff asserts that defendants and others have acted corruptly in plaintiffs and others matters.

**Protective order**-

Defendants obtained a protective order[33] of the policies and documents that are at issue before the court.

---

[32] Defendants' schemes were furthered by the US Mail.

Defendants obtained this order disingenuously by not forwarding a copy of the motion so that plaintiff could properly make objections to the motion. Plaintiff was unable to overcome the order issued marking these documents confidential, despite them being at issue. Defendants used these same documents in their motion for summary judgment. (Docket #79 pg.7¶2)

This was prejudicial to plaintiff and caused irreparable harm to her case, as it limited her ability to get testimony from witnesses on this information.

**Rule 26 & 37 Violations**

1. Defendant Mars and Kenco intentionally failed to produce to plaintiff a copy of plaintiff's deposition prior to submitting their Motions for Summary Judgment to the court. (Docket #117 page 37)

---

[33] Plaintiff contends she was not served with a copy of the motion for a protective order and was prejudiced. During the relevant time Defendant served all of its correspondence by email and mail. Plaintiff has no record of this motion and has verified with UPS informed delivery.

2. Defendants' collective discovery answers are non-compliant
   with Rules 26, 33, 34 & 37 (Docket #117 pages 34-40) &
   Docket# 79)

**Further Deprivation, Prejudice and Injury**

In further contrivance to the scheme to cover up the unlawful
and retaliatory acts towards McCurry Defendants intentionally
failed to produce a copy of plaintiff's deposition prior to filing its
summary judgement under FRCP 37(c). (Docket #117-pages12 (¶6),
36 (¶3), & 37 & Docket #123).

The Seventh Circuit has held that the sanction of exclusion is
mandatory.  Holding that the exclusion of undisclosed evidence is a
mandatory sanction; _Happel v. Walmart Stores, Inc._, 602 F.3d 820
(7th Cir. 2010).

Defendants knew it had not disclosed this information in
support of its motion and that they were making false

statements, committing fraud and perpetrating a fraud on the court when it motioned the court for summary judgment.

Defendant Mars, Inc. rebutted that plaintiff "could have bought a copy of her deposition."[34] Docket #124

Defendants were also in violation of FRCP 37 with their intentionally evasive discovery answers to plaintiff. Defendants also objected to plaintiff's remaining discovery request by either indicating that it was overbroad, burdensome or irrelevant. Docket #79 & 85

These intentional failures to make disclosures to plaintiff are highly prejudicial.

## Additional Conflicting Information

## Spoliation of Evidence

Defendants have tampered with IDHR/EEOC file by paring the file of incriminating evidence.  Such tellingly "smoking guns" as

---

[34]  After the close of discovery, Mars engaged Plaintiff for a deposition. (Docket #103)

plaintiff's signed job description, emails indicating that corporate handled exempt job postings, that there was no policy regarding working during unauthorized times, and numerous other documents establishing defendants knowledge and involvement in unlawful activity.  The file was depleted of over a hundred pages of emails, policies, and correspondence.  Docket #117-pages 34 (¶'s 4 & 6)-36, Dockets: #79 (pg.6-12) & 102.


The court concluded that defendants had discharged their responsibility for discovery. Docket #102


The prevailing rule in the Seventh Circuit "is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." _Crabtree v. Nat'l Steel Corp._, 261 F.3d 715, 721 (7th Cir. 2001)


This purging was intentional and deliberate and was done in bad faith to obstruct justice, avoid liability, thwart and delay plaintiff's case.  Plaintiff contends this obstruction creates issues of

document authenticity for admissibility of evidence during trial and/or some other unknown impermissible reason.

## Failure to produce company policy

Defendant Kenco refused to produce company policy despite boasting on their website and in their handbook of having them electronically stored. (Docket #117- page 33¶4-6 & 61 ¶1)

Amid the Enron scandal, businesses developed retention policies for various business and legal reasons.  Defendants were subject to a seven year (7) document retention policy[35] in its auditing scheme in compliance with USC 21--Chapter I Subchapter A Part I Subpart M (Dockets: #117 pg.14 § ee & gg, n.6 & #117-7 (pg.2-6), #117-8 & 9).

Additionally, a party retains a duty to preserve evidence once it knows or should know that litigation is imminent. (Docket #117 page 36 ¶1-2) <u>Trask-Morton v. Motel 6 Operating, L.P., 534 F.3d 672, 681 (7th Cir. 2008)</u>.(Docket #82-4 page 2)

---

[35] The withholding or destruction of documents is akin to 18 USC 1520, as these documents are part of corporate audit documents. Docket 119-9 pg. 18 ¶ 159, 160, 162 & n.15

Accordingly, defendants did not discharge their responsibility with regard to discovery, their retention policies, and their duty to preserve.

Plaintiff asserts that defendants cannot claim these discovery violations were harmless and looks to the Court to "require a compelling reason to overturn circuit precedent. <u>US v. Jackson</u>, 865 <u>F.3d 946 (7th Cir. 2017) at 953; Santos v. United States, 461 F.3d</u> <u>886, 891 (7th Cir. 2006) at 891</u>

Furthermore, the "principles of stare decisis require that we give considerable weight to prior decisions of this court unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling." <u>Santos at 891 citing</u> <u>*McClain v. RETAIL FOOD*</u> <u>*EMPLOY. JOINT PENSION PLAN*, 413 F.3d 582 (7th Cir. 2005) at</u> <u>586</u>

**Plaintiff also seeks a judicial review of the following orders:**

1. Amended complaint. Docket #8

2. Defendant Mars 12(b)6 motion to dismiss. Docket #30 & 31

3. Defendant's Protective orders. Docket #52 & 63

4. Order to depose McCurry. Text Order 5/21/18

5. Summary Judgement. Docket #109, 110, 112 & 113

6. Plaintiff's Motions in limine. Docket #122 &123

7. Plaintiff's Motion for reconsideration. Docket #127

Plaintiff also seeks a review into the multiple waivers of service presented to the court that plaintiff did not initiate or authorize. Docket # 35

Plaintiff argues that a review of these items are necessary because plaintiff asserts that: 1) discovery and discovery issues were not adequately managed and; 2) the intentional exclusion of evidence and; 3) materially false statements and documents presented to the court and; 4) that it was a deliberate attack on the judicial system and the administration of justice and; 5) Defendant's acted with malice and in bad faith

CONCLUSION

The Seventh Circuit has now clarified the singular question that matters in a discrimination case: "[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." (*Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887 (7th Cir. 2018) at 894 )

For all the foregoing reasons, Petitioner-Appellant Edith McCurry requests this Honorable Court to vacate the District Courts decision on August 14, 2018 granting summary Judgement in favor of Defendants and; further requests that this Honorable Court review and rule on the specified Interlocutory Orders and any other orders the court deems necessary and; that the matter be remanded to the District Court for trial.

Respectfully Submitted

Edith McCurry


By/s/_____
Jordan T. Hoffman, her Attorney
ARDC No. 6195896
Jordan TraVaille Hoffman, P.C.
Counsel for Petitioner-Appellant
2711 E. New York St., Suite 205

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS


     1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 13,981 words, excluding the parts of the brief exempted from FED. R. APP. P. 32(a)(7)(B)(iii), determined by using the word count feature on Microsoft Word 2010.

     2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font for the text, 10-point font for footnotes, using Bookman Old Style, Georgia, Microsoft Sans Serif, Times Roman and Century Schoolbook throughout.


     Dated January 18, 2019


              **Jordan TraVaille Hoffman, P.C.**


              /s/_____

              Jordan T. Hoffman
              2711 E. New York St., Suite 205
              Aurora, IL 60502
              888-958-4529
              Plaintiff-Appellant-Mary Madison
              Case No. 18-1800

Case: 18-3206      Document: 11-1      RESTRICTED      Filed: 01/18/2019      Pages: 130

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on January 18, 2019, I submitted a copy of the Plaintiff's-Appellant Opening Brief with the UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT in the foregoing matter of Case No. 18-3206 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system:

/s/

Jordan Hoffman
ARDC-6195896
**Jordan TraVaille Hoffman, P.C.**
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 958-4529

Case: 18-3206   Document: 11-1   Filed: 01/18/2019   Pages: 130

REQUIRED APPENDIX

Case: 2:16-cv-02273-CSB-EIL # 125    Filed 08/14/18    Page 1 of 20
Case: 18-3306    Document: 15    RESTRICTED    Filed: 01/23/2019    Pages: 130

E-FILED
Tuesday, 14 August, 2018 09:14:20 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | |
|---|---|
| EDITH MCCURRY, ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. 16-CV-2273** |
| ) | |
| KENCO LOGISTICS SERVICES, MARS ) | |
| INC., KELVIN WALSH, MIKE ) | |
| MANZELLO, DAVID JABALEY, TAMMI ) | |
| FOWLER, LORI VARVEL, and ) | |
| MARIO LOPEZ, ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Defendant Mars, Inc. filed a Motion for Summary Judgment (#109) on June 20, 2018. The other Defendants, Kenco Logistics Services, Kelvin Walsh, Mike Manzello, David Jabaley, Tammi Fowler, Lori Varvel, and Mario Lopez, (collectively, "Kenco Defendants") filed their Motion for Summary Judgment (#112) on June 21, 2018.

*Pro se*[1] Plaintiff Edith McCurry filed her Response (#117) on July 26, 2018. While the Response was filed late, it appears to have been mailed on the due date. In its discretion, because the Response was mailed on the due date, the court will exercise lenience and will consider it.

---

[1] Plaintiff claims to be representing herself at this time. She stated in a deposition that she previously had an attorney, Jordan Hoffman, to whom she owes over $75,000 for work on the administrative charge which led to this case. She also asked Hoffman for help regarding an expert and damages, and did not know if she had asked him for additional assistance.

However, the court will not consider two Motions in Limine (#122, #123) that Plaintiff filed on August 1, 2018. To the extent that the Motions in Limine respond to Defendants' motions for summary judgment by seeking to exclude evidence from being considered at the summary judgment stage, the court notes that Plaintiff's Response was due on July 23, 2018, and filed on July 26, 2018. Any arguments responsive to the Defendants' Motions for Summary Judgment should have been included in that response. While the court is willing to consider the late Response that was mailed on the due date, the court will not allow the even later, piecemeal addition of arguments.

The Kenco Defendants' Reply (#121) was filed on July 31, 2018. For the following reasons, Defendants' Motions for Summary Judgment (#109, 112) are GRANTED in full.

## I.  FACTS[2]

Defendant Kenco Logistics is a third-party logistics company engaged in the business of transportation management, distribution, material handling, and related services. Defendants Kelvin Walsh, David Jabeley, Mario Lopez, Tammi Fowler, Lori Varvel, and Mike Manzello are supervisors or managers for Kenco.

On April 21, 2013, Kenco began performing logistics services for Defendant Mars, Inc., at Mars' warehouse located in Manteno, Illinois, pursuant to the terms of a

_____

[2]Even *pro se* parties must comply with the court's local rules. *Garcia v. Illinois State Police*, 545 F. Supp. 2d 823, 836 (C.D. Ill. 2015). Plaintiff's Response fails to comply with Rule 7.1(D) of the Local Rules of the Central District of Illinois. Pursuant to Local Rule 7.1(D)(2)(b)(6), Defendants' Facts are deemed admitted. And, due to the extent of its non-compliance with Local Rule 7.1(D)(2), this court will not attempt to glean any additional material facts from Plaintiff's Response.

written agreement with Mars. Kenco operated as an independent contractor, providing

warehouse management services at Mars' Manteno facility. Under the terms of the

agreement, Kenco had exclusive authority with respect to its employment policies,

promotions, discipline, and termination. Under the written agreement, Kenco itself was

not an employee of Mars, nor were Kenco's employees. Kenco was responsible for the

day-to-day operations of the warehouse. Kenco had policies in place to prohibit

discrimination and harassment, including requiring reasonable medical

accommodations to qualified individuals.

Kenco hired all of the individuals who worked at the Manteno facility. They

were all employees of Kenco, managed by Kenco. Kenco hired Plaintiff, Edith

McCurry, who is black and was born in 1962, as a Human Resources Administrator for

the Manteno Mars facility. She began working for Kenco effective April 21, 2013. She

filled out a Kenco Employee New Hire Form, not a Mars form. She does not remember

ever receiving any employment paperwork from Mars.

Plaintiff's duties were clerical, and included handling payroll, generating reports,

assisting with employee relations, and other related duties. She never supervised

employees, nor was she responsible for investigating complaints.

Kenco hired Plaintiff from the Manteno facility's predecessor management

company. Kenco also hired a Human Resources manager, Leonard Szplett, from the

predecessor management company. Szplett, with both accounting and Human

Resources duties, conducted Plaintiff's performance reviews. No Mars employee ever

evaluated Plaintiff's performance.  Kenco paid Plaintiff and Szplett at similar rates of

pay to their prior salaries, with Szplett earning more than Plaintiff.

On October 17, 2014, Kenco hired Lori Varvel, who was born in 1980, as a

Human Resources Manager.  Plaintiff did not apply for the position.  Varvel started

working for Kenco on November 10, 2014, and she became Plaintiff's supervisor at that

time.  Varvel would approve McCurry's requests for overtime when necessary.  Varvel

also supervised Valerie Lillie.  Prior to working at Kenco, Varvel worked as a Human

Resources Manager for Sears Logistics Services at a salary of $73,600, overseeing

policies, supervising other Human Resources employees, and investigating complaints

of harassment and discrimination.  Kenco hired her at a similar rate of pay to her prior

salary.

Varvel took on some of Plaintiff's duties concerning employee relations matters,

but Plaintiff's pay did not change.  Prior to Varvel's hiring, McCurry simply passed on

complaints to Tammi Fowler, in Kenco's corporate office, to investigate.

Plaintiff received a write-up, filled out by Varvel, on December 19, 2014.  It

appeared to Kenco that Plaintiff had worked until 6:39 p.m. after clocking out at 5:00

p.m. on December 9, in violation of company timekeeping policy.  Plaintiff admits that

she stayed at the Manteno facility until 6:39 p.m. that day, but does not recall what she

was doing there.  The write-up warned Plaintiff for working 1.5 hours of overtime

without authorization, misrepresenting her hours worked, and failing to report the

correct hours worked.  Plaintiff is unaware of any other Kenco employees who worked

unapproved overtime or misrepresented their hours, but did not receive a write-up. No one from Mars was involved in the write-up.

On January 7, 2015, McCurry filed a charge with the Illinois Department of Human Rights ("IDHR"). She was approved by Kenco for a job-protected medical leave of absence under the FMLA beginning on January 25, 2015. She did not interact with Mars regarding the leave of absence. On January 29, 2015, Kenco mailed notice to all of its employees at the Manteno facility to inform them that all Manteno employees were being terminated effective March 29, 2015, because Kenco lost its contract with Mars. Plaintiff maintains that she is still medically unable to work, and she has not worked since January 25, 2015.

After her termination, Plaintiff signed up for COBRA. She stated in her deposition that her COBRA costs changed a few times, and she did not receive open enrollment paperwork on one occasion. Her disability benefits were reduced after a third-party benefits administrator issued a determination that Plaintiff was capable of working 20 hours per week.

Plaintiff's coworker, Mary Madison, filed a charge with the IDHR. Kenco did not ask Plaintiff to be a witness in that case. Kenco hired in-house legal counsel to defend against Plaintiff's lawsuit, an action Plaintiff alleges is a conspiracy.

Plaintiff alleges that Mars' Regional Distribution Manager Robert Coffey knew about the hiring of Lori Varvel because Mars did not want to pay Varvel's salary. Plaintiff alleges that Coffey knew about accidents at the Manteno facility and issues between two Manteno Kenco employees because Coffey went to morning meetings

5

where he could have learned about those issues. Plaintiff never attended any morning
meetings when Coffey was present, so she could not be sure what was discussed there.
Coffey was very approachable, so employees were not afraid to talk to him about any
situations that arose. She did not tell Coffey or anyone else at Mars about any
discrimination against her.

## II.  ANALYSIS

Plaintiff filed her lengthy Complaint (#1) on August 29, 2016.  Following this
court's Order (#39) of February 7, 2017, ruling on motions to dismiss, the only claims
surviving to the summary judgment stage are: (1) a claim against Kenco, under Title VII
of the Civil Rights Act of 1964 ("Title VII"), that Kenco discriminated on the basis of
race and gender; (2) a racial discrimination claim against Kenco, Mars, and the
individual Defendants under 42 U.S.C. § 1981; (3) a claim under the Age Discrimination
in Employment Act (ADEA) against Kenco; (4) a claim under the Americans with
Disabilities Act (42 U.S.C. § 12101 et. seq.) ("ADA") against Kenco; and (5) a federal
conspiracy claim under 42 U.S.C. § 1985(3) against Kenco, Mars, and the individual
Defendants.  The Defendants now seek summary judgment in their favor on all of
Plaintiff's claims.

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing inferences which are only supported by speculation or conjecture. See *Singer*, 593 F.3d at 533. In addition, this court "need not accept as true a plaintiff's characterization of the facts or a plaintiff's legal conclusion." *Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 835 (C.D. Ill. 2010) (emphasis in original).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. *Waldridge*, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it

bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007),

citing *Celotex Corp.*, 477 U.S. at 322-23.

    B.  <u>Plaintiff's Claims Against the Kenco Defendants</u>

    The Kenco Defendants seek summary judgment in their favor on all of Plaintiff's

claims against them: (1) racial and gender discrimination under Title VII and § 1981; (2)

disability discrimination under the ADEA; (3) age discrimination under the ADA; and

(4) conspiracy under 42 U.S.C. § 1985(3).

        1.  *Discrimination Under Title VII and § 1981*

    The court will merge its discussion of the Title VII and § 1981 claims, because the

legal analysis is identical for those claims.  *Smith v. Chicago Transit Auth.*, 806 F.3d 900,

904 (7th Cir. 2015).  Plaintiff's Title VII claim of racial and gender discrimination is

against Kenco only.  Her § 1981 claim of racial discrimination is against all Kenco

Defendants, and Mars.  The § 1981 claim against Mars will be discussed separately,

below.

    The legal standard for determining whether an employment discrimination claim

should survive summary judgment is "simply whether the evidence would permit a

reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or

other proscribed factor caused the discharge or other adverse employment action."

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The court explained:

> Evidence must be considered as a whole, rather than asking whether
> any particular piece of evidence proves the case by itself—or whether
> just the "direct" evidence does so, or the "indirect" evidence. Evidence
> is evidence. Relevant evidence must be considered and irrelevant

evidence disregarded, but no evidence should be treated differently
from other evidence because it can be labeled "direct" or "indirect."

*Id.*

The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973) provides a formal way to analyze circumstantial evidence in some discrimination

cases.[3]  Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of racial

discrimination if she demonstrates, by a preponderance of the evidence, that: (1) she is a

member of a protected class; (2) she was meeting her employer's legitimate

employment expectations; (3) in spite of meeting the legitimate employment

expectations of her employer, she suffered an adverse employment action; and (4) she

was treated less favorably than one or more similarly situated employees who were not

in the protected class. *McDonnell Douglas*, 411 U.S. at 802; *Ferrill*, 860 F.3d at 500.

If Plaintiff makes this *prima facie* showing, the burden shifts to Defendants to

come forward with a legitimate, nondiscriminatory reason for the challenged

employment action and, if Defendants do this, then the burden shifts back to Plaintiff to

produce evidence establishing a genuine dispute of fact about whether Defendants'

reason was a pretext for discrimination.  *Ferrill*, 860 F.3d at 500.  "Pretext" is more than a

mere mistake; it "means a lie"—a "phony reason" for the employment action.  *Ferrill*,

860 F.3d at 500.

---

[3]*Ortiz* did not displace the *McDonnell Douglas* burden-shifting analysis. *Ferrill v.
Oak-Creek Franklin Joint Sch. Dist.*, 860 F.3d 494, 499-500 (7th Cir. 2017).

Plaintiff believes she was discriminated against on the basis of her race or gender because: (1) she was paid her less than the white, male Human Resources manager, Leonard Szplett; (2) she received a write-up in December 2014; (3) Kenco hired Lori Varvel as a Human Resources Manager for the Manteno facility instead of promoting Plaintiff to that position; and (4) Plaintiff's duties were reduced when Varvel was hired. Plaintiff also alleges that Defendant Kenco retaliated against her by: (1) not selecting her as a witness when Mary Madison filed an IDHR charge; and (2) hiring Varvel and reducing Plaintiff's duties.

### a. Unequal Pay

Plaintiff has failed to support her allegation that discrimination caused her to be paid less than Szplett. Szplett was not similarly situated to Plaintiff. Unlike Plaintiff, Szplett was a manager. In fact, he was *her* manager. They were both hired from the predecessor management company, and they were hired at similar rates of pay to what they had been earning for that company. Because Plaintiff has not shown that her job entailed equal skill, effort, and responsibility to her manager's job, or that of anyone else who received higher pay, she has failed to make out a *prima facie* case of unequal pay. See *Leong v. SAP America, Inc.*, 67 F. Supp. 3d 972, 985 (N.D. Ill. 2014). Thus, summary judgment in favor of Defendants is proper as to that claim. *Id.*

b. Write-Up

Plaintiff received a write-up in December 2014, which she believes was discriminatory. Defendants argue that the write-up was neither discriminatory nor an adverse action. The court agrees with both of Defendants' arguments.

Not everything that makes an employee unhappy is an adverse employment action under § 1981 or Title VII. *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). A materially adverse employment action is something that is more disruptive than a mere inconvenience or an alteration of job responsibilities, because "[o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Nichols*, 510 F.3d at 780. The Seventh Circuit has specifically held that "written reprimands without any changes in the terms or conditions of ... employment are not adverse employment actions." *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009).

Here, Plaintiff has shown no evidence that the write-up changed the terms or conditions of her employment. Therefore, it is not an adverse employment action. Moreover, there is no evidence that it was issued because of Plaintiff's race, gender, or any other protected category. Plaintiff has thus failed to establish a prima facie case, and Defendants are entitled to summary judgment on this claim.

### c. Failure to Promote

Plaintiff also argues that she was discriminated against when Kenco hired Lori Varvel as a Human Resources Manager. Plaintiff did not apply for Varvel's position, but she felt it should have been offered to her.

> To demonstrate a *prima facie* case for failure to promote, a plaintiff must produce evidence showing that: (1) she was a member of a protected class; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employer promoted someone outside of the protected class who was not better qualified for the position.

*Riley v. Elkhart Cmty Sch.*, 829 F.3d 886, 892 (7th Cir. 2016), citing *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016). A plaintiff's failure to establish any one of those elements warrants summary judgment for the employer. *Riley*, 829 F.3d at 892.

Plaintiff has not even established that she sought the position in question. She did not apply for it. Nor has she established that she was better qualified than Varvel. Varvel, unlike Plaintiff, had prior managerial experience. Plaintiff's duties were clerical, and included handling payroll, generating reports, assisting with employee relations, and other related duties. Plaintiff never supervised employees, nor was she responsible for investigating complaints. Prior to working at Kenco, Varvel worked as a Human Resources Manager for Sears Logistics Services, overseeing policies, supervising other Human Resources employees, and investigating complaints of harassment and discrimination.

In the absence of any evidence that hiring Varvel instead of promoting Plaintiff had anything to do with race, age, or any other protected factor, Defendants are entitled to summary judgment on the failure to promote claim.

### d.  Reduction in Duties

Plaintiff further believes that a reduction in her job duties constituted racial discrimination.  Initially, employees would report incidents to Plaintiff, and Plaintiff would pass on those reports to Tammi Fowler.  After Varvel's hiring, Varvel handled employee relations matters.  Defendants argue that this change in duties was not an adverse employment action.

The court agrees with Defendants.  Plaintiff has not shown some action that is more disruptive than an alteration of job duties, so she has not established an adverse action.  *Nichols*, 510 F.3d at 780.  Nor is there any indication that the decision to have Varvel deal with employee relations matters directly (in place of Plaintiff forwarding complaints to Fowler) had anything to do with Plaintiff's race or any other protected status.  Plaintiff failed to meet her burden of demonstrating a prima facie case. Defendants are entitled to summary judgment on this claim.

### e.  Retaliation

Plaintiff alleges that Defendant Kenco retaliated against her by: (1) not selecting her as a witness when Mary Madison filed an IDHR charge; and (2) hiring Varvel and reducing Plaintiff's duties.  To make out a *prima facie* claim of retaliation, plaintiff must show that: "(1) she engaged in protected activity; (2) she suffered an adverse

employment action; and (3) a causal connection exists between the two." *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017).  Plaintiff cannot make a *prima facie* case that she suffered an "adverse employment action" with regard to either retaliation allegation.

Kenco's decision not to call Plaintiff in the course of defending itself in an IDHR proceeding has nothing to do with the terms and conditions of Plaintiff's employment. It is not a materially adverse employment action, as it is not even an employment action.  Hiring Varvel was not a materially adverse employment action either.  While Varvel handled some employee relations matters previously handled by Plaintiff, that minor reduction in duties did not rise to the level of a materially adverse employment action, as discussed above.  Nor is there any evidence that Kenco's manner of defending itself before the IDHR or hiring Varvel was in any way related to any protected activity. Summary judgment in favor of the Defendants is warranted on this claim.

### 2. *Discrimination Under the ADEA*

An ADEA claim against Defendant Kenco also survived to the summary judgment stage.  The only alleged age discrimination that Plaintiff identifies is Kenco's hiring Varvel, who is younger than Plaintiff, as a Human Resources manager.  Plaintiff feels she should have been offered the position even though she did not apply for it.  As the court stated above in discussing the failure to promote claim, there is no evidence that hiring Varvel instead of promoting Plaintiff had anything to do with Plaintiff's age. Defendants are entitled to summary judgment on the ADEA claim.

### 3. *Discrimination Under the ADA*

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  Plaintiff claims that Defendant Kenco discriminated against her on the basis of disability when, after her termination, her COBRA costs changed and she did not receive COBRA open enrollment paperwork.  Defendant Kenco argues that such actions, even if true, are not attributable to it.

A third-party benefits administrator, not Kenco, handled COBRA notices and any communications related to changes in COBRA costs.  "It is well-established that in ERISA and COBRA-related disputes about the duties of the Plan Administrator, the proper defendant is the Plan Administrator."  *Thurston v. Borden Waste-Away Service, Inc.*, 1998 WL 456441, at *11 (N.D. Ind., May 19, 1998).  Kenco is not a proper defendant, and it is thus entitled to summary judgment on this claim.

### 4. *Conspiracy Under § 1985*

A federal conspiracy claim under 42 U.S.C. § 1985(3) against all Kenco Defendants and Mars also survived to the summary judgment stage.  In order to state a claim under § 1985(3), a plaintiff must demonstrate: (1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of a conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.  *Hernandez v. Joliet Police Dep't.*, 197 F.3d 256, 263 (7th Cir. 1999).  The plaintiff also must show some racial, or

otherwise class-based, invidiously discriminatory animus behind the conspirators'
actions, and that the conspiracy aimed at interfering with rights that are protected
against private, as well as official, encroachment. *Green v. Benden*, 281 F.3d 661, 665 (7th
Cir. 2002).

To establish the existence of a conspiracy, a plaintiff must show that the
conspirators agreed to inflict injury upon her; in other words, that they acted with a
single plan, the general nature and scope of which was known to each conspirator.
*Green*, 281 F.3d at 665.  Agreement may be inferred from circumstantial evidence, but
only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds
had occurred and that the parties had an understanding to achieve the conspiracy's
objectives.  *Green*, 281 F.3d at 665-66.

Plaintiff claims that the Kenco Defendants engaged in a conspiracy under
§ 1985(3) by hiring Jay Elliot as the Vice President of Legal to handle various IDHR
charges.  Defendants argue that Plaintiff has not properly alleged a conspiracy.  The
court agrees with Defendants.  An employer's decision to hire an attorney to defend it
in a legal action is not a conspiracy.  See *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507
(6th Cir. 2008).

Plaintiff also appears to allege that Mars participated in a conspiracy, presumably with the Kenco Defendants, by discriminating against her. She claims that Mars conspired against her by participating in racial discrimination against her, alleging that Mars played a role in hiring Varvel and that Mars was responsible for the Manteno facility.

Section 1985(3) has a limited application to private conspiracies, and it does not provide a means for bringing a racial, gender, age, or disability discrimination claim. See *Comtel Technologies, Inc. v. Paul H. Schwendener, Inc.*, 2005 WL 433327, at *7 (N.D. Ill., February 22, 2005) ("The great weight of precedential authority [ ] supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude and does not suggest that §§ 1981 or 1982 claims in general may form the basis of a § 1985(3) action."). Similarly, under the intracorporate conspiracy doctrine, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990) (citing *Dombrowski v. Dowling*, 459 F.2d 190, 196 (1972)). Instead, 42 U.S.C. § 1981 provides the proper means for bringing a discrimination claim, not 42 U.S.C. § 1985(3). Thus, it does not appear that § 1985(3) applies to Plaintiff's claim of a conspiracy to discriminate.

Even if § 1985(3) applied to such a claim, the court has already concluded that the

Kenco Defendants are entitled to summary judgment on all of Plaintiff's discrimination

claims.  Therefore, Defendants cannot have participated in a conspiracy to unlawfully

discriminate against Plaintiff.

C.  Plaintiff's Claims Against Defendant Mars

Defendant Mars seeks summary judgment in its favor on both of Plaintiff's

remaining claims against it: (1) racial discrimination under § 1981; and (2) conspiracy

under 42 U.S.C. § 1985(3).

1.  *Discrimination Under § 1981*

Plaintiff states that she sued Mars because Mars was responsible for hiring Kenco

and because Mars, through its Regional Distribution Manager Robert Coffey, was aware

of the hiring of Varvel and accidents and issues at the Manteno facility.  The court has

already concluded that the Kenco Defendants are entitled to summary judgment on

Plaintiff's conspiracy and racial discrimination claims.  Plaintiff does not allege that

Mars took any actions beyond employing Kenco and having knowledge of the Manteno

facility's operations.  Because Plaintiff failed to establish that Kenco discriminated

against her on the basis of her race, even if Mars were liable for the actions of Kenco,

Plaintiff has not established any discrimination for which Mars could have any liability.

2. *Conspiracy Under § 1985*

Plaintiff's only allegation that Defendant Mars participated in any conspiracy consists of her repeating her claim that Mars discriminated against her. She claims that Mars conspired against her by participating in racial discrimination against her, alleging that Mars played a role in hiring Varvel and that Mars was responsible for the Manteno facility. Again, § 1985 does not provides a means for bringing a discrimination claim. Further, even if it did, the court has already concluded that all Defendants are entitled to summary judgment on all of Plaintiff's discrimination claims. Therefore, Defendant Mars cannot have participated in a conspiracy to unlawfully discriminate against Plaintiff. Under these facts, Plaintiff cannot make any claim for racial discrimination against Mars under §§ 1981 or 1985. Judgment is entered for Mars on Plaintiff's claims.

IT IS THEREFORE ORDERED:

(1)    Defendants' Motions for Summary Judgment (#109), (#112) are both GRANTED in full. Judgment is entered in favor of Defendants and against Plaintiff. The final pretrial date of September 10, 2018, and jury trial date of September 18, 2018 are hereby VACATED. Any other pending motions are denied as MOOT.

19

(2)     This case is terminated.


ENTERED this <u>14th</u> day of August, 2018.

s/Colin S. Bruce

_____

COLIN S. BRUCE
U.S. DISTRICT JUDGE

Case 2:16-cv-02273-CSB-EIL Document 126 Filed 08/14/18 Page 1 of 1
Case: 18-3206 Document: 15 RESTRICTED Filed: 01/23/2019 Pages: 130
Judgment in a Civil Case (02/11)

E-FILED
Tuesday, 14 August, 2018 09:20:07 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | | |
|---|---|---|
| Edith McCurry, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case Number: 16-2273** |
| | ) | |
| Kenco Logistic Services LLC, Mars Inc, Kelvin Walsh, Mike Manzello, David Jabaley, Tammi Fowler, Mario Lopez, Lori Varvel, | | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT.** This action came before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that judgment is entered in favor of Defendants and against Plaintff.

**Dated: August 14, 2018**

s/ Denise Koester

Denise Koester
Acting Clerk, U.S. District Court

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

EDITH MCCURRY,     )
    )
    Plaintiff,     )
    v.     )      **Case No. 16-CV-2273**
    )
KENCO LOGISTICS SERVICES, MARS     )
INC., KELVIN WALSH, MIKE     )
MANZELLO, DAVID JABALEY, TAMMI     )
FOWLER, LORI VARVEL, and     )
MARIO LOPEZ,     )
    )
    Defendants.     )

## ORDER

On August 14, 2018, this court entered an Order (#125) granting the Motions for

Summary Judgment (#109, #112) filed by Defendants. On August 28, 2018, Plaintiff

filed a Motion to Reconsider (#127). Plaintiff argues that the court made numerous

factual and legal errors in its Order granting the Motions to for Summary Judgment.

She argues that Defendants did not address many of the issues raised in her complaint.

She also asserts that she raised issues of material fact concerning the hiring of Varvel,

the write-up, Mars' misconduct, and conspiracy, and that Defendants should have

provided transcripts of her deposition to her sooner.

Defendants, Kenco Logistics Services, Kelvin Walsh, Mike Manzello, David

Jabaley, Tammi Fowler, Lori Varvel, and Mario Lopez, (collectively, "Kenco

Defendants") filed a Response (#128) on September 11, 2018. The Kenco Defendants

note that a motion to reconsider is not meant to give litigants a second bite at the apple, and they argue that Plaintiff's request to re-litigate the court's prior rulings should be denied.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996).  It is inappropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider.  *Id.* at 1270.

The court sees no reason to reconsider its prior Order.  Plaintiff believes that her version of events should have carried the day.  She claims that she followed the court's local rules.  She did not.  As noted in the court's Order, Plaintiff's Response did not comply with Local Rule 7.1(D) which concerns motions for summary judgment and responses and replies to such motions.  The court will now provide greater detail about Local Rule 7.1(D) and Plaintiff's Response's extensive lack of compliance with it.

Local Rule 7.1(D) states that a response to a motion for summary judgment must include specific sections with appropriate headings: introduction, response to undisputed material facts, and argument.  Local Rule 7.1(D)(2)(a) provides that the introduction section must include a brief summary of the legal and factual basis for opposition to the motion for summary judgment, and Local Rule 7.1(D)(2)(c) provides that the argument section must respond directly to the argument in the motion for summary judgment.  Local Rule 7.1(D)(2)(b) further provides that the response to undisputed material facts section must include, in separate subsections: undisputed

RA-24

material facts, disputed material facts, disputed immaterial facts, undisputed immaterial facts, and additional material facts.  Each fact conceded to be undisputed and material must be listed by number.  Each fact conceded to be material, but claimed to be disputed, must be listed by number and supported by evidentiary documentation referenced by specific page.  For each fact that is disputed and immaterial, the response must list the fact by number, state why it is immaterial, and support the claim that it is disputed with evidentiary documentation referenced by specific page.  Each fact which is undisputed, but claimed to be immaterial, must be listed by number with a reason stated why the fact is immaterial.  Additional facts must be listed and numbered and supported by evidentiary documentation referenced by specific page.  Under Local Rule 7.1(D)(2)(b)(6), "[a] failure to respond to any numbered fact will be deemed an admission of the fact."

Plaintiff's Response did not contain any of these sections.  It did not include an introduction containing a summary of the legal and factual basis for opposition to the Motions for Summary Judgment, or a self-contained argument section responding directly to the argument in those Motions.  While it contained no labeled argument section, it appears that if an argument section had been delineated, it would have violated the page and type volume limitations as described in Local Rule 7.1(D)(5) as various arguments appear scattered across most of the 61 pages of the Response.  Plaintiff responded to some facts by number, but only to say, in one sentence, that she "objected" to them.  She did not state the basis for her objections or respond to each such fact with evidentiary documentation referenced by specific page or a reason why

any facts were immaterial, as required by Local Rule 7.1(D)(2)(b). She did not list and number additional facts in their own section, as required by Local Rule 7.1(D)(2)(b)(5). While she did sometimes include some citations to exhibits, and she did attach exhibits, she did not reference specific pages in those exhibits as required by Local Rule 7.1(D)(2)(b)(5).

As a consequence of Plaintiff's non-compliance with Local Rule 7.1(D) and pursuant to Local Rule 7.1(D)(2)(b)(6), the court in its Order (#125) deemed Defendants' facts admitted, and it did not attempt to glean additional facts from Plaintiff's Response. Plaintiff argues that the court did not view the evidence in the light most favorable to her. This is incorrect. Moreover, the court attempted to be as indulgent as possible with Plaintiff, as Plaintiff was proceeding *pro se.* Nevertheless, the court simply applied its Local Rules. Even *pro se* parties must comply with the court's local rules. *Garcia v. Illinois State Police*, 545 F. Supp. 2d 823, 836 (C.D. Ill. 2015).

Plaintiff argues that Defendants' Motions for Summary Judgment did not address all of the claims she raised in her complaint. However, not all of Plaintiff's claims survived to the summary judgment stage. As noted in the court's Order granting summary judgment in favor of defendants, the court had previously dismissed many claims. The court's Order (#39) ruling on motions to dismiss stated that the only claims surviving to the summary judgment stage were: (1) a claim, under Title VII of the Civil Rights Act of 1964, that Kenco discriminated on the basis of race and gender; (2) a racial discrimination claim against Kenco, Mars, and the individual Defendants under 42 U.S.C. § 1981; (3) a claim under the Age Discrimination in Employment Act

against Kenco; (4) a claim under the Americans with Disabilities Act against Kenco; and (5) a federal conspiracy claim under 42 U.S.C. § 1985(3) against Kenco, Mars, and the individual Defendants. The Defendants' Motions for Summary Judgment, and the court's ruling on those motions, addressed all of the surviving claims. Defendants had asked Plaintiff about all of those claims when deposing her, and Defendants' Motions for Summary Judgment responded to all of Plaintiff's specific deposition testimony as to how she claimed her rights were violated.

Plaintiff argues that Defendants could not support their Motions for Summary Judgment with her deposition because they did not send her transcripts of it before filing the Motions for Summary Judgment. The court disagrees. Plaintiff obviously was present at her own deposition, and Defendants attached the relevant transcripts to their Motions for Summary Judgment. The court does not find that Defendants had any additional unmet obligation to more quickly provide Plaintiff with transcripts of her own deposition.

Plaintiff's Motion to Reconsider also expresses disagreement with and befuddlement by the court's rulings on issues relating to Varvel and Mars. However, a plaintiff cannot use a motion to reconsider to rehash previously rejected arguments. *Caisse Nationale de Credit*, 90 F.3d at 1270. The court previously concluded that Plaintiff failed to sufficiently show that any action relating to Varvel amounted to an adverse employment action or had anything to do with Plaintiff's age, race, or gender, and the court also found that Plaintiff failed to show Mars had any liability for discrimination or conspiracy. The court will not depart from those prior findings at this time.

Plaintiff suggests that Defendant Mars' failure to respond to her Response to its Motion for Summary Judgment means that Mars' Motion for Summary Judgment should have been denied. The Local Rules provide otherwise. While a non-movant must either file a response to a motion for summary judgment or be deemed to admit the motion, a movant is not required to file a reply to the non-movant's response. See Local Rule 7.1(D). Local Rule 7.1(D)(3) states that the movant "*may* file a reply" to a non-movant's response. Local Rule 7.1(D)(3) (emphasis added). In this case, Plaintiff did not include a numbered section containing additional facts, so there were no such facts requiring a reply. The court properly granted Defendant Mars' Motion for Summary Judgment even though Mars did not file a reply to Plaintiff's Response to the Motion.

The court's Order (#125) properly granted the Defendants' Motions for Summary Judgment. The court properly applied its Local Rules, and it did not refuse to consider the facts in the light most favorable to Plaintiff. Defendants addressed all of Plaintiff's remaining claims in their Motions for Summary Judgment, and the court will not discuss previously rejected arguments as to those claims. Defendants properly referred to Plaintiff's deposition in their Motions for Summary Judgment, and Mars was not required to file a reply to Plaintiff's Response. Reconsideration is not warranted in this case.

IT IS THEREFORE ORDERED THAT:

(1)  Plaintiff's Motion to Reconsider (#127) is DENIED.

(2)  This case remains closed.

ENTERED this 17th day of September, 2018.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE