Case No. 18-3206
_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

EDITH McCURRY
Plaintiff-Appellant

v.

KENCO LOGISTICS, MARIO LOPEZ, MIKE MANZELLO, KELVIN
WALSH, LORI VARVEL, TAMMI FOWLER, DAVID JABALEY, AND
MARS, INCORPORATED
Defendant-Appellee
_____

On Appeal from the United States District Court
For the Central District of Illinois
Case No. 2:16-CV-02273

The Honorable Eric Long
and
The Honorable Bruce Sterling
_____

BRIEF OF DEFENDANT-APPELLEE MARS, INCORPORATED
_____

Kimberly J. Overbaugh, Esq.
Email:  koverbaugh@h-dlaw.com
HARMON & DAVIES, P.C.
2306 Columbia Avenue
Lancaster, PA  17603
Telephone:  717-291-2236
Facsimile:  717-291-5739
*Counsel for Appellee*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-3206

Short Caption: Edith McCurry v. Kenco Logistics, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mars, Incorporated

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Harmon & Davies, P.C.

(3)  If the party or amicus is a corporation:

   i)  Identify all its parent corporations, if any; and

      There is no parent corporation.

   ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

      There is no such company.

Attorney's Signature: s/  Kimberly J. Overbaugh          Date: 2/22/2019

Attorney's Printed Name: Kimberly J. Overbaugh

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** X   **No** _____

Address: 2306 Columbia Avenue

Lancaster, PA 17603

Phone Number: 717-291-2236          Fax Number: 717-291-5739

E-Mail Address: koverbaugh@h-dlaw.com

rev. 01/15 GA

# TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES ........................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ..........................................1

JURISDICTIONAL STATEMENT ....................................................1

STATEMENT OF THE ISSUES.....................................................2

STATEMENT OF THE CASE.......................................................3

    The Relationship between Kenco Logistics and Mars.............................4

    Ms. McCurry's Employment with Kenco........................................5

    Ms. McCurry's Allegations of Discrimination ...................................6

    Ms. McCurry's Allegations Against Mars......................................8

    Proceedings Before the District Court ........................................10

SUMMARY OF THE ARGUMENT .................................................10

ARGUMENT .................................................................11

    A.    Standard of Review for Appeal of Motion for Summary
            Judgment ..........................................................11

    B.    Ms. McCurry's Allegations of Racial Discrimination Against
            Mars Do Not Rise to the Level of a Compensable Claim Under
            42 U.S.C. §1981.....................................................12

            1. Mars was not Ms. McCurry's employer, and, as such, Ms. McCurry
               cannot recover against it for claims of employment discrimination.....13

            2. Joint employment, if found, does not implicate liability for the actions
                of Ms. McCurry's other employer, Kenco.............................17

            3. Ms. McCurry failed to produce evidence demonstrating racial
               discrimination under 42 U.S.C. §1981 by Mars ..................................20

            4. Ms. McCurry failed to produce evidence demonstrating racial
               discrimination by Defendant Kenco ....................................... 20

ii

C.      Ms. McCurry Failed to Identify a Protected Right Upon Which She
        Could Recover Against Purely Private Actors Under 42 U.S.C. §1985....23

        1.      §1981 cannot be the underlying basis for a right infringed by
                a §1985 claim .................................................................................24

D.      Even if Ms. McCurry Presented a Cognizable Claim Under §1985,
        She Failed to Produce Evidence That Mars or Its Employees Were
        Involved In a Conspiracy Against Her.......................................................26

E.      Ms. McCurry's Request That This Court Make a "Judicial Review"
        of Orders Not Subject to this Appeal, and Her Attempts to Present
        Additional Claims on Appeal, are Inappropriate and
        Should not Be Considered ........................................................................28

CONCLUSION.............................................................................................................29

PROOF OF SERVICE..................................................................................................30

# TABLE OF AUTHORITIES

CASES                                                                                    Page

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)........................................12

Allen v. City of Chicago, 865 F.3d 936, 943 (7th Cir. 2017)..................................29

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)..................................12

Bailey v. International Brotherhood of Boilermakers, Iron Ship Builders,
     Blacksmiths, Forgers and Helpers, Local 374, 175 F.3d 526, 529
     (7th Cir. 1999)..............................................................................................29

Beaman v. Souk, 7 F.Supp. 3d 805, 828 (C.D. Ill. 2014).......................................26

Bell v. City of Milwaukee, 746 F.2d 1205, 1255 (7th Cir.1984)...........................26

Bellaver v. Quanex Corp., 200 F.3d 485, 491 (7th Cir.2000) ...............................12

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278, 113 S.Ct.
     753, 122 L.Ed.2d 34 (1993) .........................................................................23

Brokaw v. Mercer County, 235 F.3d 1000, 1024 n. 20 (7th Cir. 2000) ..............23, 24, 25, n.4

Brown v. Philip Morris Inc., 250 F.3d 789, 806 (3d Cir.2001) .............................25

Boston v. U.S. Steel Corp., 816 F.3d 455, 464 (7th Cir. 2016)..............................22

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ..............................................12

Ceruitt v. BASF Corp, 349 F.3d 1055, 1060, n. 4 (7th Cir. 2003) ...................14, n.2

Comtel Technologies, Inc. v. Paul H. Schwendener, Inc., No. 04-C-3879,
     2005 WL 433327 at *7 (N.D. Ill. Feb 22, 2005) .........................................25

Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 273 (7th Cir. 2004) ................21

DiMucci Constr. Co., 24 F.3d 949, 952 (7th Cir. 1994)........................................14

Geier v. Medtronic, Inc., 99 F.3d 238, 240 (7th Cir. 1996)...................................12

Grant v. Trustees of Indiana Univ., 870 F.3d 562, 569 (7th Cir. 2017) ...........................16, n.3

Great American Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 376 (1979) ................23

Green v. Benden, 281 F.3d 661 (7th Cir. 2002) ......................................................26

Griffin v. Breckenridge at 403 U.S. 88, 101, 105 (1971) ........................................24

Hernandez v. Joliet Police Dept., 197 F.3d, 256, 263 (7th Cir. 1999)...................................26

Jackson v. Farmers Ins. Exch., No. 2:14-00250 WBS AC, 2015 WL 5026148
    (E.D. Cal. Aug. 25, 2015) ............................................................25

Jenkins v. Arcade Bldg. Maintenance, 44 F.Supp. 2d 524, 532 (S.D.N.Y. 1999)..................25

Jiminez v. Wellstar Health System, 596 F.3d 1304, 1312 (11th Cir. 2010) ...........................25

Johnson v. Greater S.E. Comm. Hosp. Corp., 903 F.Supp. 140 (D.D.C. 1995)...............25, n.4

Jones v. United Airlines, No. 11-C-6374, 2012 WL 6216741 at *8
    (N.D.Ill. Dec. 13, 2012) ............................................................28

Kizer v. Children's Learning Center, 962 F.2d 608, 611 (7th Cir.1992) ................................13

Libertad v. Welch, 53 F.3d 428, 447 n. 15 (1st Cir.1995)......................................25

Llampallas v. Mini–Circuits, Lab, Inc., 163 F.3d 1236, 1244–45 (11th Cir.1998)................18

Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 702–03 (7th Cir. 2015)................................15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) ................12

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ......................................13

McNealy v. Becnel, No. 14-2181, 2017 WL 2424331 (E.D. La. June 25, 2017)...................25

Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692, 695
    (7th Cir. 2000)...............................................................................12, 22

Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996)............................................13, 20

Nardi v. ALG Worldwide Logistics, 130 F. Supp.3d 1238, 1247-49
    (N.D. Ill. 2015)......................................................................................................14, 17

Nieman v. Nationwide Mut. Ins. Co., 706 F. Supp. 2d 897 (C.D. Ill. 2010)...........................13

Oxman v. WLS–TV, 846 F.2d 448, 452 (7th Cir.1988)............................................................13

Panko v. United States, No. 86-C-009, 1987 WL 11340 at *1-3
    (N.D.Ill. May 22, 1987) .........................................................................................28

Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir.1994) ....................................................19

Russ v. Watts, 414 F.3d 783 (7th Cir.2005) ..........................................................................26

Sanders v. Prentice-Hall Corp., 178 F.3d 1296 (Table), 1999 WL 115517 at *2
    (6th Cir.1999).......................................................................................................25

Sheikh v. Rabin, No. 11-CV-425, 2012 WL 5471085 (N.D. Ill. Nov. 9, 2012)....................25

Sklyarsky v. Means-Knaus Partners, L.P., 777 F.3d 892, 895 (7th Cir. 2015) .......................13

Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir.1993) .........................................................25

Torres-Negron v. Merck & Co., 488 F.3d 34, 41 n. 6 (1st Cir. 2007)....................................18

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985).................................................13

Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir.1991)...............................19

Wells v. Rhodes, 928 F.Supp.2d 920, 930 (S.D.Ohio 2013) ...........................................25, n.4

Westbrook v. Keihin Aircon North America, No. 1:14-cv-9-WTL-DML,
    2014 WL 6908472 (S.D. Ind., Dec. 5, 2014).........................................................25, n.4

Whitaker v. Milwaukee County, Wis., 772 F.3d 802, 811-812 (7th Cir. 2014)...............13, 18

Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003) .........................................................26

Woodson v. Pfizer, Inc., 34 Fed. Appx. 490 (7th Cir. 2002)....................................................20

**STATUTES**

18 U.S.C. §§ 1503-1505 & 1512(b) & (c) ..............................................................................28

42 U.S.C. § 1981................................................................................................. P*assim*

42 U.S.C. § 1985.................................................................................................*Passim*

Fed R. Civ. P. 12(b)(6)...........................................................................................................3

Fed R. Civ. P. 56(c) ............................................................................................................12

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Mars, Incorporated (hereinafter "Mars") contends that Appellant Edith McCurry has presented a convoluted and baseless claim of discrimination against her former employer, Kenco Logistics (hereinafter "Kenco") and against Mars as an entity which contracted with Kenco to provide distribution services but maintained no control over Kenco's employees or policies related to those employees.  Ms. McCurry has extensively litigated this matter through wide-ranging discovery including the production of thousands of pages of documents, whether or not related to her case, and the presentation of numerous rambling, often incoherent motions.  Despite this exhausting and costly litigation, Ms. McCurry has failed to demonstrate any evidence of discrimination, as recognized by the District Court.  That Court's dismissal of Ms. McCurry's claims would be in line with prior rulings of this Court.  As such, Mars contends that oral argument is unnecessary in this matter, as Ms. McCurry presents no new or novel legal issues or arguments that could overturn the District Court's ruling.  In the interest of judicial economy and the avoidance of additional unnecessary litigation in this matter, oral argument need not be had.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Edith McCurry filed a Complaint in the United States District Court for the Central District of Illinois at docket 16-CV-2273 on August 26, 2016.  On September 7, 2016, Ms. McCurry filed a second Complaint in the U.S.D.C. for the Central District of Illinois at docket 16-CV-2277.  The District Court consolidated these two matters on January 3, 2017. In her two complaints, Ms. McCurry, holding herself out as acting pro se, brought a number of claims against Defendant-Appellees Kenco Logistics, Mike Manzello, Kelvin Walsh, Lori Varvel, Tammi Fowler, David Jabaley, and Mars, Incorporated, alleging (1) discrimination on

the basis of race under Title VII of the Civil Rights Act of 1964; (2) discrimination on the basis

of race under 42 U.S.C. §1981; (3) discrimination on the basis of gender under Title VII; (4)

discrimination on the basis of age under the Age Discrimination in Employment Act (ADEA);

(5) conspiracy; (6) intentional and willful interference; (7) aiding and abetting; and (8)

intentional infliction of emotional distress.  The District Court had federal question jurisdiction

under 28 U.S.C. §§1331 and 1343(a) for the alleged federal statutory claims, as well as

supplemental jurisdiction under 28 U.S.C. §1367(a) for Ms. McCurry's state law claims.

The District Court for the Central District of Illinois issued an order granting summary

judgment in the favor of all Defendant-Appellees as to all claims brought by Ms. McCurry on

August 14, 2018.  Judgment for the Defendant-Appellees and against Plaintiff-Appellant was

entered on the same day.  On August 28, 2018, Ms. McCurry filed a Motion for Reconsideration

of the District Court's August 14, 2018 decision granting summary judgment.  On September 17,

2018, the District Court denied Ms. McCurry's Motion for Reconsideration.  Ms. McCurry filed

her Notice of Appeal on October 17, 2018.  This Court has jurisdiction over this appeal under

28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

Ms. McCurry's Opening Brief, as with her arguments presented before the lower court,

are rambling and often incoherent.  The issues on appeal with respect to Mars appear to be:

1.      Whether this Court should overturn the District Court's ruling granting Summary

Judgment in Mars' favor as to Ms. McCurry's claims of Discrimination under 42 U.S.C. §1981

and Conspiracy under 42 U.S.C. §1985?

Suggested Answer:  No

2.      Whether this Court should overturn the District Court's ruling denying Ms.

McCurry's Motion for Reconsideration of its ruling granting Summary Judgment as to Mars because Ms. McCurry presented no new evidence or novel argument?

Suggested Answer:  No.

## STATEMENT OF THE CASE

This is an appeal of the decision by the U.S. District Court for the Central District of Illinois granting Summary Judgment in favor of Defendant-Appellees dismissing all claims brought by Plaintiff-Appellant Edith McCurry.  Ms. McCurry, holding herself out as acting *pro se* in the matter before the District Court, initially filed a rambling and virtually incoherent, 77 page, 386 paragraph, Complaint on August 26, 2016 alleging a number of acts that she contends constitute employment discrimination by Defendant Mars, Incorporated (hereinafter "Mars") and the other defendants in this case.  (Case No. 16-CV-2273, ECF # 1).  On September 7, 2016, Plaintiff filed another equally long-winded and confusing Complaint with 89 pages and 423 paragraphs, containing for the most part the same allegations as her initial Complaint.  (Case No. 16-CV-2277, ECF # 1).  The two matters were consolidated on January 3, 2017.  (Case No. 16-CV-2273, ECF # 3).

On December 30, 2016, Mars timely filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) Ms. McCurry's claims against Mars under the Discrimination in Employment Act and Title VII, as well as her claims for Conspiracy, Aiding and Abetting, Intentional and Willful Interference, and Intentional Infliction of Emotional Distress.  Mars' Motion to dismiss was granted by the District Court, which determined that Ms. McCurry failed to exhaust her administrative remedies and that Ms. McCurry's state law claims are preempted by the Illinois Human Rights Act.  The only claims as to Mars that survived were a claim for race discrimination under 42 U.S.C. §1981, and a claim for federal conspiracy under 42 U.S.C.

3

§1985.  The relevant factual background as to Ms. McCurry's remaining claims against Mars are:

**The Relationship between Kenco Logistics and Mars**

On April 18, 2013, Mars entered into a Warehouse Management Agreement with Defendant Kenco Logistic Services, LLC (hereinafter "Kenco") wherein Kenco would, as an independent contractor, provide warehousing management services at a warehouse facility located in Manteno, Illinois.  (Dkt. 110-1, pp. 1-7.).  The Warehouse Management Agreement between Mars and Kenco sets forth the relationship between the entities as that of independent contractor, and maintains that Kenco is not itself an employee of Mars and that Kenco's personnel are not employees of Mars.  (Dkt. 110-1, p. 14, ¶18.  Pursuant to the contract, Kenco was responsible for, among other things, management of the day-to-day operations of the warehouse.  (Dkt. 110-2, ¶3).  Under the terms of this Agreement, Kenco had sole authority with respect to its employment policies, including, but not limited to, promotions, discipline, relocation, or termination, and such policies are not subject to agreement or consent on the part of Mars.  (Dkt. 110-1, p. 14-15, ¶18).  The individuals who worked at the Manteno, Illinois facility were employees of Kenco and managed by Kenco pursuant to the contract.  (Dkt. 110-2, ¶9).

Kenco was expected to perform its management services within the Final Operating Budget agreed to between the parties.  (Dkt. 110-2, ¶10).  The Final Operating Budget included, among other things, wages to be provided to Kenco employees.  (Dkt. 110-2, ¶11).  According to the contract, Mars was not obligated to pay or reimburse Kenco for any expenses over a certain dollar amount which was not previously included in the Final Operating Budget absent written approval in advance of Mars' RDM or other authorized Mars personnel.  (Dkt. 110-2, ¶12)

4

**Ms. McCurry's Employment with Kenco**

On April 2, 2013, Kenco offered employment to Plaintiff Appellant Edith McCurry at the Manteno facility as a Clerk on the 1st shift.  Pursuant to this offer, Ms. McCurry's start date with Kenco was April 21, 2013.  (Dkt. 110-3, Ex. 5).  Ms. McCurry completed a Kenco Employee New Hire Form.  (Dkt. 110-3, Ex. 6).  Ms. McCurry was not asked to complete a New Hire Form for Mars, and she testified that she did not receive any employment paperwork from Mars.  (Dkt. 110-4, p. 33:13-19).  Mars was similarly not involved with managing Ms. McCurry's employment.  Kenco gave Ms. McCurry her paychecks.  (Dkt. 110-4, p. 13:23-24).  Ms. McCurry's benefits were provided by Kenco and she submitted her benefits election paperwork to Kenco.  (Dkt. 110-4, pp. 14:1-2, 36:11-14).  Mars did not conduct Plaintiff's performance reviews, and when Ms. McCurry took a leave of absence from work, she provided the necessary paperwork to Kenco.  (Dkt. 110-4, pp. 33:20-34:2, 35:22-36:1).  Indeed, she never asked anyone from Mars for a verification of employment as "Kenco was the manager who I was supposed to go to to ask for those things."  (Dkt. 110-4, p. 34:13-18).

On January 29, 2015, Kenco mailed notice to Ms. McCurry, and all Manteno, Illinois Kenco employees, that Kenco lost its contract with Mars, and all Manteno employees were being terminated, effective March 29, 2015 (Dkt. 113-1, p. 72:5-73:22.)  Ms. McCurry's employment with Kenco ended on March 29, 2015, at the same time every Kenco employee at the site was terminated.  (Dkt. 110-3, pp. 72:3-15, 72:21-73:4, 76:6-22; Ex. 8)   At her deposition, Ms. McCurry agreed that the only reason she was terminated from Kenco was because Kenco lost its contract with Mars.  (Dkt. 110-3, pp. 78:4-80:5)

**Ms. McCurry's Allegations of Discrimination**

Ms. McCurry has made a number of unsupported, conclusory allegations of discriminatory acts at the Manteno facility while under Kenco's management. Most of these allegations have been presented without evidentiary support either in Ms. McCurry's summary judgment briefs or for the first time at this appeal. Ms. McCurry presents these occurrences as evidence of discrimination being present at the facility, but makes only the unsubstantiated assertion that these events must demonstrate that discriminatory acts were taken against her. Further, when she was asked about accidents within the Manteno facility at her deposition, Ms. McCurry testified that she did not remember what accidents she was referencing and is not sure how they relate to her lawsuit against Mars. (Dkt. 110-4, p. 11:5-12)

As to Ms. McCurry's actual claims of discrimination, Ms. McCurry alleges that Kenco discriminated against her by hiring Lori Varvel as a Human Relations Manager without offering the position to Ms. McCurry, by disciplining Ms. McCurry for improperly working overtime off the clock, and for Kenco defending itself against Ms. McCurry's allegations of discrimination.

On October 17, 2014, Kenco hired Ms. Varvel as a Human Resources Manager. Ms. Varvel started working for Kenco on November 10, 2014 and became Ms. McCurry's supervisor, and supervised other employees in addition to Ms. McCurry, including Valerie Lillie (Dkt. 113-3, ¶13, Dkt. 113-2, p. 83:14-23). Prior to being hired by Kenco, Varvel worked as an HR Manager for Sears Logistics Services (earning $73,600) where she oversaw policies, supervised HR generalists, investigated complaints of harassment and discrimination (Dkt. 113-3, ¶12.). When Kenco hired Ms. Varvel, some of Ms. McCurry's duties were given to Ms. Varvel, resulting in Ms. McCurry no longer being involved involved in employee relations matters. Ms. McCurry's pay did not change when her duties were reduced. Id.

Ms. McCurry did not apply for the Human Resources Manager position which Lori Varvel was hired to fill. (Dkt. 113-1, p. 100:4-15). Ms. McCurry nevertheless alleges that Kenco's hiring of Lori Varvel was retaliatory. (Dkt. 110-3, pp. 112, 113). This allegation is made despite the fact that Ms. McCurry never supervised employees, nor was she responsible for investigating complaints or other higher level human resources functions. (Dkt. 110-3, p. 98:3-10). Indeed, Ms. McCurry was an HR Clerk, and performed clerical duties. Prior to Ms. Varvel's hiring, when Ms. McCurry had received an employee complaint, she simply passed it along to Tammi Fowler in Kenco's corporate office for investigation. (Dkt. 110-3, pp. 98:11-99:8). In fact, when she applied to work at Kenco from 4T's Management, she listed her prior job title as "Accounting/ HR Assistant." (Dkt. 110-3, pp. 58:11-59:22).

As part of the scope of her employment, Ms. Varvel approved Ms. McCurry's request for overtime when necessary. (Dkt. 110-3, p. 69:10-12). During her employment with Kenco, Ms. McCurry received disciplinary action from Kenco citing that she had provided false information on a Time Adjustment Form and that she had worked overtime which had not been approved. (Dkt. 110-3, pp. 86:17-87:11, Ex. 10). Ms. McCurry was given a written warning for working over 1.5 hours of overtime without authorization and furthermore, for violating Kenco's policies by misrepresenting her hours worked and failing to report the correct hours. (Dkt. 113-3 ¶8). Ms. McCurry has agreed that on the day in question, December 9, 2014, she did not leave Kenco until 6:39 p.m., but does not recall what she was doing from 5:00 p.m. until 6:39 p.m. (Dkt. 113-1, p. 91:3-12). Nevertheless, Ms. McCurry claims that the write up that she received from Kenco manager Lori Varvel was harassing toward her. (Dkt. 110-3, p. 81:16-20).

Ms. McCurry further alleges that she was discriminated against when Kenco did not ask McCurry to be a witness when another co-worker filed a charge of discrimination with the

Illinois Department of Human Rights (Dkt. 113-1, pp. 112:15-113:3). Likewise, Ms. McCurry testified at her deposition that she believes Kenco engaged in a conspiracy against her by hiring in-house legal representation to defend against her charges of discrimination (Dkt. 113-1, pp. 114:3-115:1).

**Ms. McCurry's Allegations Against Mars**

Ms. McCurry contends that the reason she included Mars in her lawsuit is "Because they knew about what happened, they knew about the things that were occurring at the facility." (Dkt. 110-4, p. 9:6-12). Specifically, Ms. McCurry has alleged that Robert Coffey, who served as Mars' Regional Distribution Manager ("RDM") for the Manteno facility was aware of discrimination occurring at that location. (Dkt. 110-4, pp. 9:13-10:2). In his role, Robert Coffey was responsible for ensuring compliance with the contract between Mars and the management company responsible for running the distribution facilities for which he had oversight with respect to the quality of the product coming out of the facility. (Dkt. 110-2, ¶7). Mr. Coffey had responsibility for various Mars distribution facilities, including the Manteno, Illinois facility, which was managed for a period of time by Kenco Logistics Services, LLC. (Dkt. 110-2, ¶6). Ms. McCurry alleges Robert Coffey was aware of the hiring of Lori Varvel, accidents that were going on at the facility, and general employment issues that happened involving other Kenco associates, Vernon Henry and Pete Monstwillo. (Dkt. 110-4, pp. 9:13-10:6).

Ms. McCurry contends that Robert Coffey knew about Lori Varvel being hired because "Mars had an issue with wanting to pay her salary." (Dkt. 110-4, p. 10:19-11:1). She testified with respect to the hiring of Lori Varvel "Someone had to make that decision—someone had to assess a need for her… Mars pays for everything. So they have to be told what they're going to pay for. And then they did it in their emails. They're saying they didn't want to pay…." (Dkt.

8

110-4, p. 27:2-12).  Ms. McCurry testified, however that she understood that Mars hired Kenco to perform work pursuant to a contract and did not hire any individual employees.  (Dkt. 110-4, p. 25:14-21).  She further testified that she does not know if Robert Coffey interviewed Lori Varvel.  (Dkt. 110-4, p. 11:2-4)

With respect to incidents involving other associates, Ms. McCurry claims that Robert Coffey knew about Vernon Henry allegedly being called a "nigger" by Pete Monstwillo.  (Dkt. 110-4, p. 11:13-22).  Specifically, Ms. McCurry asserts that Mr. Coffey may have learned about this event at a morning meeting, but admits that she had not herself attended such morning meetings while employed by Kenco.  (Dkt. 110-4, pp. 11:23-12:12, 13:2-7).  Indeed, Ms. McCurry never attended a morning meeting with Robert Coffey. (Dkt. 110-4, 13:14-16).  Nevertheless, Ms. McCurry claims Mr. Coffey knew about the situation between Vernon Henry and Pete Monstwillo because "everything is discussed in the morning meetings," yet acknowledges "I'm not exactly sure it was addressed…" (Dkt. 110-4, pp. 11:23-12:5)

As to Mars' control over Ms. McCurry as an employee, Ms. McCurry acknowledged that Mars never issued her any disciplinary action.  (Dkt. 110-4, p. 16:22-24).  She further confirmed that Mars representative, Robert Coffey, was not consulted about any disciplinary action given to her.  (Dkt. 110-4, p. 17:1-7).  Further, Ms. McCurry did not complain to Mars about discrimination, nor did she tell Mr. Coffey anything about her situation.  (Dkt. 110-4, pp. 14:21-15:12).  This is despite Ms. McCurry's own assertions with respect to Robert Coffey: "[y]ou could approach him and talk about any situation that you had.  I mean, no employee was afraid to come and talk to him."  (Dkt. 110-4, p. 12:13-18).

In the context of Ms. McCurry's claims in this case, Ms. McCurry acknowledges that she does not refer to anyone from Mars in the paragraphs of her Complaint alleging violations of

Section 1981.  (Dkt. 110-4, pp. 24:22-25:13).  She has further admitted that she does not know in what ways Mars participated in a conspiracy against her other than in the hiring of Lori Varvel, which she says Mars did not want to pay for.  (Dkt. 110-4, p. 30:5-15)

**Proceedings Before the District Court**

The Parties thereafter engaged in an exhaustive string of discovery motions, including extensions of discovery and dispositive motions deadlines.  At the conclusion of the considerable discovery efforts, Mars timely filed its Motion for Summary Judgment and Memorandum in Support on June 20, 2018.  On August 18, 2018, the District Court granted Mars' Motion for Summary Judgment in full, and entered judgment in favor of Mars and against Ms. McCurry.  On August 28, 2018, Ms. McCurry filed a rambling Motion for Reconsideration, seeking to re-argue the Defendant-Appellee's Motions for Summary Judgment.  On September 17, 2018, the District Court denied Ms. McCurry's Motion for Reconsideration.  On October 17, 2018, Ms. McCurry filed a Notice of Appeal of the District Court's Ruling denying her Motion for Reconsideration.[1]

## SUMMARY OF THE ARGUMENT

The claims before this Court as to Defendant-Appellee Mars Incorporated are limited to those claims that were before the District Court in ruling on Mars' Motion for Summary

---

[1] Ms. McCurry's Notice of Appeal indicates only that she is appealing the Court's Order of September 17, 2018 denying her Motion for Reconsideration.  Giving Ms. McCurry the benefit of the doubt, Mars interprets the Notice of Appeal to also apply to the Court's August 14, 2018 order granting Summary Judgment in the favor of all Defendant-Appellees and against Ms. McCurry.  Ms. McCurry's Notice of Appeal give no indication that she is seeking appellate review of any other Order issued by the District Court in this case.

Judgment.  Despite Ms. McCurry's attempts to interject additional claims never before raised or to compound her claims against Mars with those against her employer, Kenco, the claims presented for appellate review are for race discrimination under 42 U.S.C. §1981, and a claim for federal conspiracy under 42 U.S.C. §1985.

The evidence presented by Ms. McCurry in the underlying matter failed to establish a cognizable claim against Mars under either theory of liability.  As to liability under §1981, Ms. McCurry failed to demonstrate (a) that Mars was, or acted in any capacity as Ms. McCurry's employer, or that (b) Mars took part in, or knew about and failed to remedy, any race-based discrimination associated with Ms. McCurry's employment.  Indeed, the District Court was correct in ruling that Ms. McCurry failed to establish a claim of discrimination under § 1981 against her actual employer, Kenco, and that because no discrimination was proven, it could not be imputed to Mars.

Likewise, as to Ms. McCurry's claim of Conspiracy under 42 U.S.C. §1985, Ms. McCurry did not present a cognizable claim because she did not allege a violation of the rights protected under the Federal Conspiracy Statute, nor did she demonstrate that Mars or any of its agents agreed to act with any other entity for the purpose of depriving her of any right.   As such, Ms. McCurry failed to present evidence sufficient to satisfy each essential element that she was obligated to prove in this case and the District Court was correct in determining that her claims could not survive summary judgment.

## ARGUMENT

### A.     <u>Standard of Review for Appeal of Motion for Summary Judgment</u>

On appeal of a Motion for Summary Judgment, this Court should review <u>de novo</u> the district court's grant of summary judgment, drawing conclusions of law and fact from the record

presented. <u>Michas v. Health Cost Controls of Illinois, Inc</u>., 209 F.3d 687, 692 (7th Cir. 2000). This Court should apply the summary judgment standard with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. <u>Bellaver v. Quanex Corp</u>., 200 F.3d 485, 491 (7th Cir.2000); <u>Geier v. Medtronic, Inc</u>., 99 F.3d 238, 240 (7th Cir. 1996). However, neither "the mere existence of some alleged factual dispute between the parties," <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247 (1986), nor the existence of "some metaphysical doubt as to the material facts," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). If Defendant makes a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u> 475 U.S. at 587. In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

## B.     <u>Ms. McCurry's Allegations of Racial Discrimination Against Mars Do Not Rise to the Level of a Compensable Claim Under 42 U.S.C. §1981.</u>

To establish a claim under §1981, Ms. McCurry must show that (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making

and enforcing of a contract). <u>Morris v. Office Max, Inc.</u>, 89 F.3d 411, 413 (7th Cir. 1996).  In any discrimination case, Ms. McCurry bears the ultimate burden to prove, by a preponderance of the evidence, that his/her employment was adversely affected by his protected class status. <u>Kizer v. Children's Learning Center</u>, 962 F.2d 608, 611 (7th Cir.1992); <u>Oxman v. WLS–TV</u>, 846 F.2d 448, 452 (7th Cir.1988). The plaintiff can meet this burden either by presenting direct evidence of discrimination, <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111 (1985), or by successfully navigating the course of shifting burdens authorized in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

> **1.    Mars was not Ms. McCurry's employer, and, as such, Ms. McCurry cannot recover against it for claims of employment discrimination.**

An employee may not maintain an action against an entity for employment discrimination under §1981 where that entity is not demonstrated to be that individual's employer.  <u>See Nieman v. Nationwide Mut. Ins. Co.</u>, 706 F. Supp. 2d 897 (C.D. Ill. 2010) (further finding that plaintiff's allegations of shared management personnel are insufficient to state of claim for affiliate liability under Title VII.).  While a plaintiff in an employment discrimination case may demonstrate that she has joint employers, Ms. McCurry failed to demonstrate that such a relationship existed between Ms. McCurry's actual employer, Kenco, and Mars.  <u>Sklyarsky v. Means-Knaus Partners, L.P.</u>, 777 F.3d 892, 895 (7th Cir. 2015).

To the extent that Ms. McCurry alleges that Mars acted in conjunction with Kenco as a "joint employer," she must present cognizable evidence that Mars exercised control over her working conditions.  <u>Whitaker v. Milwaukee County, Wis.</u>, 772 F.3d 802, 811 (7th Cir. 2014). "Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating

instructions." <u>DiMucci Constr. Co.</u>, 24 F.3d 949, 952 (7th Cir. 1994). The question is "whether the putative employer exercised sufficient control, and whether the 'economic realities' are such that the putative employer can be held liable under Title VII." <u>Nardi v. ALG Worldwide Logistics,</u> 130 F. Supp.3d 1238, 1247-48 (N.D. Ill. 2015).[2]

In support of its Motion for Summary Judgment, Mars offered a Warehouse Management Agreement (hereinafter the "Agreement") between Mars and Kenco that sets forth the relationship between the entities as that of independent contractor. (Dkt. 110-1, ¶18). The Agreement maintains that Kenco is not itself an employee of Mars and that Kenco's personnel are not employees of Mars. The Agreement describes the relationship between Mars and its contractor providing: "[Kenco] has sole authority with respect to its employment policies, including, but not limited to, promotions, discipline, relocation, or termination, and such policies are not subject to agreement or consent on the part of Mars." (Dkt. 110-2, ¶8). The only evidence presented by Ms. McCurry in opposition to Mars' Motion for Summary Judgment was limited to references to one (1) Mars associate, RDM, Robert Coffey, and morning meetings with Kenco employees during which Coffey "may" have learned about the things about which she complains. (Dkt. 110-4, pp. 9:13-10:2, 13:14-16, 24:13-25:13). However, she admits that she never attended a morning meeting with Robert Coffey. (Dkt. 110-4, p. 13:14-16). Ms. McCurry even acknowledges that she is not sure that the things on which she is basing this lawsuit were even addressed in those morning meetings. (Dkt. 110-4, pp. 11:23-12:6)

---

[2] As §1981 claims for employment discrimination typically proceed in conjunction with claims under Title VII, they are often analyzed under "essentially the same framework." <u>Ceruitt v. BASF Corp</u>, 349 F.3d 1055, 1060, n. 4 (7th Cir. 2003).

The mere holding of meetings with supervisors does not establish that Mars directed or controlled Kenco employees. Love v. JP Cullen & Sons, Inc., 779 F.3d 697, 702–03 (7th Cir. 2015) (finding where general contractor provided instructions to supervisor employed by subcontractor "[t]his minimal supervision is essentially limited to "the result to be achieved," which militates against a finding of control.) Instead, the day-to-day control over employees working at the Manteno facility, including Ms. McCurry, remained with Kenco. Ms. McCurry acknowledged that Mars did not issue the disciplinary action that she received; that Kenco issued her paychecks and provided her benefits; nobody from Mars ever conducted her performance reviews; and the only new hire paperwork and offer letter that she received was from Kenco. (Dkt. 110-3, Ex. 5, 6; Dkt. 110-4, pp. 13:20-14:5, 16:12-24, 33:17-34:2, 35:22-36:1). Ms. McCurry also indicated that when she took a leave of absence from work, she provided the paperwork to Kenco, not Mars. (Dkt. 110-4, pp. 33:20-34:2). It was also Kenco who she went to when she was seeking a verification of employment. (Dkt. 110-4, p. 34:13-18). No evidence was produced to the Court tying these actions to Mars nor indicating that Mars had the authority to influence or control the terms and conditions of her employment. Ms. McCurry did not bring forward any complaints of discrimination to Mars, including Robert Coffey, even though she saw him as someone who could be approached to talk about any situation. (Dkt. 110-4, pp. 12:13-18, 15:1-8).

Other than Ms. McCurry's belief that Mars had some type of control over and directed the activities of Kenco employees by way of attendance at morning meetings, the only other evidence produced by Ms. McCurry in support of any claim of a joint employer relationship in this matter is her representation that Robert Coffey knew about the hiring of Kenco employee,

Lori Varvel, because he allegedly exchanged emails with Kenco indicating that Mars didn't want to pay for it. (Dkt. 110-4, p. 27:2-12).[3]

Pursuant to the contract between Mars and Kenco, Kenco was obligated to perform its management services within the Final Operating Budget agreed to between the parties. (Dkt. 110-2, ¶10). The Final Operating Budget included, among other things, wages to be provided to Kenco employees. (Dkt. 110-2, ¶11). According to the contract, Mars was not obligated to pay or reimburse Kenco for any expenses over a certain dollar amount which was not previously included in the Final Operating Budget absent written approval in advance of Mars' RDM or other authorized Mars personnel. (Dkt. 110-2, ¶12). In fact, Ms. McCurry even acknowledged the reason why Mars may have known about Lori Varvel being hired, testifying "[S]o they have

_____

[3] In her Opening Brief and Separate Appendix, Ms. McCurry attempts to offer three hundred forty-five (345) additional pages of what she argues is "evidence" in support of her claims. Included in these documents, and the arguments made in Ms. McCurry's Brief, are documents that Ms. McCurry contends demonstrate Mars' knowledge of the goings-on at the Manteno facility. These documents were not offered in response to Mars' Motion for Summary Judgment, and are being presented here for the first time. In compliance with this Court's long-standing practice, these citations should not be considered for the first time on appeal. Grant v. Trustees of Indiana Univ., 870 F.3d 562, 569 (7th Cir. 2017)("[I]t would be unfair to both the defendants and the district judge for us to find there exists a material dispute of fact precluding summary judgment based on evidence offered for the first time on appeal, when the district court was never alerted to those evidentiary grounds and the defendants did not have the opportunity to address them below." Even if this Court were to consider this newly-offered "evidence," these documents show nothing more that what Mars argued at Summary Judgment: that Mars only had knowledge and supervision over funding matters and overall production at the Manteno facility.

to be told what they're going to pay for.  And then they did it in their emails.  They're saying they didn't want to pay…." (Dkt. 110-4, p. 27:9-12)

The fact that Robert Coffey was involved in an administrative discussion regarding Lori Varvel's wages is not, however, evidence that Mars directed Ms. McCurry's day-to-day activities, or that they retained the authority to hire, fire, or otherwise discipline Ms. McCurry. See Nardi v. ALG Worldwide Logistics, 130 F. Supp.3d 1238, 1248-49 (N.D. Ill. 2015) ("Whatever the merits of [employer's] practice of outsourcing payroll administration, there is no evidence that Plaintiff herself was uncertain who her employer was, who controlled her work, who issued discipline, or who made the termination decision.")  Ms. McCurry failed to demonstrate that Mars either possessed or utilized the authority to supervise the day-to-day activities of the Kenco employees at the Manteno facility, hire or fire those employees, issue work assignments or operating instructions, or otherwise control the working conditions of either Ms. McCurry or any Kenco employee.  As such, she failed to establish that Mars was a joint employer to which liability for her race discrimination claims may apply under §1981, and, accordingly, summary judgment for Mars must be granted.

**2.     Joint employment, if found, does not implicate liability for the actions of Ms. McCurry's other employer, Kenco.**

Even if this Court were to determine that the District Court was incorrect in finding that Defendant-Appellee Kenco did not discriminate against Ms. McCurry, the award of summary judgment would remain appropriate as to Mars, because Ms. McCurry failed to present evidence showing that Mars itself committed actions of race-based discrimination under §1981.  It is well-established in this Circuit that an employee cannot rely on her claims against other defendants to impose liability on Mars, but must instead establish that Mars itself committed the actions. "Joint-employer liability does not by itself implicate vicarious liability…. [A] finding that two

17

companies are an employee's 'joint employers' only affects each employer's liability to the employee for their own actions, not for each other's actions...." <u>Whitaker v. Milwaukee County, Wis.</u>, 772 F.3d 802, 811 (7th Cir. 2014) quoting <u>Torres-Negron v. Merck & Co.</u>, 488 F.3d 34, 41 n. 6 (1st Cir. 2007). <u>See also</u> <u>Llampallas v. Mini–Circuits, Lab, Inc.</u>, 163 F.3d 1236, 1244–45 (11th Cir.1998) (finding no liability, regardless of the technical outcome of the joint employer inquiry, where the defendant entity had no involvement in the challenged employment action). The Court in <u>Whitaker</u> recognized the guidance of EEOC's Compliance Manual that "in a joint employer relationship, a co-employer is liable "if it *participates in the… discrimination*" or "if it *knew or should have known about the… discrimination and failed to undertake prompt corrective measures within its control.*" <u>Whitaker</u> at 812 (emphasis in original).

In the case at hand, Ms. McCurry failed to demonstrate such independent acts or knowledge on the part of Mars. She has produced no evidence that Mars, or any Mars employee acted in any way to discriminate against her based on her race. At her deposition, Ms. McCurry admitted that she did not complain to Mars about discrimination, including racial discrimination. (Dkt. 110-4, p. 14:6-8). Instead, Ms. McCurry relies only on the argument that Mars generally knew about all things that were happening in the facility because Mr. Coffey attended morning meetings at the Manteno facility. (Dkt. 110-4, p. 9:6-12, 13;8-13).

Ms. McCurry's allegations of Mars' actual knowledge and control are not, however, supported by any evidence of record in this matter. They are in fact contrary to Ms. McCurry's own acknowledgements that she did not tell Robert Coffey anything about her situation and that Mr. Coffey was not consulted about any disciplinary action given to her. (Dkt. 110-4, pp. 15:1-8, 17:1-7). Ms. McCurry does not even allege that her termination was discriminatory,

acknowledging that the reason she was terminated from employment was because Kenco lost its contract with Mars. (Dkt. 110-3, pp. 78:15-80:5).

Mars offered undisputed evidence at summary judgment that Ms. McCurry had no knowledge or proof that Robert Coffey interviewed Lori Varvel. (Dkt. 110-4, p. 11:2-4). Mars offered further evidence at summary judgment that Ms. McCurry had no knowledge or evidence non-speculatively demonstrating that an incident between Vernon Henry and Pete Monstwillo was addressed in a morning meeting, (Dkt. 110-4, pp. 11:13-12:5). Mars again offered undisputed evidence that despite Ms. McCurry's original claims that Mr. Coffey knew about accidents at the facility, she nevertheless testified that she does not remember what accidents she was referencing and was not sure how they related to her lawsuit against Mars. (Dkt. 110-4, p. 11:5-9)

Ms. McCurry expects the Court to give credence to what amounts to no more than her own speculation that Mars controlled and directed Kenco in the management of Kenco's employees. Such conjecture is not enough to preserve a claim for employment discrimination. Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir.1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors, and '[d]iscrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by affidavits speculating about the defendant's motives.'" (quoting Visser v. Packer Eng'g Assocs., Inc., 924 F.2d 655, 659 (7th Cir.1991))). Ms. McCurry failed to provide credible evidence that Mars participated in any alleged discrimination or that Mars knew about any discrimination against Ms. McCurry and failed to act. Accordingly, the District Court's granting of summary judgment was appropriate, and should be affirmed.

**3.    Ms. McCurry failed to produce evidence demonstrating racial discrimination under 42 U.S.C. §1981 by Mars.**

To succeed in a claim under §1981, Ms. McCurry had to show that (1) she is a member of a racial minority; (2) Mars had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making and enforcing of a contract). Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996), see also Woodson v. Pfizer, Inc., 34 Fed. Appx. 490 (7th Cir. 2002) (summary judgment is appropriate where plaintiff fails to put forth evidence that employer intentionally discriminated against her).

The District Court was correct in its ruling that Ms. McCurry failed to introduce any evidence that Mars, acting as Ms. McCurry's employer or otherwise having the ability to influence or affect her employment status, took actions that violated her rights under §1981. (Dkt. 125, p. 18).  As noted above, Ms. McCurry produced no evidence showing that Mars took any action with respect to her employment, racially motivated or otherwise.  As such, Ms. McCurry could not prevail in her claims for race discrimination under §1981 and the District Court's granting of summary judgment to Mars must be upheld.

**4.    Ms. McCurry failed to produce evidence demonstrating racial discrimination by Defendant Kenco**

To the extent that Ms. McCurry contends that Mars is liable to her because Mars' alleged agent Kenco engaged in racial discrimination, the absence of such evidence as to Kenco is fatal to her claims under §1981 against Mars.  As Kenco argued in its own Motion for Summary Judgment, and the Court ruled in dismissing Ms. McCurry's §1981 claim, Ms. McCurry has not presented evidence that she was discriminated against due to her race, and thus her claims must fail.

Ms. McCurry's failure to promote claim was flawed because she did not apply for the position at issue, and has no facts to suggest that she was the most qualified candidate. To establish a *prima facie* case of failure to hire (or promote), Ms. McCurry had to demonstrate that (1) she is a member of a protected class, (2) she applied for and was qualified for an open position, (3) she was rejected for the position, and (4) the position was filled by a person not in the protected class who had similar or lesser qualifications than plaintiff. See Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 273 (7th Cir. 2004) (upholding summary judgment where employee failed to establish that positions were filled by less qualified individuals outside protected class).

Ms. McCurry claims it was discriminatory that Kenco did not offer her the human resources position without her even having applied or expressing interest. (Dkt. 113-1, p. 100:4-15). This argument is made despite the fact that Ms. McCurry presented no evidence that Ms. Varvel was less qualified than her for the role of HR Manager. To the contrary, Varvel had more experience with managerial responsibilities and handling employee relations issues. These issues previously had been handled by Kenco's corporate office, not McCurry (Dkt. 113-1, pp. 98:11-99:8). The evidence actually presented in this matter establishes that Kenco did not consider McCurry for Varvel's position because (a) McCurry never applied, and that, (b) even if she had applied, Lori Varvel was reasonably viewed by Kenco as a more qualified candidate based on her skills and experience.

Likewise, Ms. McCurry's claim that she was discriminated against because she was disciplined for working off the clock is without merit. Ms. McCurry presented no evidence regarding whether other employees exist who Kenco believed had misrepresented their hours and did not receive any write-ups (Dkt. 113-1, pp. 95:21-97:4.) Additionally, no evidence was

presented that this discipline had any relationship to Ms. McCurry's race. The fact that Ms. McCurry disagrees with being disciplined, and the discipline was given by her non-African American supervisor (Lori Varvel) is insufficient to allege that race discrimination occurred, because Ms. McCurry has put forth no evidence to refute Kenco's explanation for the discipline. The fact remains undisputed that Ms. McCurry stayed at work until 6:39 p.m., reported her time out as 5:00 p.m., and Kenco honestly believed that McCurry had worked hours that she had not reported (Dkt. 113-1, p. 91:3-12). Thus, there is no evidence that Kenco made the decision to issue a write-up because of McCurry's race or any other protected category. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 695 (7th Cir 2000) (affirming summary judgment).

In the matter before the lower court, Ms. McCurry alleged that Kenco retaliated against her in two ways: (1) not selecting her as a witness when another Kenco employee, Mary Madison, filed a charge with the Illinois Department of Human Rights; and (2) hiring Lori Varvel as an HR Manager and reducing her duties. (Dkt. 113-1, pp. 112:15-113:3.) To state a claim for retaliation, McCurry must allege that: (1) she engaged in statutorily protected activity; (2) she met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Boston v. U.S. Steel Corp., 816 F.3d 455, 464 (7th Cir. 2016).

The District Court was correct in its ruling that neither of the acts of retaliation alleged by Ms. McCurry were adverse employment actions. The decision of who to identify as witnesses with knowledge regarding Mary Madison's job performance and her termination was a business decision made by Kenco about how to best defend a legal matter, and it had nothing to do with McCurry or her protected statuses. The same is true regarding the decision to hire Lori Varvel to

22

handle human resources management and employee relations.  As Kenco argued in its own Motion for Summary Judgment:  Kenco hired Ms. Varvel specifically so that the Manteno, Illinois facility would have someone on-site with employee relations and management experience. It would be absurd to say that hiring of someone in this role, in good part, to facilitate employee relations complaint resolution, would be stifling an employee's ability to raise complaints.

The District Court's award of Summary Judgment as to these matters was warranted, and Ms. McCurry has presented no argument to the contrary.  As such, no claim of discrimination could be imputed to Mars due to its contractual relationship with Kenco, because no underlying discrimination exists.

**C.**     **Ms. McCurry Failed to Identify a Protected Right Upon Which She Could Recover Against Purely Private Actors Under 42 U.S.C. § 1985.**

42 U.S.C §1985(3) creates no rights in and of itself. It is a purely remedial statute, providing a civil cause of action when some otherwise defined federal right is breached by a conspiracy in the manner defined by the section.  Great American Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 376 (1979).  While §1985(3) extends to private conspiracies, for a private conspiracy to be actionable it must affect the "Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel."  Brokaw v. Mercer County, 235 F.3d 1000, 1024 n. 20 (7th Cir. 2000), quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

Despite the great length and rambling nature of the two Complaints, response to the Defendant-Appellees Motions for Summary Judgment, Motion for Reconsideration, and Opening Brief filed by Ms. McCurry, she makes no mention of any conspiracy affecting her

right to be free from involuntary servitude or right of interstate travel. Instead, Ms. McCurry's perceived injuries or depravation of rights must relate to her claims under (a) 42 U.S.C. §1981, (b) Title VII, (c) the ADEA, and (d) the ADA. Claims arising under the right to contract, or the right to employment under these statutes, are not, however, rights protected against private encroachment under §1985.

    **1.**     **§1981 cannot be the underlying basis for a right infringed by a §1985 claim.**

Violation of the right to contract under §1981 is not a permissible basis for a claim involving private, non-state action, and thus Ms. McCurry's §1985 conspiracy claim was properly dismissed by the District Court. The alleged members of a conspiracy in this matter, the various defendants, are each private entities not acting under color of state law. Although the Supreme Court has held in Griffin v. Breckenridge that a conspiracy among wholly private entities is constitutional, it cautioned "[t]hat the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." Griffin at 403 U.S. 88, 101 (1971). The Court proceeded to recognize that purely private conspiracy claims were permissible in cases involving the Thirteenth Amendment prohibitions against slavery, and conspiracies to violate an individual's rights to interstate travel. Id. at 105. While the Seventh Circuit has not directly addressed a conspiracy claim under §1981, the Court has acknowledged the limits set forth by Griffin and its progeny. Brokaw v. Mercer County, 235 F.3d 1000, 1024 n. 20 (7th Cir. 2000) ("for a private conspiracy to be actionable it must affect the "Thirteenth Amendment right to be free from involuntary servitude, and, in the same Thirteenth Amendment context, the right of interstate travel.").

As to claims involving §1981, this Court should be guided by several courts within this Circuit holding that §1981 does not create a protected right on which a §1985 conspiracy claim

may be based.  Comtel Technologies, Inc. v. Paul H. Schwendener, Inc., No. 04-C-3879, 2005 WL 433327 (N.D. Ill. Feb 22, 2005); Sheikh v. Rabin, No. 11-CV-425, 2012 WL 5471085 (N.D. Ill. Nov. 9, 2012) (recognizing that a prohibition on claims for conspiracy arising under a right to contract is consistent with the Seventh Circuit's statement in Brokaw.)  In doing so, those courts recognized a weight of authority from other circuits prohibiting a claim for a violation of §1981 as the basis for a §1985 conspiracy claim.  See Brown v. Philip Morris Inc., 250 F.3d 789, 806 (3d Cir.2001); Libertad v. Welch, 53 F.3d 428, 447 n. 15 (1st Cir.1995); Sanders v. Prentice-Hall Corp., 178 F.3d 1296 (Table), 1999 WL 115517 at *2 (6th Cir.1999); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir.1993).  See also Jiminez v. Wellstar Health System, 596 F.3d 1304, 1312 (11th Cir. 2010);   Jenkins v. Arcade Bldg. Maintenance, 44 F.Supp. 2d 524, 532 (S.D.N.Y. 1999); McNealy v. Becnel, No. 14-2181, 2017 WL 2424331 (E.D. La. June 25, 2017); Jackson v. Farmers Ins. Exch., No. 2:14-00250 WBS AC, 2015 WL 5026148 (E.D. Cal. Aug. 25, 2015).[4]

Based on this "great weight of precedential authority" as recognized in Brown, the District Court's determination that §1985 does not provide a means for bringing a racial, gender, age, or disability discrimination claim was proper.  See Comtel Technologies, Inc. v. Paul H. Schwendener, Inc., 2005 WL 433327, at *7 (N.D. Ill., February 22, 2005).  Ms. McCurry did not present a cognizable conspiracy claim under 42 U.S.C. §1985 because she did not plead, nor did

---

[4] Mars acknowledges that several district courts have permitted a §1985 conspiracy claim involving the violation of rights under §1981, including one court in this circuit.  See Westbrook v. Keihin Aircon North America, No. 1:14-cv-9-WTL-DML, 2014 WL 6908472 (S.D. Ind., Dec. 5, 2014).  See also Wells v. Rhodes, 928 F.Supp.2d 920, 930 (S.D.Ohio 2013), Johnson v. Greater S.E. Comm. Hosp. Corp., 903 F.Supp. 140 (D.D.C. 1995).  However, these decisions are outweighed by authority from most circuits of the nation, including guidance by the Seventh Circuit itself in Brokaw.  235 F.3d at 1024, n. 20.

she presented evidence, supporting a claim for a violation of those rights acknowledged to be protected by that statute.  As such, the decision of the lower court should be affirmed.

**D.**     **Even if Ms. McCurry Presented a Cognizable Claim Under §1985, She Failed to Produce Evidence That Mars or Its Employees Were Involved In a Conspiracy Against Her.**

While Mars maintains that Ms. McCurry did not plead nor did she prove any right for which she would be permitted recovery under §1985, she further has failed to present any evidence sufficient to survive summary judgment that any action by Mars' or its employees constituted the necessary elements for a conspiracy under §1985.  To establish a claim for civil conspiracy under §1985(3), a plaintiff must demonstrate:(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens.  Green v. Benden, 281 F.3d 661 (7th Cir. 2002).  To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, *the general nature and scope of which was known to each conspirator*.  Hernandez v. Joliet Police Dept., 197 F.3d, 256, 263 (7th Cir. 1999) (emphasis added).

The existence of a conspiracy cannot be demonstrated by mere speculation or conjecture.  Williams v. Seniff, 342 F.3d 774, 785 (7th Cir. 2003).  Further, a person's supervisory position cannot be the basis for an inference that he was involved in the conspiracy.  Beaman v. Souk, 7 F.Supp. 3d 805, 828 (C.D. Ill. 2014), citing Bell v. City of Milwaukee, 746 F.2d 1205, 1255 (7th Cir.1984), overruled on other grounds by Russ v. Watts, 414 F.3d 783 (7th Cir.2005).

The only evidence Ms. McCurry presented at the time of summary judgment to demonstrate the existence of a conspiracy under §1985 was her own belief that Mars had

something to do with the hiring of Lori Varvel.  The only support presented by Ms. McCurry was a reference to emails exchanged expressing that Mars did not want to pay for the hiring of an additional human resources manager.  (Dkt. 110-4, pp. 10:19-11:1, 27:2-21).  In her Opening Brief, Ms. McCurry now argues that a conspiracy existed because Mars acted as "paymaster" and funded the payment of salaries of Kenco employees.  This argument was successfully refuted by Mars at the summary judgment stage:  Pursuant to the contract between Mars and Kenco, Mars was to be advised in advance of expenses outside those set forth in the Final Operating Budget.  (Dkt. 110-2, ¶12).  Ms. McCurry even acknowledged that Mars had to be told what they were going to pay for.  (Dkt. 110-4, p. 27:8-10).  This evidence alone does not prove the existence of a conspiracy between Mars and Kenco with respect to the hiring of Lori Varvel or anything else.  In fact, Ms. McCurry even admitted that she does not know in what ways Mars participated in a conspiracy against her, aside from her notions regarding Lori Varvel.  (Dkt. 110-4, p. 30:13-15).

Additionally, Ms. McCurry now asserts that a conspiracy exists involving Mars because Mars "provided a false affidavit to the district court."  Despite making this slanderous and disparaging argument that Mars intended to deceive the lower court, Ms. McCurry has presented no evidence demonstrating the falsity of the affidavit of Todd Moore, which was provided in support of Mars' Motion for Summary Judgment.  Instead, Ms. McCurry essentially argues that because this affidavit does not comport to her literal "conspiracy theories," the affidavit must be considered a falsity.  Ms. McCurry's argument is not supported by the evidence offered in this matter, as she has presented no factual basis to demonstrate that any part of Mr. Moore's affidavit was false or otherwise made in error.

27

Accordingly, the District Court was correct in finding that Ms. McCurry failed to establish each element of her claim for §1985 conspiracy against Mars, and summary judgment should be affirmed as to this claim.

**E.** **Ms. McCurry's Request That This Court Make a "Judicial Review" of Orders Not Subject to this Appeal, and Her Attempts to Present Additional Claims on Appeal, are Inappropriate and Should not Be Considered.**

At the conclusion of her Opening Brief, Ms. McCurry indicates that she seeks a judicial review of a number of motions submitted by the parties and interlocutory orders issued by the district court, including Mars' Motion to Dismiss and waivers of service submitted by the various defendants. Ms. McCurry, however, presents no coherent argument as to any deficiencies contained within these enumerated orders, or what remedy she seeks as to those orders. Instead, Ms. McCurry asserts only that "discovery issues were not adequately managed" and "it was a deliberate attack on the judicial system and the administration of justice." Without any presentation of a perceived deficiency in these "orders," Mars is unable to reasonably argue why such court filings were not a deliberate attack on the administration of justice. Mars therefore asserts that the motions submitted on its behalf, and the District Court's orders on those motions were well-reasoned and appropriate.

Similarly, Ms. McCurry has attempted to for the first time on appeal assert a new and novel claim against Mars and the other Appellees in this matter, specifically Obstruction of Justice in violation of 18 U.S.C. §§ 1503-1505 & 1512(b) & (c). As an initial matter, the statutes cited by Ms. McCurry are criminal statutes. There is no private civil action available for a claim of "obstruction of justice" either under Title 18, or at as an independent state law claim. See Jones v. United Airlines, No. 11-C-6374, 2012 WL 6216741 at *8 (N.D.Ill. Dec. 13, 2012), Panko v. United States, No. 86-C-009, 1987 WL 11340 at *1-3 (N.D.Ill. May 22, 1987).

Accordingly, even if these claims were raised at the appropriate point in this litigation, Ms. McCurry would have no cognizable means of recovery, and those claims should be dismissed.

These claims were not, however, brought in a timely manner, for despite filing two separate Complaints in this case, each totaling hundreds of individual paragraphs, Ms. McCurry alleged no claim of obstruction of justice under Title 18.  Instead, she has waited until her discrimination claims have already been ruled upon twice to present additional claims essentially arguing that by presenting evidence in their defense, Mars and the other defendant-appellees must have obstructed justice.  It is "well settled that arguments presented for the first time on appeal are waived." Bailey v. International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 374, 175 F.3d 526, 529 (7th Cir. 1999).  This rule serves several important purposes, including "that it keeps appellate courts from resolving questions that require the factfinding abilities of the district judge. The rule also protects both parties' ability to present evidence in support of their positions."  Allen v. City of Chicago, 865 F.3d 936, 943 (7th Cir. 2017)(internal quotations omitted).  Ms. McCurry cannot now, at the time of appeal, present entirely new claims against Mars and her former employer, Kenco.  This Court should not consider Ms. McCurry's arguments and claims that were not considered by the lower court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Mars, Incorporated respectfully requests that that this Honorable Court Affirm the decision of the District Court for the Central District of Illinois granting summary judgment as to all claims against Mars in this case, namely Discrimination under 42 U.S.C. §1981 and Conspiracy under 42 U.S.C. §1985.

Respectfully submitted,

Date: February 25, 2019

S/ *Kimberly J. Overbaugh*
Kimberly J. Overbaugh, Esq. PA #85610
HARMON & DAVIES, P.C.
2306 Columbia Ave.
Lancaster, PA 17603
Tel. (717) 291-2236
Fax (717) 291-2236

Attorneys for Defendant-Appellee
Mars, Incorporated

## PROOF OF SERVICE

The Undersigned attorney hereby certifies that on February 25, 2019, the Brief of

Defendant - Appellee Mars, Incorporated was filed electronically through the Electronic Case

Filing System of the United States Court of Appeals for the Seventh Circuit and is available for

viewing and downloading via the CM/ECF System, which will send Notice of such filing to the

following:

Jordan Hoffman, Esq.
Jordan TraVaille Hoffman, P.C.
2711 E. New York St.
Suite 205
Aurora, IL  60502

S/ *Kimberly J. Overbaugh*
Kimberly J. Overbaugh, Esq. PA #85610
HARMON & DAVIES, P.C.
2306 Columbia Ave.
Lancaster, PA 17603
Tel. (717) 291-2236
Fax (717) 291-2236

Attorneys for Defendant, Appellee
Mars, Incorporated