No. 18-3206

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**Edith McCurry**
**Plaintiff-Appellant,**

**v.**

**Kenco et.al**
**Defendant-Appellee.**

PLAINTIFF-APPELLANT REPLY BRIEF
IN SUPPORT OF APPEAL FROM THE DISMISSAL
OF THE CIVIL ACTION 16-CV-2273 BY THE DISTRICT COURT

**Case No. 16-CV-2273**

**The Honorable Judge Eric Long**

**and**

**Judge Bruce Sterling**

**Presiding**

**Edith  McCurry**

/s/

**Jordan TraVaille Hoffman, P.C.**

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Edith McCurry

APPELLANT REPLY BRIEF

TABLE OF CONTENTS

TABLE OF CONTENTS	.......................................................................... i

TABLE OF AUTHORITIES ………........................................................... ii

ARGUMENT ....................................................................................... 1

CONCLUSION  .................................................................... 34

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32 (a) (7)................. 36

PROOF OF SERVICE  .......................................................................... 37

# Table of Authorities

## Cases

1.  *Abdel-Ghaffar v. Illinois Tool Works, Inc.,*, No. 12 C 5812 (N.D. Ill. Sept. 30, 2015)     *pg .8*

2.  *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. 1154, 1160 (N.D. Ind. 1995)     *pg. 33*

3.  *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,* 91 L. Ed. 2d 202 (1986)  *pg. 2*

4.  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996)     *pg. 4*

5.  *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th Cir. 2007)     *pg. 5*

6.  *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct.

    2257, 141 L.Ed.2d 633 (1998)     *pg. 11*

7.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)  *pg. 1*

8.  *Chevron, U.S.A. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 843 (1984)   *pg. 26*

9.  *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)     *pg. 31*

10. *Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995)     *pg. 8*

11. *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994)     *pg. 10*

12. *Costello v. Grundon,* 651 F.3d 614, 635 (7th Cir. 2011)     *pg. 2 & 14*

13. *Crawford V. Metro Gov't of Nashville and Davidson County, Tennessee*,

    555 U.S. 271, 274 n.129 S. Ct. 846, 172 L. Ed. 2d 650 (2009)     *pg. 1*

14. *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997)     *pg. 4*

15. *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662     *pg. 11*

16. *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001)     *pg. 5 & 9*

17. *Haas v. Abrahamson*, 910 F.2d 384, 393 (7th Cir. 1990)     *pg. 31*

18. *Happel v. Walmart Stores, Inc.,* 602 F.3d 820 (7th Cir. 2010)     *pg. 27*

19. *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 64 S. Ct. 997, 88 L. Ed. 1250 (1944)    *pg. 16*

20. *Hobgood v. Illinois Gaming Board,* 731 F.3d 635, 646 (7th Cir.2013)    *pg. 9*

21. *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992) at 22    *pg. 10*

22. *Jones v. National Council of YMCA of US*, 48 F. Supp. 3d 1054 (N.D. Ill. 2014)    *pg. 24*

23. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 978 (7th Cir.1996)    *pg. 1, 2, & 14*

24. *Malen v. MTD Prods., Inc.,* 628 F.3d 296, 303 (7th Cir. 2010)    *pg. 1*

25. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12 (1983)    *pg. 32*

26. *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001)    *pg. 2*

27. *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998)    *pg. 34*

28. *Patterson v. McLean Credit Union,* 491 U.S. 164, 187-88, 109

S.Ct. 2363, 105 L.Ed.2d 132 (1989)    *pg. 7*

29. *Payne v Pauley, 337 F.3d 767 (7th Circuit 2003)*    *pg.* 34

30. *Ponsetti v. GE Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010)    *pg. 2*

31. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir.2006)    *pg. 13*

32. *Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806, 820 (7th Cir. 2015)    *pg. 13*

33. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140, 143,

120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)    *pg. 8*

34. *Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005)    *pg. 3*

35. *Sarsha v. Sears Roebuck & Co.,* 3 F.3d 1035 (7th Cir.1993)    *pg. 10*

36. *Shott v. Rush University Medical Center, n.3 No.11C 50253 (N.D. Ill. Jan. 7, 2005)*    *pg. 27*

37. *Simpson v. Beaver Dam Community Hospitals, Inc.*, 780 F.3d 784 (7th Cir. 2015)    *pg. 25*

38. *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 378 (7th Cir.1995)    *pg. 3*

39. *Stokes v. Board of Educ. Of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010)     *pg. 1*

40. *Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 736 (7th Cir.2006)     *pg. 13*

41. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008)     *pg. 26*

42. *United States v. Costello*, No. 11-2917 (7th Cir. 2012)     *pg. 26*

43. *United States v. King-Vassel*, 728 F.3d 707, 716 (7th Cir. 2013)     *pg. 13*

44. *United States v. Reyes-Hernandez*, 624 F.3d 405, 412 (7th Cir. 2010)     *pg. 31*

45. *United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009)     *pg. 26*

46. *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 673-74 (7th Cir.2009)     *pg. 5*

47. *Waldridge v. American Hoechst Corp*., 24 F.3d 918 (7th Cir. 1994)     *pg. 34*

48. *Wilson v. Williams*, 997 F.2d 348, 351 (7th Cir. 1993)     *pg. 10*

49. *Wohl v. Spectrum MFG., Inc.,* 94 F.3d at 358     *pg. 10*

## STATUTES AND REGULATIONS

21 CFR Chapter I Subchapter B part 117 Subpart G…..page 10

21 CFR Chapter I Subchapter B part 121………………page 10

## Federal Rules of Civil Procedure

*Fed.R.Civ.P. 12*….page  13 & 32

*Fed.R.Civ.P. 26*….page  27, 31, 32, & 34

*Fed.R.Civ.P. 37*….page 26, 27, 31 & 34

*Fed.R.Civ.P. 54*….page  32

*Fed.R.Civ.P.59*….page  32

*Fed.R.Civ.P.* 20….page 32

# Argument

On a motion for summary judgment, (hereafter "MSJ") the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford V. Metro Gov't of Nashville and Davidson County, Tennessee,* 555 U.S. 271, 274 n.129 S. Ct. 846, 172 L.Ed. 2d 650 (2009); *Malen v. MTD Prods.,  Inc.,  628 F.3d 296, 303 (7th Cir. 2010)*; *Stokes v. Board of Educ. of the City of Chicago,* 599 F.3d 617, 619 (7th Cir. 2010).

The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 978 (7th Cir.1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Specifically, the moving party may discharge this burden by "'showing'---that is, pointing out to the district court---that there is an absence to support the nonmoving party's case." *Celotex* 477 U.S. at 325.

Defendants did not discharge themselves of the initial burden it bore to identify the basis for seeking summary judgment against Plaintiff.

*Costello v. Grundon,* 651 F.3d 614, 635 (7th Cir. 2011); *Logan at* 979. Essentially, the burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan,* 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk,* 259 F.3d 833 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505,* 91 L. Ed. 2d 202 (1986).

More precisely, the movants in their MSJ did not articulate with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact for each named defendant as it relates to the specific allegations asserted in Plaintiff's complaint.

Spuriously, the movants continue in their Appellee Brief(s) to make numerous conclusory statements and mount affirmative defenses devoid of supporting documentation or references to the record to fully discharge themselves individually and collectively of their burden related to the allegations asserted by Plaintiff.

Defendants fail to adequately address in their Appellee Brief issues raised surrounding Plaintiff's assertions that making application for promotion was not a requisite to being promoted and that defendants did not follow its own policy relative to promotion.

a.    Defendants did not address Tony Willis' declaration indicating that he did not apply for the position that he was most recently promoted to (Docket #120).

b.    Defendants stated to the Illinois Department of Human Rights (hereafter "IDHR") and the Equal Employment Opportunity Commission (hereafter "EEOC") in an email that Tony Willis did not make an application for a position to which he had been previously promoted (Opening Brief Separate Appendix hereafter "SA"-pg. 70 ¶3).

c.    Defendants did not address that they knowingly promoted other employees, such as Tony Willis and Melissa Hansen, who had not made an application for their respective positions (SA-pg. 103).

d.    Defendants did not address the issue that it failed to post the position making it impossible for McCurry to apply for that position.  According, to Defendant Kenco's Exempt Hiring Policy, McCurry would have been the person to post the advertised position (SA-pg. 58 ¶7 (b)).  McCurry did not post the position.

e.    Defendants did not address the issue that it failed to provide its policy relative to promotion.

McCurry "specifically refutes facts which allegedly support the employer's claim" *Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 378 (7th Cir.1995).  Additionally, d*efendants' failure to follow [their] own policies also gives rise to pretext.  Rudin v. Lincoln Land Community College*, 420 F.3d 712 (7th Cir. 2005) at 727.

Defendants failed to adequately address the issues raised surrounding the deficiencies of the affidavits of Jay Elliott and Todd Moore (Docket #s 120-1 & 120-4).

    a.   Defendants did not address the issue of the affiants' lack of personal knowledge relative to Plaintiffs allegations about the actual events as they occurred at the Mars Manteno facility.

    b.   Todd Moore references documents in his affidavit that were not produced that should have been in defendants Kenco and Mars' possession which could have been easily authenticated by being classified as business records of defendants.

"[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997). There is "no exception to the ban on hearsay … and so the court will disregard it." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Defendants failed to adequately address the issues raised surrounding the non-effectuated and non-existent policies used to write-up Plaintiff on December 17, 2014, viz:

    a.   Policy STD HR 1007 that was not effective until a week after the date of Plaintiff's alleged infraction.

    b.   Policy STH HR 1003 that was non-existent and that was not attached defendant's MSJ and was not produced by Defendants.

c.    Defendants Kenco or Varvel failed to address that Varvel had indicated three (3) weeks after the alleged incident with Plaintiff that there were no guidelines relative to unauthorized work (SA-141).

d.    Defendant Kenco did not produce a signature log relative to its QMS Documentation policy that ensures that each employee is trained on the policies relative to the employee's employment (Docket #83-27).

e.    Defendant failed to address Plaintiff's assertion that the write-up was pretextual.

McCurry raised genuine issues of fact when she identified the inconsistencies in her employer's explanation for the adverse action that it took in disciplining McCurry for a mispunched slip (Docket #117 pages 11, 17-23 & 28) *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781 (7th Cir. 2007); *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2001) at 889.

Particularly since Plaintiff had been working for defendants for so many years without incident, Defendants' abrupt and cryptic adverse employment decision supports the drawing of an inference that Defendants were motivated by some impermissible reason. *Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 673-74 (7th Cir.2009).

Defendants failed to adequately address the issues raised surrounding the hiring of Lori Varvel and the various and often contradictory reasons it offered for hiring Varvel; viz:

    a.    How Varvel was more qualified that Plaintiff.

        i.    Varvel being classified by Defendants as an HR Generalist (Docket #83-20 page 3).

        ii.    Defendant had other Generalists (Docket #83-11 page 9).

        iii.    HR Generalist are not HR Managers.

    b.    Varvel having allegedly supervised people, when Varvel stated that she had only supervised one (1) person previously (Docket #117-19 & #113-3 pg.72).

    c.    That Varvel did not supervise Valerie Lillie as alleged (Docket 119-5).

    d.    That Varvel could not have supervised Lillie, as Lillie was a subject matter expert relative to the Food Safety and Modernization Act "herein" FSMA (Docket #83-14 pg.15 §5.5).

    e.    That Varvel would not be able to legitimately supervise Plaintiff after Defendants had taken away Plaintiff's HR duties, as Varvel had no accounting experience.

    f.    That Plaintiff had more HR experience than Varvel.

    g.    That Plaintiff had supervisory experience.

h.     That according to Jay Elliott, V.P. of Legal, Varvel was hired because of all of the discrimination charges filed against the defendants (SA-pg. 143 §4¶2).

i.     That according to Tammi Fowler and others, Varvel was hired because a person was needed with more HR experience.

j.     That McCurry and Szplett's both had more HR experience than Varvel (Docket #119-declarations of Szplett & #119-9 McCurry).

k.     That McCurry and Szplett's had never been issued poor performance reviews.

l.     That McCurry and Szplett's were meeting the expectations of Defendants Kenco and Mars at the time that Varvel was hired.

m.     That the HR position was not a newly created position, as Defendants had cited in its MSJ that Szplett's was the HR Manager (Docket 113 pg. 7 ¶A).

n.     That Defendants have stated conflicting reasons why Varvel was hired.

o.     That Mars agreed to underwrite the cost of hiring an HR Manager (Docket #120-6).

Plaintiff contends that these inconsistent reason(s) for hiring Varvel were pretextual; *Patterson v. McLean Credit Union,* 491 U.S. 164, 187-88, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).  Plaintiff's discrediting of

employer's explanation is entitled to considerable weight, such that Plaintiff should not be routinely required to submit evidence over and above proof of pretext. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Defendants failed to adequately address the issues of pretext that Plaintiff raised and established relative to the adverse employment decisions imposed upon Plaintiff. *ABDEL-GHAFFAR v. ILLINOIS TOOL WORKS, INC.,* No. 12 C 5812 (N.D. Ill. Sept. 30, 2015)*; Collier v. Budd Co.,* 66 F.3d 886, 892 (7th Cir.1995), to wit:

a.   Plaintiff's reduction in duties.

b.   Plaintiff's write-up.

i.   Defendants failed to address the issue of how the write-up was not adverse to Plaintiff being able to be promoted.

ii.   Defendants failed to address that a write-up is the basis of the Defendants' progressive disciplinary action that leads to termination of an employee.

iii.   Defendants failed to address that a write-up precludes an employee from promotional opportunities.

c.   Plaintiff being harassed.

d.   Plaintiff being retaliated against.

e.    Plaintiff's change in terms and conditions of her
employment.

f.    Plaintiff's change in her fringe benefits and privileges.

"Where an employer's reason for an adverse employment action is
without factual basis ..., that is evidence that an employer might be lying
about its true motivation," *Hobgood v. Illinois Gaming Board,* 731 F.3d
635, 646 (7th Cir.2013). And, "[W]hen the sincerity of an employer's
asserted reasons for an adverse employment decision is cast into doubt,
a fact finder may reasonably infer that unlawful discrimination was the
true motivation...."*Gordon* at 889.

Defendants failed to adequately address the issues raised
surrounding the Plaintiffs disparate and unequal pay, to wit:

a.    Szplett's and McCurry's affidavits relative to Plaintiff's job
duties and functions relative to Szplett (Docket #119).

b.    Defendants failure to produce Szplett's and McCurry's signed
job descriptions to support its contention that Szplett's had more
responsibility than McCurry.

c.    That Varvel was paid more money than McCurry for
performing less work.

It has been routinely found that a nonmoving party's own affidavit
can constitute affirmative evidence to defeat a summary judgment

motion, even if it includes only bare denials. *Wohl v. Spectrum MFG., Inc.,* 94 F.3d at 358; *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994); *Jackson v. Duckworth*, 955 F.2d 21 (7th Cir. 1992) at 22; *Wilson v. Williams*, 997 F.2d 348, 351 (7th Cir. 1993); *Sarsha v. Sears Roebuck & Co.,* 3 F.3d 1035 (7th Cir.1993) at 1041.

Defendants failed to adequately address the issues raised relative to Plaintiff's allegations of retaliation as Defendants made conclusory statements in their summary judgment that Plaintiff was not retaliated against because Plaintiff did not engage in protected activity (Docket #113 page 11 & 12 §D¶3).

Defendants fail to discharge themselves of this burden by not citing specific facts or pointing to the Plaintiff's initial complaint (Docket#1) which identifies in great detail a number of protected activities.  Nor does Defendant cite any authority that refutes participating in a discrimination proceeding as not being engaged in protected activity.

For example, Plaintiff contends that after an IDHR/EEOC proceeding for Mary Madison, a former employee, McCurry's job title and reporting structure were ordered to be changed by Kelvin Walsh by Valerie Lillie.  Walsh ordered Lillie to change McCurry's title from HR Administrator to HR Clerk requiring McCurry to report directly to him. Lillie could not justify this change under the mandated standards of the 21 CFR Chapter I Subchapter B part 117 Subpart G, 21 CFR Chapter I

Subchapter B part 121 and Defendants policy-ISO. BP. 4.2.3.001. Lillie eventually became cognizant of the discriminatory treatment of McCurry and obtained written documentation for Varvel affirming that McCurry was the HR Administrator (Docket #82-14 pg. 2).

Defendants failed to adequately address the issues raised relative to discrimination and harassment as Defendants made conclusory statements in their MSJ that they had policies in place prohibiting discrimination and harassment (Docket#113, page 5,¶26), but fail to discharge themselves of their burden of proof by citing specific facts or pointing to the record instances that support that the Defendants adhered to and enforced the policies that they state that they had in place relative to discrimination and harassment. Furthermore, Defendants have not produced these alleged facially neutral policies that they refer to for the purposes of summary judgment.

Defendants are liable for the discriminatory activity that it failed to stop, as each Defendant had authority over McCurry and others at the Mars Manteno facility. *Faragher v. Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). There is no affirmative defense for the adverse actions taken against McCurry. *Id. at 765.*

Defendants failed to adequately address issues raised relative to race and age as Defendants made conclusory statements that they did not hire Varvel because of race and age (Docket #113 page 11 ¶2), but fail to discharge themselves of their burden of proof by citing specific facts or pointing to the record instances that support that Defendants did not hire Varvel because of race or age. Contrarily, Jay Elliott, Defendant Kenco's VP of Legal states that Varvel was hired because of all the charges of discrimination (SA-pg.143 §4¶2).

Plaintiff asserts that the charges of discrimination filed at the IDHR and EEOC against Defendants were charges based upon race amongst other unlawful actions. Additionally, it is not reasonable that more than twenty (20) employees, who filed over 30 charges; who lived 65 to 100 miles away from Chicago, where the agencies were located, would take off work and travel that far to file charges, if the situation was not pervasive and unbearable (SA-pg.145-146). Furthermore, Defendants to date have not addressed and contradicted Jay Elliott's proffered reason for hiring Varvel.

Defendants have created materially disputable facts due to the conflicting reasons that it offered regarding the hiring of Lori Varvel. Defendants failed to adequately address the issues raised surrounding McCurry's allegations about conspiracy by alleging that McCurry did not adequately plead her claims of conspiracy and that based upon her

inadequacy of pleading her conspiracy claims should fail (Docket #113 page 14 §f ¶3).

McCurry contends that she pled her claims of conspiracy in her complaint in detail. McCurry noted in her response to Defendants MSJ that she had adequately pled her conspiracy claims as she survived the 12(b)(6) motions to dismiss.

Specifically, Defendant Kenco's MSJ addressed issues germane and specific to Defendant Kenco to which they did not fully discharge themselves (Docket #113).   Even more precisely, Defendants MSJ did not address the specific allegations alleged against the named Defendants in this matter.

Consequently, the remaining Defendants have failed to articulate with references to the record and to the law, specific reasons why they individually believe there is no genuine issue of material fact for trial.

It is well established that "the party opposing summary judgment has no obligation to address grounds not raised in a motion for summary judgment. "*Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 736 (7th Cir.2006); *Preddie v. Bartholomew Consol. Sch. Corp.,* 799 F.3d 806, 820 (7th Cir. 2015); *United States v. King-Vassel,* 728 F.3d 707, 716 (7th Cir. 2013); *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 765 (7th Cir.2006).

Correspondingly, the remaining Defendants did not discharge themselves of their burden to identify the basis for seeking summary judgement against Plaintiff.  *Costello at* 635; *Logan at* 979

*Therefore, defendants' arguments must fail.*

## Defendant's Position Has Been Consistently Inconsistent

Defendants without fail are consistently, inconsistent in their positions relative to Leonard Szplett, COBRA, Tammi Fowler and other matters.

Most recently Defendants in their Appellee brief have now suggested that Szplett's was a manager in Human Resources, inferring that Szplett's ***was not*** the HR Manager at the Mars Manteno Facility. This is deceptive and misleading as Defendants alleged, argued and litigated the undisputed fact that Szplett's was the HR Manager in its MSJ against McCurry in the district court, to which Defendants received a benefit of having McCurry's case dismissed with prejudice (Docket #125).  Defendants also suggest that they have not been inconsistent in their positions in their Appellee Brief (pg., 22 ¶1).

More specifically, Defendants in their MSJ of June 2018 stated that Leonard Szplett ***was*** the HR Manager (Docket #113 pg. 7 ¶A). Defendants also identified Leonard Szplett being the HR Manager who

gave McCurry her performance reviews, as an undisputed fact (Docket #113 pg.3 ¶7).

Previously in this matter Defendant Kenco stated in their interrogatories of November 2017 that Szplett ***was never*** the HR Manager (Docket #80-7 page 11 #15).

Prior to that, Defendants stated in its two (2) summary decision motions to the Department of Labor in Case No. 2016-FDA-4 in August of 2017 that Szplett's ***was*** the HR Manager.

Prior to that in August of 2015, Defendant Kenco stated that Szplett ***was not*** the HR Manager and such a position never existed (SA-pg. 143 §4¶2).

Prior to that in March of 2015, Defendant Kenco stated that Szplett ***was not*** the HR Manager but the Office Manager in the administrative proceeding at the IDHR/EEOC of Charge No. 2015CA1804 "hereafter" 2015CA1804.

Prior to that in November of 2013, Defendants stated to the IDHR, EEOC and Occupational Health and Safety Administration hereafter "OSHA" that Szplett ***was*** the HR Manager (Dockets #81-11 pg.3 & #81-12 page).

Like a chameleon Szplett's job title has changed at the pleasure and convenience of the Defendants. Sometimes Defendants have used his status as a sword and at other times as a shield. Defendants' actions

concealed the unlawful actions of the Defendants allowing them to prevail in its litigation.

> [T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. . . . The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. *Hazel-Atlas Co. v. Hartford Co.*, 322 U.S. 238, 246, 64 S. Ct. 997, 88 L. Ed. 1250 (1944).

### *Defendant's Inconsistent Administration of McCurry's COBRA Benefits*

Kenco is self-insured relative to its health and disability insurance. Kenco controls its Consolidated Omnibus Budget Reconciliation Act (hereafter "COBRA") as it does its other benefits.

Kenco asserted in its MSJ that McCurry named the wrong Defendant and that she was not discriminated against by Kenco (Docket #113 page 11 ¶2). Defendants offered no proof by fact or in the record to support this assertion. Defendants did not properly discharge itself of its responsibility of a properly supported MSJ. Therefore, Plaintiff was not obligated to respond.

McCurry raised issues relative to her COBRA payment being changed five (5) separate times. McCurry did not receive the paperwork relative to Defendant's open enrollment. Defendant eventually stated to

the Department of Labor that Kenco forgot to mail McCurry the enrollment form (SA-pg. 243).

COBRA is governed by the Employment Retirement Security Act (hereafter "ERISA") and requires strict compliance. McCurry concedes that human error could occur at any time by anyone. However, Defendants did not point to any other person who was conveniently omitted from receiving the open enrollment forms or whose payment amount kept changing, as McCurry's did.

Additionally, McCurry's immediate past job duties and responsibilities made her very familiar with Defendants' process and procedures relative to employees on COBRA. The explanation provided to McCurry does not reflect what McCurry knows to be the standard operating procedure for the defendants.

McCurry asserts that this action was intentional to cause her harm as Defendant Kenco was aware that McCurry was in need of medical care as she was on disability due to the hostile work environment and its related stress that caused her constructive leave of absence. Defendants were aware of McCurry's need of medical treatment as Kenco was self-insured and paying McCurry's medical bills.

The successive changes in her premium after open enrollment contravenes ERISA guidelines. McCurry contends that no other

employee was subject to changing premium and was denied the
opportunity to choose a plan that fit their needs.

The numerous and capricious increased premium with a reduction
in coverage coupled with the failure to inform McCurry of these changes
prior to the close of open enrollment in the market place left McCurry
subject to whatever premium defendant would impose upon her and
whatever coverage defendant gave otherwise she would be without the
medical care that she needed.  Defendants discriminated and retaliated
against McCurry.

Defendant made a false and misleading statement to the court in
its MSJ regarding McCurry's COBRA, as McCurry had properly named
the correct defendant.  Defendants went on to address McCurry's
disability benefits that were not at issue in this matter by stating that
McCurry's disability benefits had been reduced.

**Another Consistent Inconsistency**

Defendants represented to the district court that Plaintiff's
disability benefits had been reduced; they were reduced to zero in July of
2017 (SA-pg.190).  Defendant misrepresented to McCurry that they had
contacted McCurry's doctor(s) regarding her benefits, when they had not
(SA-pg.175).   After great lengths and much perseverance, McCurry
benefits were reinstated. Upon reinstatement, it was determined that
McCurry was underpaid over $73,000 dollars dating back to her first day

of disability on 1/5/2015. Defendant Kenco intentionally withheld her benefits and underpaid McCurry.

**Tammi Fowler's Metamorphous**

In Defendants consistent inconsistencies, Tammi Fowler has now morphed into the V.P. of Human Resources according to Defendants (Appellee Brief pg. 9 ¶1).

Contrarily, in November of 2017, Tammi Fowler stated in her interrogatories that she was the Senior Manager of Employee Relations. This is evidenced at least as far back as 2013 (Docket #80-8, page 50, 52, 55, 58, 60, 62, & 66, Docket #81-15 page 2, & Docket #81-16 page 7). Fowler, who lived and worked in Chattanooga, Tennessee, continues to hold herself out as the Senior Manager of Employee Relations on her LinkedIn page(Docket #119-14).

In those same interrogatories, Fowler contends that she managed several Kenco sites (Docket #80-9 pg. 27 #3).

It has been intimated that Fowler was responsible for investigations at the Mars Manteno facility in Defendants' position statement Charge No. 2015CA1804§ B2.

Fowler could not have conducted investigations at the Mars Manteno facility being in Chattanooga, Tennessee.

Fowler contends in her interrogatories that she followed Defendant Kenco's policies (Docket #80-9 pg. 28#5& 7).

Fowler nor Kenco have produced evidence that supports that she or Defendant followed Defendant's policies as there is no evidence of investigations.

Mario Lopez's stated in his interrogatories that he and Fowler were responsible for Varvel being hired (Docket #80-9 pg. 39 #3 & pg. 30 #11). There is an email that suggest that Trace Spier, V. P. of Fast Moving Consumer Goods Kenco and Todd Moore Senior Manager of Logistics of Mars were the responsible parties.

Fowler stated that Defendants were in need of a human resource person with more experience as McCurry and Szplett were not trained to perform these duties.

Contrarily, Fowler trained McCurry and Szplett in May of 2013 on Kenco's procedures relative to handling employee relations issues (Docket #83-19 page 2). After training McCurry and Szplett, it is unreasonable to assert that it took Defendants twenty (20) months or almost two (2) years to identify a need for a more proficient HR person and to fill the position.

It is unreasonable to assert that information regarding claims of discrimination was not shared with Mars, as Mars underwrote the cost of hiring Varvel (Docket #120-6). Jay Elliott stated that Varvel was hired because of all the discrimination charges being filed (SA-pg. 143 §4¶2).

## The Collaboration on Consistent Inconsistency

Defendants Kenco and Mars contend that Mars had nothing to do with employment decisions affecting McCurry and others at the Mars Manteno facility.

Plaintiff contends that this is a patently false and misleading statement as McCurry's and others' offer letters state that it is the KENCO MARS facility. Lori Varvel's offer letter reflects this contention (Defendants Exhibit-Docket #113-3 pg., 77).

As a term and condition of employment, employees were required to sign the offer letter and return in acceptance of the offer of employment (SA-pg. 61 ¶b & c).

The letter was signed off by an executive officer of Kenco on behalf of Kenco Mars (SA-pg.61¶c).

Plaintiff also contends that there was a daily collaboration between Mars, Inc. and the Mars Manteno employees and other management consisting of discussing personnel issues along with other matters related to the Mars Manteno facility. Defendant Mars, Inc. provided this information in its request to produce (DEF002808 cross-reference Docket #83-30 page 13).  For example, Defendants knew Szplett was on disability due to work related stress (SA-pg., 96).

Defendant Mars, Inc. also provided other documentation to support this contention (Docket #83-30 page 5, 9- DEF0001519).

Robert Coffey was the operational decision maker (Docket #83-30 page 4, ¶1-Mars Discovery, DEF0001241 & page 5, Mars Discovery DEF0001579).

**Coffey was the Boss**

Coffey issued Performance Improvement Plans to Kenco; he also corresponded, directed and managed the employees at the Mars Manteno facility. He also on behalf of Mars along with Todd Moore and others underwrote the cost of hiring Varvel (SA-pg., 86-119, Docket #83-30, page 7, DEF00017866 & Docket #120-6, respectively).

**Other Matters**

In regards to Defendant Kenco, two policies were referenced concerning McCurry's write-up--one that was false/non-existent and the other that was not effective during the relevant time that the policies were applied to Plaintiff.

Plaintiff contends that policy STD HR 1003 was not a policy of Defendant Kenco's as listed on Defendant Kenco's catalogue of company policies, Appendix F (Docket #119-21) and therefore, was not a legitimate company policy.  Moreover, Defendant Kenco failed to even attach the aforementioned policy to the MSJ or refer to it in the record. Plaintiff also reaffirms that policy STD HR 1007 was not effective until after the alleged incident occurred with Plaintiff.  More specifically, the

effective date of the policy was December 15, 2014 and the alleged incident occurred with Plaintiff on December 9, 2014.

Consequently, the policy was not effectuated until after the date of the incident. Therefore, Plaintiff could not have violated this policy to warrant any disciplinary action from Defendant Kenco or its agent. Plaintiff reaffirms that this policy, STD HR 1007 was contrived in retaliation for her protected activities and applied to her with an unlawful intent to harass and was used to discriminate against her unlawfully. As a matter of fact, Defendant Varvel indicated three (3) weeks later that Defendant Kenco did not have a policy relative to working without authorization, despite having applied such a policy to Plaintiff regarding working without authorization (SA-141).

Additionally, Plaintiff asserts that it is Defendant Kenco's policy to have each employee sign off on a log that corresponds to each policy that becomes a documented record of each employee being trained on a specific policy (Docket #82-16 page 2-22).

Plaintiff also asserts that Defendant Varvel created the "environment" for Plaintiff to be written up when she took away Plaintiff's privilege to clock in and out at her own desk and instructed her to clock in and out and the time clock outside in the warehouse. A time clock which Defendant Kenco and Varvel knew was faulty (SA-pg. 24#16).

No other persons working in the office were subject to this fringe benefit or privilege being taken away from them (Opening Brief pg. 20 ¶1).  The Seventh Circuit recognizes systematically better treatment of non-protected classes as circumstantial evidence of discrimination. *Jones v. National Council of YMCA of US*, 48 F. Supp. 3d 1054 (N.D. Ill. 2014) at 1091

Defendants Kenco, Varvel and others at corporate had access to the clock and were aware that the time clock malfunctioned.   Defendants waited almost a week after Plaintiff's alleged mis-punch occurred to use this mechanical failure to create a scenario for Plaintiff that would result in disciplinary action against her (Opening Brief pg. 20¶ 1).

Defendant states in its position statement that Varvel had a sneaky suspicion that McCurry had worked without authorization that led Varvel to review video footage of the clock.  Administrative proceedings before the IDHR/EEOC Charge no. 2015CA1804 page 2 ¶2).

Plaintiff requested to see the alleged video, but her request was denied.  Additionally, to date defendants have not produced any supporting evidence to substantiate that Plaintiff had not swiped out and had worked until 6:39 p.m.

Contrarily, Defendants' MSJ is the first time that McCurry is alleged to have been "observed" working.

Consequently, the statements made in Defendants MSJ are conclusory and not supported by fact or law.

"An employer's subjective reason for an employment decision may be reasonably viewed as a pretext for discrimination." *Simpson v. Beaver Dam Community Hospitals, Inc.*, 780 F.3d 784 (7th Cir. 2015)

Plaintiff again asserts, contends and renews her position that the policies referenced by defendant Kenco were contrived to violate Plaintiff's protected rights in retaliation and in harassment for Plaintiff's engagement in protected activities.

Plaintiff asserts that the write-up was an adverse employment action according to defendant Kenco's policy regarding promotions and that the write-up was also a pretext for defendants' unlawful actions against Plaintiff. A write-up is the beginning of Defendants' progressive disciplinary policy that leads to termination.

Another example relates to defendant Kenco's assertion that McCurry did not apply for the position of Human Resource Manager.

Defendant at no time during the course of this litigation has produced a policy to support that an application for a position is a requisite to being considered for a position or being promoted to a position.

Contrarily, in the matter of Vernon Henry, Defendant produced an Exempt Hiring policy and a signed job description (SA-pg. 39-63). In the

same matter Defendant Kenco's V.P. of legal indicated that Tony Willis did not make an application for the position of Co-Pack Coordinator (SA-pg. 70 ¶2).

Tony Willis himself declared that he did not apply for the most recent position that he held at the Mars Manteno facility (Docket #120). Defendants Kenco and Mars affirmed that Willis was promoted in the discovery that Mars tendered to Plaintiff (SA-pg103). This was two (2) separate positions; at two (2) separate times that Willis was promoted to a position for which he did not apply to or for as allegedly required by defendant.

## RULE 37 VIOLATIONS

"Statutory interpretation begins with the plain language of the statute." *United States v. Ye*, 588 F.3d 411, 414 (7th Cir. 2009) (quoting *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008)). This Court "assumes that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive." *United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012); *Chevron, U.S.A. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 843 (1984). No other inquiry is appropriate. *Id.*

Accordingly, Federal Rule of Civil Procedure 37 (c) states in relevant part that:

> (1) Failure to Disclose or Supplement. If a party fails
> to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not
> allowed to use that information or witness to
> supply evidence on a motion, at a hearing, or at a
> trial, unless the failure was substantially justified
> or is harmless. (Docket #117)

It applies both to information not disclosed and to witnesses. "Rule 26 does not speak of disclosing only documents gained by "discovery," it places an obligation to disclose the existence of "all documents" on which a party intends to rely. The method of acquiring those documents is not mentioned in Rule 26 at all." *Shott v. Rush University Medical Center, n.3 No.11C 50253 (N.D. Ill. Jan. 7, 2005)*

The Seventh Circuit, has held that the sanction of exclusion is mandatory, unless the nondisclosing party can demonstrate substantial justification for the failure to disclose or can demonstrate that the failure was harmless. (holding that the exclusion of undisclosed evidence is a mandatory sanction); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820 (7th Cir. 2010).

The party seeking relief from Rule 37(c)'s presumed preclusion bears the burden of establishing that the failure was substantially justified or harmless.

Defendants Kenco and Mars failed to disclose the transcripts of the depositions it took from McCurry (Docket #s 117, 122, 123&127).

Additionally, Plaintiff was only noticed by Defendant Kenco for a deposition.  Defendants counsel, Julia Argenteri threatened McCurry (Docket #95).

Ms. Argenteri went so far as to try and intimidate McCurry by intimating that she had the judge on speed dial and that he (the Judge) would make her conform to their demands to sit for the deposition, despite not having noticed her for such.

McCurry felt coerced and intimated by defendants counsel threats of sanctions and retribution from counsel contacting the Judge (Docket #95).  McCurry at one point thought that the Defendants' counsel was going to hold her hostage until she conformed to their demands.

Mars was attempting to conduct discovery without leave of the court after the close of discovery. No other Defendant noticed or deposed McCurry (Docket #s 95, 96 & 106).

Several weeks after McCurry resisted Defendants counsel(s) threats and demands; Mars motioned the court to take McCurry's deposition (Docket #103).

The district court allowed Defendant Mars, Inc. to piggy back on Defendant Kenco's notice of deposition in a text order on May 21, 2018. The district court stated that "there was" authority to support the notice of one litigant to suffice as notice for all litigants wanting to depose an opposing party.

McCurry asserts that her reading of the FRCP 30 in its simplest terms indicates that notice was to be made by each party seeking to oppose an opposing party.

Plaintiff asserts that Kenco and Mars' actions of waiting until discovery was closing or closed to take her deposition and withholding her deposition were prejudicial.  This prejudice caused McCurry an irreparable harm of having her case dismissed based, as these Defendants relied upon the undisclosed depositions to support their MSJ.

Furthermore, McCurry asserts that the arguments presented by Defendants regarding its failure to disclose in its Appellee Briefs and to the motion in limine filed by McCurry (Docket #122 & 123) are in line with Defendants' modus operandi.

McCurry asserts that Defendants have engaged in "gamesmanship" throughout the course of this litigation beginning at the IDHR/EEOC through this instant case:

1) That Defendants have impeded and obstructed justice and its administration.  2) That Defendants have willfully and intentionally made patently false and misleading statements verbally and in writing to cover up the various unlawful and discriminatory acts to intentionally escape, avoid and evade culpability and liability. 3) That Defendants have taken inconsistent positions in various legal matters before various

governmental agencies and tribunals to receive a benefit that would ultimately thwart Plaintiff's and others legitimate claims of discriminatory treatment. 4) That Defendants have intentionally crafted and contrived a number of schemes, furthered through the U.S. mail, that harassed, retaliated, thwarted and violated Plaintiff's and others protected rights not to be discriminated against and to be free of a hostile and racially animus charged work environment. 5) That Defendants have intentionally crafted and contrived a number of schemes, furthered through various governmental agencies and tribunals, that harassed, retaliated, thwarted and violated Plaintiff's and others protected rights not to be discriminated against and to be free of a hostile work environment charged with racial animus.

Additionally, Plaintiff asserts that Defendants have not made an argument at any time that suggests that this failure to disclose was harmless or not prejudicial to her.

McCurry asserts that Defendants' behavior continues to invite tribunals to support Defendants' blatant disregard for the prevailing statutes and contravenes the intent and purpose of the Federal Rules of Civil Procedure.

Plaintiff also contends that Defendants' arguments are in direct contradiction with seventh circuit precedent regarding a party's failure to

disclose and the circuit's posture on deviating from established precedent.

More specifically, the circuit has maintained that a "precedent may not be overturned without "compelling reasons."  *United States v. Reyes-Hernandez,* 624 F.3d 405, 412 (7th Cir. 2010).   In *Haas v. Abrahamson,* 910 F.2d 384, 393 (7th Cir. 1990), the court identified two factors to be used in determining whether there are compelling reasons to overrule a precedent, noting that "principles of stare decisis require that we give considerable weight to [prior decisions of this court] unless and until they have been overruled or undermined by decisions of a higher court, or other supervening developments, such as statutory overruling'" (quoting *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987).

Defendant Mars contended at one time that McCurry could have bought a copy just as they did (Opening Brief pg. 92 ¶2).

The trial Judge's adverse ruling in Defendants MSJ and motion for reconsideration on the MSJ suggested that court agreed that Defendants had discharged themselves of their burden to disclose contrary to the plain meaning of FRCP 26(a) & (e) and 37(c) (Docket #128).

## Raising Issues

McCurry raised issues relative to Mars, Inc. piggy backing on Kenco's notice of deposition (Docket #95 &106).

McCurry also raised issues relative to Defendants' failure to disclose (Docket #117, 122, 123 & 127).

McCurry also raised issues for clarification, reconsideration, objection, to compel and to take judicial notice (Dockets 44, 45, 56, 65, 79-82, 95, 96, 100, 101, 106, 107, 108 122, 123 & 127).

At every opportunity, McCurry objected to and made it known to the court that the legal counsel of Jackson and Lewis did not serve Plaintiff with its motion on the protective order, as she has no electronic record or record of it by the United States Post Office informed delivery.

Moreover, Mars, Inc. only filed four (5) motions during the course of the litigation.  A 12(b)(6), a motion for sanctions regarding a Rule 26 disclosure, a motion to compel plaintiff's deposition, a motion to extend time for a dispositive motion and a MSJ.  The 12(b)(6) motion sought reconsideration and the other three (3) were objected to and the last motion was the MSJ to which Plaintiff responded.

"Federal Rule of Civil Procedure 54(b) provides that a court may alter or amend an interlocutory order any time before entry of final judgment. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12 (1983) ('[E]very order short of a final decree is subject to reopening at the discretion of the district judge.').

Unlike a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, 'a motion

to reconsider an interlocutory order may be entertained and granted as justice requires.' *Akzo Coatings, Inc. v. Aigner Corp.,* 909 F.Supp. 1154, 1160 (N.D. Ind. 1995)."

Therefore, McCurry believes that she discharged herself of her burden to be able to ask the court for review of interlocutory orders.

## DEFENDANTS FAILURE TO ADDRESS ISSUES PREVIOUSLY RAISED BY PLAINTIFF

McCurry's claims of Spoliation, hostile work environment, and harassment, were ignored.

Examples of a hostile work environment.  Tom White resigned effectively immediately after being expected by Kelvin Walsh, the then General Manager to act with complicity in treating employees like "assholes."  The majority of White's employees were African American. White had been an employee since the facility opened in 1999 and had worked there for almost 15 years.

Upon his resignation he indicated that he had been unjustly written up for his failure to act in complicity in treating the employee's like "assholes" and that the work environment was discriminatory (SA-pg. 128-130).

Also ignored was the issue McCurry raised about Pete Monstwillo not being punished for attempting to kill Vernon Henry with a forklift.

Defendant position statement supports that Monstwillo was not punished for harassing Henry in Charge No. 2015CA1804 #5 B5.

Accordingly, Defendants forfeited for summary judgment purposes and appeal any argument that a reasonable jury could not find for McCurry on the claims of hostile work environment, spoliation and harassment.

***Conclusively***, Plaintiff contends that she has come forward with appropriate evidence demonstrating that there are pending disputes of material fact." *Payne v Pauley,* 337 F.3d 767 (7th Circuit 2003) at 771 citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) at 921.

Additionally, McCurry prays, that after this Honorable Court reviews this matter de novo applying the standard of summary judgment that "all reasonable inferences drawn from the underlying facts will be viewed and resolved in a light most favorable to McCurry (*Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998)), that this honorable court will:1) Vacate the district court's order and find that Plaintiff's case should be remanded back for trial and; 2) that Defendants are barred from using undisclosed discovery including Plaintiff's deposition according to FRCP 37(c) and; 3) that the failure to disclose under Rule 26 (e) was prejudicial to plaintiff and; 4) that the protective orders be reversed and; 5) that the motions in limine be ruled on and; 6)

that judicial notice be taken of Defendants inconsistent positions taken at various governmental agencies, tribunals and with this court and; 7) that defendants have intentionally made materially false and misleading statements and; 8) that Defendants have intentionally provided false and misleading documentation throughout the administration of justice and; 9) that Defendants actions of providing false and misleading information and documents has been obstructive to the administration of justice and; 10) that Defendants acted in "bad faith" and any other relief that this court deems appropriate under the circumstances.

Respectfully Submitted:            Edith McCurry

By/s/_____

Jordan T. Hoffman, her attorney
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Edith McCurry
Case No. 18-3260

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS


1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 6,996 words, excluding the parts of the brief exempted from FED. R. APP. P. 32(a)(7)(B)(iii), determined by using the word count feature on Microsoft Word 2010.

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font for the text, using Bookman Old Style, Georgia, Microsoft Sans Serif, Times Roman and Century Schoolbook throughout.


Dated:  March 15, 2019


**Jordan TraVaille Hoffman, P.C.**


/s/_____

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Edith McCurry
Case No. 18-3260

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on March 15, 2019, I submitted a copy of

the Plaintiff's-Appellant Reply Brief with the UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT in the foregoing matter of Case No. 18-3206 and have

served the persons identified on the docket's service list through Notice of Electronic

Filing generated by the Court's CM/ECF system:


/s/_____

Jordan T. Hoffman
ARDC-6195896
**Jordan TraVaille Hoffman, P.C.**
2711 E. New York St., Suite 205
Aurora, IL 60502
Plaintiff-Appellant-Edith McCurry
(888) 958-4529